1  Aaron Kaufmann, Esq., SBN 148580
   David P. Pogrel, Esq., SBN 203787
2  HINTON, ALFERT & SUMNER
   1646 N. Calif. Blvd., Suite 600
3  Walnut Creek, CA 94596
   Telephone:  (925) 932-6006
4  Facsimile:   (925) 932-3412

5  Morris J. Baller, Esq., SBN 048928
   Enrique Martinez, Esq., SBN 206884
6  GOLDSTEIN, DEMCHAK, BALLER,
         BORGEN & DARDARIAN
7  300 Lakeside Drive, Suite 1000
   Oakland, CA 94612
8  Telephone:  (510) 763-9800
   Facsimile:   (510) 835-1417

9  Michael D. Singer, Esq., SBN 115301
   Christopher A. Olsen, Esq., SBN 236928
10 COHELAN & KHOURY
   605 C Street, Suite 200
11 San Diego, CA 92101-5305
   Telephone:  (619) 595-3001
12 Facsimile:   (619) 595-3000

13 Attorneys for Plaintiffs and the Putative Class

14

15

16            **UNITED STATES DISTRICT COURT**

17           **NORTHERN DISTRICT OF CALIFORNIA**

18              **(SAN FRANCISCO DIVISION)**

19
   TERRY SAIDEL and CAMILLE          | Case No. C07-2948 SC
20 JACKSON, individually and on behalf of
   all others similarly situated,    | **MEMORANDUM OF POINTS AND**
21                                    | **AUTHORITIES IN SUPPORT OF**
            Plaintiffs,               | **PLAINTIFFS' MOTION TO**
22                                    | **COMPEL FURTHER RESPONSES**
   vs.                               | **TO PLAINTIFFS' FIRST AMENDED**
23                                    | **SPECIAL INTERROGATORIES,**
   CBS RADIO, INC., a Delaware        | **SET ONE**
24 corporation and DOES 1 through 10,
   inclusive,                        | Date:        To Be Set
25                                    | **Judge:      To Be Referred to a**
            Defendants.              | **                Magistrate Judge**
26                                    | Time:         To Be Set
                                      | Complaint filed:    May 3, 2007
27 _____     | Trial Date:         None set

28

---

1

## TABLE OF CONTENTS

2   I.    INTRODUCTION ...................................................................................................1

3   II.   STATEMENT OF FACTS ......................................................................................1

4   III.  ARGUMENT .........................................................................................................5

5         A.    CBS'S RELEVANCY OBJECTION IS MERITLESS BECAUSE THE
               IDENTITY OF PUTATIVE CLASS MEMBERS AND THEIR
6              SUPERVISORS IS DIRECTLY RELEVANT TO THE ISSUES IN THIS
               CASE ..........................................................................................................5

7
         B.    CBS'S PRIVACY OBJECTION IS ALSO UNFOUNDED UNDER
8              APPLICABLE CALIFORNIA LAW. .......................................................10

9              1.    APPELLATE COURTS HAVE RECENTLY RULED THAT THE
                     REQUESTED INFORMATION IS NOT PROTECTED BY THE
10                   RIGHT TO PRIVACY. ...................................................................10

11             2.    A PRIVACY NOTICE IS NOT REQUIRED AND WOULD
                     PREJUDICE PLAINTIFFS. ...........................................................13

12
         C.    CBS'S OTHER OBJECTIONS TO PLAINTIFFS' INTERROGATORIES
13             ARE COMPLETELY UNSUPPORTED. ..................................................15

14  IV.   CONCLUSION ....................................................................................................16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3
Babbitt v. Albertson's Inc.
  1992 WL6056527 *1, *6 (N.D. Cal)...................................................................7

4

Belaire-West Landscape, Inc. v. Sup. Ct.
5  149 Cal. App. 4th 554(2007) ........................................................... passim

6
Blankenship v. Hearst Corp.
  519 F.2d 418 (9th Cir. 1975)........................................................................5
7

Britt v. Superior Court
8  20 Cal. 3d 844 (1978)................................................................................11

9
Daar. v. Yellow Cab Co.
  67 Cal. 2d 695 (1991)..................................................................................7
10

Electronics (USA), Inc. v. Sup. Ct.
11  40 Cal. 4th 360 (2007)...........................................................................10, 11

12
Grissom v. Vons Companies, Inc.
  1 Cal. App. 4th 52 (1991)............................................................................6
13

Hammond v. Lowe's Home Ctrs., Inc.
14  216 F.R.D. 666 (D. Kan. 2003) ....................................................................6

15
Harris v. Superior Court
  3 Cal. App. 4th 661 (1992)........................................................................11
16

Hypolite v. Carleson
17  52 Cal. App. 3d 566 (1975).........................................................................7

18
In re Ford Motor Co.
  110 F.3d 954 (3rd Cir. 1997).......................................................................10
19

Jimenez v. Domino's Pizza, LLC
20  2006 US Dist. LEXIS 66510, at *5 (2006) ................................................13

21
McLeod, Alexander, Powel & Apffel, P.C. v. Quarles
  894 F.2d 1482 (5th Cir. 1990)....................................................................16
22

Narayan v. EGL, Inc.
23  2006 WL 3507918, at *3 (N.D. Cal. 2006) ..........................................10, 12

24
Nestle Foods Corp. v. Aetna Cas. and Sur. Co.
  135 F.R.D. 101 (D. N.J. 1990) .....................................................................5
25

Oakes v. Halvorsen Marine Ltd.
26  179 F.R.D. 281 (C.D. Cal. 1998) .............................................................5, 10

27
Olympic Club v. Sup. Ct.
  229 Cal. App. 3d 358 (1991).......................................................................15

28

Pioneer Electronics (USA), Inc. v. Sup. Ct.
    40 Cal. 4th 360 (2007)...................................................................................... passim

Puerto v. Sup. Ct.
    158 Cal. App. 4th 1242 -- 70 Cal. Rptr. 3d 701 (Jan. 18, 2007) ...............................6, 11, 14

Triple A Machine Shop, Inc. v. State of Calif.
    213 Cal. App. 3d 131 (1989)........................................................................................7

Upjohn v. Hygeia Biological Labs
    151 F.R.D. 355 (E.D. Cal. 1993)...............................................................................10

Valley Bank v. Superior Court
    15 Cal. 3d 652 (1975)...........................................................................................11, 15

Wharton v. Calderon
    127 F.3d 1201 (9th Cir. 1997)......................................................................................8

Wiegle v. Fedex Ground Package System
    2007 WL 628041 (S.D. Cal 2007) .........................................................................13, 14

## STATUTES

Code of Civil Procedure §1985.6 ....................................................................................14

Code of Civil Procedure §1985.6(a)(1) ...........................................................................14

Federal Rule of Civil Procedure 1 ....................................................................................5

Federal Rule of Civil Procedure 16(b)(1) .........................................................................8

Federal Rule of Civil Procedure 26(b)(2) .........................................................................8

Federal Rule of Civil Procedure 26(c) ..............................................................................8

Federal Rule of Civil Procedure 33(a) .............................................................................16

Federal Rule of Civil Procedure 37(a) .............................................................................16

## OTHER AUTHORITIES

4 Newberg on Class Actions (4th ed. 2002) § 7:8..............................................................8

Cal. Const. Art. I, §1 .....................................................................................................11

Cal. Civ. Discovery (3d ed. 2002), § 3.146 ......................................................................11

Moore's Fed. Practice (2001) § 26.47[4] ...........................................................................6

Schwarzer, § 11:876 .......................................................................................................6

Schwarzer, § 11:992 ...............................................................................................6, 10, 16

- iii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
FURTHER RESPONSES TO PLAINTIFFS' FIRST AMENDED SPECIAL INTERROGATORIES, SET ONE

1  (TRG 2006) § 14:93.2 ................................................................................................6

2  Weil & Brown, § 11.1792 .........................................................................................16

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
FURTHER RESPONSES TO PLAINTIFFS' FIRST AMENDED SPECIAL INTERROGATORIES, SET ONE

## I.    INTRODUCTION

This is a putative class action to recover unreimbursed business expenses that CBS Account Executives paid out of pocket while selling CBS radio airtime. Plaintiffs bring this motion to compel further responses to Plaintiffs' First Amended Special Interrogatories, Set One, which was served on Defendant CBS Radio, Inc. ("CBS") on August 22, 2007.

CBS has refused to provide identifying information regarding putative class members and their supervisors, except for a limited sample of 50 class members that was only provided subject to the mediation privilege.   Since the day this lawsuit was filed, CBS has had unfettered access to all of these witnesses from whom it could obtain information relevant to claims and defenses at issue in this case.  To deny plaintiffs the same access not only would be fundamentally unfair, it would violate established precedent holding that plaintiffs are entitled to communicate with putative class members and other former employees, as percipient witnesses.

As described below, and in the accompanying declaration of David Pogrel, plaintiffs' counsel have conferred in good faith with CBS's counsel regarding the relief sought in this motion.  Defendant has outright refused to provide this essential witness contact information, first relying on privacy and then making the far-fetched claim that the information is not relevant.  Plaintiffs now file this motion to compel and request expeditious consideration of it since this Court has ordered plaintiffs to file their motion for class certification by June 27, 2008 and will need substantial follow-up time to use the information sought in this motion in obtaining evidence supporting class certification.

## II.    STATEMENT OF FACTS

Plaintiffs in this case are former Account Executives of CBS Radio, Inc., a nationwide operator of media and broadcasting services.  Plaintiffs bring this lawsuit on behalf of themselves and a putative class of all Account Executives who worked for CBS in California during the applicable liability period – May 2003 through trial.

Plaintiffs aver that CBS has a policy and practice of failing to fully reimburse Account Executives for business-related expenses, including expenses incurred in operating their own vehicles in service to CBS, using their own cellular phones for business, and providing meals and entertainment to CBS's customers at their own expense. Plaintiffs seek recovery of unreimbursed business expenses, plus interest, applicable penalties, and attorneys' fees and costs.

This Court issued a Case Management Order on September 21, 2007, ordering mediation on or before March 21, 2008 and the filing of plaintiffs' class certification motion by June 27, 2008. Plaintiffs served CBS with their First Amended Special Interrogatories, Set One, on August 22, 2007; of these, interrogatories Nos. 1-4 seek to identify putative class members and their supervisors by their name, last known address, and telephone number.[1] Plaintiffs granted CBS's request for an extension to respond to the interrogatories.[2] CBS, however, responded with only objections to the interrogatories at issue herein and failed to provide the requested information, based primarily on privacy objections.[3]

The following are the interrogatories and responses at issue:

**SPECIAL INTERROGATORY NO. 1:**

IDENTIFY ALL INDIVIDUALS who are currently employed as ACCOUNT EXECUTIVES by CBS in California.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Defendant objects to this interrogatory on the grounds that it is overbroad, irrelevant and premature, as no class has been certified. Defendant also objects to this interrogatory to the extent it seeks private and confidential information. Subject to and without waiving these objections, Defendant responds as follows: 233 individuals are currently employed in California by CBS Radio Inc. as Account Executives.

**SPECIAL INTERROGATORY NO. 2:**

IDENTIFY ALL INDIVIDUALS who have served as ACCOUNT EXECUTIVES for CBS in California during the COVERED PERIOD but who are no longer employed in that position by CBS.

---

[1] See Declaration of David Pogrel in Support of Motion to Compel ("Pogrel Decl."), ¶ 2, filed herewith.
[2] Id., ¶ 3.
[3] Id.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

Defendant objects to this interrogatory on the grounds that it is overbroad, irrelevant, and premature, as no class has been certified.  Defendant also objects to this interrogatory to the extent it seeks private and confidential information.  Subject to and without waiving these objections, Defendant responds as follows:  602 individuals were employed in California by CBS Radio Inc. as Account Executives during the COVERED PERIOD, but those 602 individuals are no longer so employed.  [It's confusing to say that they were employed between May 3, 2003 and the **present** but are no longer employed.]

**SPECIAL INTERROGATORY NO. 3:**

IDENTIFY ALL INDIVIDUALS who are currently employed by CBS and who served as immediate supervisors of ACCOUNT EXECUTIVES in California during the COVERED PERIOD.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

Defendant objects to this interrogatory on the grounds that it is overbroad, irrelevant and premature, as no class has been certified.  Defendant also objects to this interrogatory to the extent it seeks private and confidential information.  Subject to and without waiving these objections, Defendant responds as follows:  Steven Sullivan served as an immediate supervisor of Terry Saidel between May 3, 2003 and the date of Mr. Saidel's departure from the company in August 2006.

**SPECIAL INTERROGATORY NO. 4:**

IDENTIFY ALL INDIVIDUALS who are no longer employed by CBS but who served as immediate supervisors of ACCOUNT EXECUTIVES in California during the COVERED PERIOD.

**RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

Defendant objects to this interrogatory on the grounds that it is irrelevant, overbroad and premature, as no class has been certified.  In addition, Defendant objects to this interrogatory to the extent that it seeks private and confidential information.  Subject to and without waiving these objections, Defendant responds as follows:  Michael Masterson served as an immediate supervisor of Terry Saidel between May 3, 2003 and the date of Mr. Saidel's departure from the company in August 2006.

The parties met and conferred regarding defendant's objections and refusal to provide substantive responses to plaintiffs' interrogatories.[4]   In that process, plaintiffs provided to defendant ample legal authority requiring it to provide the names and contact information of the individuals as requested.[5]   That authority included recent, on-point appellate decisions confirming that the information sought

---

[4] The entire meet and confer process is set forth in detail in the Pogrel Decl. filed herewith.
[5] Id., ¶¶ 4, 7.

1  is relevant and not protected by the right to privacy.  CBS, however, refused to

2  concede on any of the requests.[6]  Nevertheless, plaintiffs continued to seek a

3  reasonable compromise.

4       After several weeks, Defendant offered to provide contact information for a

5  sample of 50 class members, subject to the mediation privilege, but no information

6  for supervisors.[7]  Plaintiffs accepted CBS's offer in order to have at least some class

7  member contact information prior to mediation, and CBS finally produced the

8  requested information for the limited portion of the class on January 22, 2008 – five

9  months after plaintiffs first sought the information for the entire class.   Plaintiffs

10  made clear that they would accept the 50 sample names to assist in mediation

11  preparation, but would move to compel for the complete putative class list and the

12  identities of current and former supervisors if such information was not provided by

13  February 4, 2008.[8]  Plaintiffs have also agreed to accept only names of current

14  supervisors and not attempt to contact Account Executive managers who still work

15  for CBS.  In a final effort to avoid this motion, in response to CBS's assertion that it

16  did not want to produce the disputed information before mediation, Plaintiffs offered

17  a compromise under which CBS would produce the contested information

18  immediately following the mediation scheduled for March 12, 2008 and plaintiffs, in

19  turn, would produce other disputed discovery over which we have asserted privacy

20  protections.  CBS rejected plaintiffs' final offer of compromise and forced this

21  motion.[9]

22       CBS seeks to deny plaintiffs access to the highly relevant information the

23  putative class members and former managers could provide regarding the subject

24  claims and defenses, while at the same time enjoying its own potential access to the

25  same witnesses.  This is unfair as well as inconsistent with liberal rules of discovery.

26  Plaintiffs therefore request that this Court order CBS to produce amended responses

27  [6] Id., ¶ 6.
  [7] Id., ¶ 8.

28  [8] Id., ¶¶ 9, 13.
  [9] Id., ¶ 17.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
FURTHER RESPONSES TO PLAINTIFFS' FIRST AMENDED SPECIAL INTERROGATORIES, SET ONE

1   to interrogatories 1-4 in the form of names, addresses, and telephone numbers of all

2   putative class members and former supervisors, and the names of current

3   supervisors, who worked in California during the potential liability period.

### III.   ARGUMENT

5        The Federal Rules of Civil Procedure "shall be construed and administered to

6   secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ.

7   Proc. 1.  Generally, the purpose of discovery is to remove surprise from trial

8   preparation so that the parties can obtain evidence necessary to evaluate and resolve

9   their dispute.  Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal.

10  1998).  The party who resists discovery has the burden to show discovery should not

11  be allowed, and has the burden of clarifying, explaining, and supporting its

12  objections.  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); Nestle

13  Foods Corp. v. Aetna Cas. and Sur. Co., 135 F.R.D. 101 (D. N.J. 1990).

14       Through interrogatories 1-4, plaintiffs seek a list of the names and contact

15  information for putative class members and former supervisors, and the names of

16  current supervisors who have worked at the Northern California stations.[10]  CBS has

17  refused to provide the requested information, except for a limited sample pursuant to

18  the mediation privilege—on the grounds of purported third party's "privacy"

19  interests and because it claims the requested information is irrelevant prior to class

20  certification.[11]  CBS fails to carry its burden to prevent plaintiffs from obtaining this

21  information on either ground.

**A.    CBS's Relevancy Objection is Meritless Because the Identity of Putative Class Members and Their Supervisors is Directly Relevant to the Issues in this Case**

24       Federal Rule of Civil Procedure 26(b)(1) permits discovery in civil actions of

25  "any matter, not privileged, that is relevant to the claim or defense of any party …"

26  Federal Rule of Evidence 501 governs what matters are privileged in federal court.

---

[10] Plaintiffs are well aware of the limitations on their ability to contact presently employed managers of CBS and would not attempt to do so.  However, the managers' names remain relevant information as they interview other potential witnesses.
[11] Pogrel Decl. ¶ 15.

Moore's Fed. Practice (2001) § 26.47[4]. The "identity and location of persons having knowledge of any discoverable matter are discoverable." See Schwarzer, § 11:876 and authorities cited therein. The witnesses whose identities are sought here--putative class members and supervisors who have worked with CBS Account Executives--are likely to have valuable information going to both Plaintiffs' claims and CBS's defenses. See Puerto v. Sup. Ct., 158 Cal. App. 4th 1242, --, 70 Cal. Rptr. 3d 701, 706 (Jan. 18, 2007) (central to the discovery process in a wage and hour case is the identification of potential witnesses). For instance, CBS Account Executives--current and former--can provide crucial information regarding whether they incurred such business expenses as vehicle mileage, cellular phone use, and client meals and entertainment, and whether CBS failed to fully reimburse them and other Account Executives. See Gattuso v Harte-Hanks Shoppers, 42 Cal. 4th 554 (2007); Grissom v. Vons Companies, Inc., 1 Cal. App. 4th 52 (1991). This information goes not only to their individual claims on the merits, but more importantly to showing that there is a class-wide pattern – critically important for class certification as well as on the merits - of Account Executives' incurrence of such business expenses and failure by CBS to reimburse them.

There is ample precedent to support plaintiffs' position that they are entitled to the names and contact information of CBS's employees. The leading California civil discovery treatise advises that "[m]ost courts will order rapid disclosure of the employee list" to plaintiff's counsel in wage and hour cases when the employer attempts to contact putative class members pre-certification. Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (TRG 2006) § 14:93.2 (hereinafter "Weil & Brown"). In fact, information regarding the identities of current and former employees is routinely allowed in wage and hour litigation. See Hammond v. Lowe's Home Ctrs., Inc., 216 F.R.D. 666, 673 (D. Kan. 2003). Such information is readily ascertainable by a defendant employer because its own records contain the contact information for each class member. See Daar. v. Yellow Cab Co., 67 Cal. 2d

695, 714 (1991); Hypolite v. Carleson, 52 Cal. App. 3d 566, 578-79 (1975).  In Babbitt v. Albertson's Inc., 1992 WL6056527 *1, *6 (N.D. Cal. 1990), an employment discrimination class action, the court allowed plaintiffs discovery of "the names, addresses, telephone numbers and social security numbers" of the defendant's putative class members and former employees.

The relevance and permissibility of contacts by Plaintiffs' counsel with witnesses extends to former CBS managers, who – even more than class members themselves – may have important information about common CBS policies and practices affecting the class as a whole.  Plaintiffs' counsel is permitted to engage in ex parte communications with former CBS managers under the California Rules of Professional Conduct.  This is also consistent with the majority of bar ethic's committees and jurisdictions nationwide, which agree that plaintiff's counsel may engage in ex parte communication with former managers of a corporate defendant, while remaining faithful to state rules of professional conduct.  In fact, the 2002 version of Model Rule 4.2, Comment 7, which is analogous to the California's Rule 2-100, clearly states that "[c]onsent of the organization's lawyer is not required for communication with a former constituent."  The Comment adds that "[i]n communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization," such as inquiries seeking to discover privileged communications.

Specifically, in California, there is no ethical bar limiting communications regarding non-privileged information and class counsel have the right to communicate with former managers/ supervisors.  Professional Rule of Conduct 2-100 does not apply to communications with persons no longer employed by the adverse party.  See Triple A Machine Shop, Inc. v. State of Calif., 213 Cal. App. 3d 131 (1989).  Thus, "counsel for all parties have a right to interview an adverse party's witnesses in private, without the presence or consent of opposing counsel and without a transcript being made." Wharton v. Calderon, 127 F.3d 1201, 1204 (9th Cir. 1997).

1    Former supervisors have information about how Plaintiffs and other CBS

2   Account Executives performed their work, how CBS's polices and practices

3   controlled their daily activities, whether CBS managers required or encouraged

4   Account executives to incur business expenses on their own accounts, the awareness

5   of CBS management as to the business expenses being incurred by Account

6   Executives, and the degree to which CBS reimbursed business expenses, if at all.

7   Liberated from the potentially coercive influence of the employer, such witnesses

8   will often provide accurate information to class counsel that may be highly

9   persuasive as to any testimony they may provide to the court.  Indeed, one former

10   CBS manager, identified by Plaintiffs by other means, has already provided valuable

11   testimony in this matter that addresses the central issue of CBS's business expenses

12   reimbursement policies and practices.[12]

13    CBS has contended that this information is not relevant at the pre-certification

14   stage, claiming in essence that disclosure would be premature.[13]  CBS has no basis

15   for this objection as the percipient witness identities are directly relevant to plaintiffs

16   principle contention that CBS failed to fully reimburse the class for business-related

17   expenses.  The federal rules do not limit initial discovery to class certification issues,

18   and rightly so given the inherent overlap between discovery needed to prove class

19   certification and to argue the merits of the claims and defenses.    See 4 Newberg on

20   Class Actions (4th ed. 2002) § 7:8.

21    Discovery can, of course, be limited by this Court through scheduling or other

22   case management procedures, see Fed. R. Civ. Proc. 16(b)(1), 26(b)(2), or through a

23   noticed motion for a protective order, see Fed. R. Civ. Proc. 26(c).  This court might

24   have ordered limitations on discovery – and ordered bifurcation between class and

25   merits discovery - if it saw fit to do so in managing this case or ruling on a motion by

26   CBS.  Id.  However, it did not do so.  The only scheduling ordering in this case, a

27   minute order issued on September 21, 2007, did not alter the provisions of the

28   [12] See Declaration of Michael Masterson, attached hereto as Exhibit 12 to Pogrel Decl.
[13] Pogrel Decl., ¶ 15.

Federal Rules governing the scope and timing of discovery. There is no protective order in place here and CBS has not asked for one. As such, there is no bifurcation of discovery and CBS has no basis for its merits/class distinction.

While the Court can and should overrule CBS's objections based on the spurious class/merits distinction for the reasons described above, the witness information sought in the requests at issue here will also likely provide critical evidence on class certification, making CBS's objection inapplicable even if facially valid. CBS will likely oppose plaintiffs' class certification motion with arguments on commonality – claiming that CBS's expense reimbursement policies and practices varied from market to market and are therefore inappropriate for classwide adjudication. Plaintiffs expect to be able to prove a widespread practice, with any market variations merely showing the degree of underpayment and therefore going only to damages and not liability with little if any impact on the class certification question. Plaintiffs are entitled to discovery to probe this defense and analyze the expense reimbursement practices in each market. Inherent in this analysis is the testimony of the percipient witnesses who were subject to, and those who enforced, the polices and practices – the Account Executives and their supervisors. These witnesses will be able to testify, for example, whether managers instructed Account Executives to submit or not submit expenses, what types of expenses they were told to submit, if any, how to submit expenses, and how those requests were treated when submitted. As such, this witness identifying information is likely to prove highly probative on class certification.

The cases analyzing the privacy issue – described in detail in Section B, below – further affirm that the information sought is highly relevant in the pre-certification stage. The cases, from the California Supreme and Appeals Courts, and Federal District Courts, all balance the privacy interest against the plaintiffs' reasons for needing the information – to interview percipient witnesses who posses relevant information and to ascertain the truth in legal proceedings. See e.g. Pioneer

1   Electronics (USA), Inc. v. Sup. Ct., 40 Cal. 4th 360, 373-74 (2007); Belaire-West

2   Landscape, Inc. v. Sup. Ct., 149 Cal. App. 4th 554, 562(2007); Narayan v. EGL, Inc,

3   2006 WL 3507918, at *3 (N.D. Cal. 2006)  If plaintiffs in these cases did not have

4   this highly-relevant reason for requesting class member contact information, the

5   courts could have decided the privacy issue with no analysis.  Privacy only became

6   an issue in these cases because the requested information was relevant at the pre-

7   certification stage.

8   **B.    CBS's Privacy Objection is Also Unfounded Under Applicable California Law.**

9
10          **1.    Appellate Courts Have Recently Ruled That The Requested Information is not Protected by the Right to Privacy.**

11          As stated above, discovery rights include information on "any matter, not

12  privileged, that is relevant to the claim or defense of any party."  Rule 501 provides

13  that in federal cases based on diversity of citizenship jurisdiction, state law governs

14  privilege claims.  See also In re Ford Motor Co., 110 F.3d 954, 956 (3rd Cir. 1997);

15  Oakes, 179 F.R.D. at 284 (to the extent privacy is a matter of privilege under state

16  law, federal courts will honor the privilege and protect the responding party from

17  discovery); Upjohn v. Hygeia Biological Labs, 151 F.R.D. 355, 358 (E.D. Cal.

18  1993).  While technically not a privilege, federal courts recognize California's right

19  to privacy as a valid state law protection against discovery that falls within the

20  definition of "privilege" for purposes of Rule 501.  See Schwarzer, et al., Cal.

21  Practice Guide: Fed. Civ. Proc. Before Trial (TRG 2006), § 11:992 (hereinafter

22  "Schwarzer").  Jurisdiction in the present case is based upon diversity of citizenship.

23  Therefore, the court should apply California law to claims of privacy protection

24  raised by CBS.

25          The California constitutional right to privacy precludes the dissemination or

26  misuse of confidential information and protects an individual's interest in conducting

27  personal activities without observation or interference.  See Cal. Const. Art. I, § 1;

28  CEB, Cal. Civ. Discovery (3d ed. 2002), § 3.146.  The right to privacy is not

- 10 -

1  absolute and must be balanced against the public interest in obtaining just results in

2  the litigation and is subject to the circumstances at issue. Valley Bank v. Superior

3  Court, 15 Cal. 3d 652, 657 (1975). Courts must consider various factors in balancing

4  privacy rights against discovery needs, including: the nature of the privacy rights at

5  issue; whether the information is directly relevant and essential to proving a matter in

6  dispute; whether less intrusive alternative means exist for obtaining the information;

7  and whether competing interests can be accommodated by allowing partial

8  disclosure of the information. See Valley Bank, 15 Cal. 3d at 658; Britt v. Superior

9  Court, 20 Cal. 3d 844, 856, 859-62 (1978); Harris v. Superior Court, 3 Cal. App. 4th

10  661, 665 (1992).

11      The issue of the right to privacy that class members' and other percipient

12  witnesses have in their contact information has been the subject of five published

13  decisions in the last 14 months – one from the California Supreme Court, two from

14  the Court of Appeal, and two from District Courts in the Northern and Central

15  District – with each decision further tailoring the law to the facts of this case.

16      The California state court cases on point are Pioneer Electronics (USA), Inc.

17  v. Sup. Ct., 40 Cal. 4th 360 (2007) and Belaire-West Landscape, Inc. v. Sup. Ct., 149

18  Cal. App. 4th 554 (2007). A substantially related case is Puerto v. Sup. Ct., 158 Cal.

19  App. 4th 1242 (Jan. 15, 2008). In Pioneer, plaintiffs in a consumer class action

20  sought the identifying information (names, addresses, etc.) of putative class

21  members, to which defendant objected claiming it was protecting the privacy of the

22  absent class members. The California Supreme Court ruled that it was not an abuse

23  of discretion for the trial court to find that there was no violation of absent class

24  members' right to privacy, particularly given an opt-out privacy notice that provided

25  an additional layer of protection. The Court applied a balancing test, finding first

26  that putative class members did not have a reasonable expectation of privacy in their

27  identifying information. See Pioneer, 40 Cal. 4th at 372. The court further found

28  that that the disclosure of such information was not a serious invasion of privacy.

- 11 -

1    Id. In ruling in favor of the plaintiffs and ordering disclosure of the class member

2    information, the Court ultimately saw the issue as one of fundamental fairness,

3    specifically that it would be unfair to allow one party to control the identities of these

4    witnesses for their own exclusive use in litigation while denying access to the other.

5    Id. at 374. It found no abuse of discretion in the use of an opt-out privacy notice and

6    affirmed the trial court's order. Id. at 373-74.

7        The Court of Appeal in Belaire-West applied Pioneer in the context of a wage

8    and hour class action like this one, finding an even greater interest in the disclosure

9    of such information given the public policy underlying California's employment

10   laws. Belaire-West, 149 Cal. App. 4th at 562. As in Pioneer, the appellate court

11   reviewed the trial court's order compelling disclosure subject to an opt-out privacy

12   notice and determined that the trial court properly balanced the competing interests,

13   specifically the minimal expectation of privacy in one's name and address, whether

14   there was a serious invasion of such privacy, the reasons plaintiffs sought the

15   information, and the fairness to the litigants in allowing equal access to this group of

16   percipient witnesses. Id. at 561-562. The court affirmed a trial court ruling requiring

17   the disclosure of the class member contact information to enable the plaintiffs'

18   attorneys the opportunity to further investigate and prosecute their case. In doing so,

19   it noted not only that the class members were percipient witnesses, but also that they

20   could reasonably be expected to want their information disclosed to a plaintiff who

21   was seeking class-wide recovery that could benefit them. Id.

22       Even before the above-referenced published state court cases clarified the

23   application of privacy law to these facts, California's Federal District Courts ordered

24   disclosure under similar circumstances as here. Northern District Court Magistrate

25   Judge Lloyd's decision in Narayan v. EGL, Inc, 2006 WL 3507918 (N.D. Cal. 2006)

26   and Central District Court Judge Jeffrey Miller's ruling in Wiegle v. Fedex Ground

27   Package System, 2007 WL 628041 (S.D. Cal 2007), both diversity cases removed to

28   Federal Court, properly applied California privacy law. Both courts balanced the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
FURTHER RESPONSES TO PLAINTIFFS' FIRST AMENDED SPECIAL INTERROGATORIES, SET ONE

1  relevancy of the information sought against the asserted privacy rights and found in

2  favor of disclosure, with no need for a privacy notice. Narayan, 2006 WL 3507918,

3  at *2-3, Wiegle, 2007 WL 628041, at *2. See also Jimenez v. Domino's Pizza, LLC

4  2006 US Dist. LEXIS 66510, at *5 (2006) (class members have relevant

5  discoverable information and their contact information should be disclosed over

6  defendant's privacy objection).

7         In sum, the applicable caselaw overwhelmingly supports plaintiffs' contention

8  that the identities of class members, and their last known addresses and phone

9  numbers, are not protected by the right to privacy. The same logic applies to former

10  supervisors – the information sought is the same (name, address and phone number)

11  and the privacy interest in such information, particularly when the identified people

12  are percipient witnesses such as supervisors, does not trump plaintiffs' interest in

13  investigating and litigating their case and the broad discovery rules that specifically

14  provide for the identification of witnesses.

15         **2.     A Privacy Notice is Not Required and Would Prejudice Plaintiffs.**

16         In plaintiffs' initial efforts to compromise on this issue and avoid this motion,

17  plaintiffs' counsel agreed to allow an opt-out privacy notice before obtaining the

18  requested contact information. Such a notice, like the one at issue in Pioneer and

19  Belaire-West, would be sent to the potential witnesses – class members and

20  supervisors – who would each have the opportunity to opt out and withhold their

21  contact information from plaintiffs. However, this proposed compromise is no

22  longer tenable – and is not required – given the delays caused by CBS and newly-

23  published authority. Specifically, as described below, recent decisions have

24  confirmed that a privacy notice is not required to obtain name, address, and

25  telephone information in these types of cases. Given the delay that would be caused

26  by such a notice – 45 days at minimum even if CBS were to immediately agree to the

27  content and format of such a notice - and the associated prejudice to plaintiffs'

28  efforts to investigate and develop evidence for class certification, a privacy notice is

1    not warranted here.

2       One of the Federal cases described above – <u>Wiegle</u> – directly addressed the

3    notice issue and determined none was necessary. <u>Wiegle</u>, 2007 WL 628041, at *3-4

4    The <u>Wiegle</u> Court, after extensive analysis, found that requiring notice was generally

5    unnecessary, but particularly so in a wage and hour case where all parties should

6    have "equal access" to the witnesses, particularly where such access could inform

7    putative class members of a case that is intended to benefit them. <u>Id.</u>

8       The appeals court in <u>Puerto</u> again analyzed the disclosure of percipient

9    witnesses contact information, specifically reviewing whether a privacy notice is

10   required before disclosure. See <u>Puerto</u>, 158 Cal. App. 4th at --, 70 Cal. Rptr. 3d at

11   711-712. In its analysis, the <u>Puerto</u> court examined <u>Pioneer</u> and <u>Belaire-West</u> and

12   concluded that the use of a privacy notice presented fairness problems and

13   "significantly advantage[d]" the employer. <u>Id</u>. at 707-713.

14      These authorities carry particular force in the context of this case. Use of an

15   opt-out notice procedure here would increase the likelihood that only CBS will have

16   access to these witnesses, and cause plaintiffs to incur unnecessary expense and

17   unreasonable delay in preparing their motion for class certification.

18      In addition, Code of Civil Procedure §1985.6 provides additional support for

19   plaintiffs' contention that there is no need to notify former CBS employees in

20   advance of disclosing their addresses and telephone numbers. Section 1985.6 does

21   not require that if information is sought about an employee, notice be provided, but

22   only requires that if a <u>subpoena</u> for <u>employee files</u> is served, notice be sent to the

23   employee "personally, or at his or her last known address." § 1985.6(a)(1).

24   Plaintiffs have not sought the production of employee files by subpoena or by way of

25   this motion. Plaintiffs seek only the names of current supervisors and the names, last

26   known addresses, and phone numbers of putative class members and former

27   supervisors.

28

Other leading California cases that identify the types of truly sensitive personal information deserving of significant judicial protection also support by implication disclosure of the less sensitive information sought by plaintiffs. In Valley Bank, the Supreme Court ruled that "because confidential customer information may be disclosed in the course of civil discovery proceedings, the bank must take reasonable steps to notify its customer of the nature and pendency of the proceedings and to afford the customer a fair opportunity to assert his interests by objecting to disclosure." Valley Bank, 15 Cal. 3d at 658. This case does not deal with such sensitive financial information. In Olympic Club v. Sup. Ct., 229 Cal. App. 3d 358 (1991), the plaintiff sought the disclosure of the names and addresses of individuals who had applied to and been rejected for membership in a private organization. The court ordered notice because by the very disclosure of their identities, those third parties' associational privacy rights would be violated. Olympic Club, 229 Cal. App. 3d at 364. Here, no associational privacy rights have or can be asserted.

No individual notice is necessary here unless and until the discovery seeks employment or financial information about individual, identifiable employees, which plaintiffs are not seeking in their interrogatories. Further, a notice and opt-out procedure is a costly and time-consuming process. Also, as plaintiffs' motion for class certification will be due within approximately three months of the hearing on this motion, an opt-out period would further exacerbate the disadvantage CBS has imposed on plaintiffs in by not complying with legitimate discovery requests.

**C.    CBS's Other Objections to Plaintiffs' Interrogatories Are Completely Unsupported.**

CBS has asserted other objections to the subject interrogatories--objections of over breadth, undue burden, vagueness, ambiguity, and oppression. There is no merit to any of these boiler plate objections. CBS has failed to put forth any reason why any one of these objections is reasonable. Given that CBS has the burden of

- 15 -

1  proving its objections are valid, this lack of any factual showing requires a finding in

2  Plaintiff's favor.  See Fed. R. Civ. Proc. 37(a) and 33(a), Adv. Comm. Notes (1970);

3  see also Weil & Brown, § 11.1792 and McLeod, Alexander, Powel & Apffel, P.C. v.

4  Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990).  Specifically, as to CBS's vagueness

5  and ambiguity objections, courts should not sustain objections to discovery requests

6  on such grounds unless the request is totally unintelligible, and the answering party

7  owes a duty to respond in good faith as best as it can.  See Schwarzer, § 11:1735-37.

## IV.    CONCLUSION

9      The Court should grant plaintiffs' motion to compel further responses to the

10  interrogatories described herein.  CBS should be compelled to provide the names and

11  addresses of current and former Account Executives and former supervisors, and the

12  names of the current supervisors who have worked at CBS during the putative

13  liability period.[14]

14  DATED:  February 21, 2008.

                              HINTON, ALFERT & SUMNER
                              GOLDSTEIN, DEMCHAK, BALLER,
                                  BORGEN & DARDARIAN
                              COHELAN & KHOURY

                              By
                              DAVID P. POGREL
                              Attorneys for Plaintiffs and the Putative
                              Class

---

[14] In the event this Court denies this motion to compel, plaintiffs request that Defendant be prohibited from using this "private" information in this litigation.  Defendant cannot have it both ways –by arguing that the identities of putative class members is not relevant is highly private, but then using that same information to develop evidence to oppose Plaintiffs' class certification motion.