EXHIBIT "12"

1  Aaron Kaufmann, Esq., SBN 148580
   David P. Pogrel, Esq., SBN 203787
2  HINTON, ALFERT & SUMNER
   1646 N. Calif. Blvd., Suite 600
3  Walnut Creek, CA 94596
   Telephone:   (925) 932-6006
4  Facsimile:    (925) 932-3412
   kaufmann@hinton-law.com
5
   Morris J. Baller, Esq., SBN 048928
6  GOLDSTEIN, DEMCHAK, BALLER,
   BORGEN & DARDARIAN
7  300 Lakeside Drive, Suite 1000
   Oakland, CA 94612
8  Telephone:   (510) 763-9800
   Facsimile:    (510) 835-1417
9  mjb@gdblegal.com

10 Michael D. Singer, Esq., SBN 115301
   Christopher A. Olsen, Esq., SBN 236928
11 COHELAN & KHOURY
   605 C Street, Suite 200
12 San Diego, CA 92101-5305
   Telephone:   (619) 595-3001
13 Facsimile:    (619) 595-3000
   MSinger@CK-LawFirm.com

14 Attorneys for Plaintiffs and the Putative Class

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                 (SAN FRANCISCO DIVISION)

18

19 TERRY SAIDEL and CAMILLE JACKSON,        Case No. C07-029848 SC
   individually and on behalf of all others similarly
20 situated,                                 DECLARATION OF MICHAEL
                                             MASTERSON
21              Plaintiffs,

22                                           Complaint filed:   May 3, 2007
         v.
23                                           Trial Date:        None set
   CBS RADIO, INC., a Delaware Corporation;
24 CBS Corporation, a Delaware Corporation;
   INFINITY BROADCASTING, INC., a
   Delaware Corporation; VIACOM, INC., a
25 Delaware Corporation; and DOES 1 through 10,
   inclusive,
26
                Defendants.
27

28       I, Michael Masterson, declare as follows:
                            – 1 –

P 00614

1.    The statements set forth in this declaration are made of my own personal knowledge and if called as a witness, I could and would testify competently to the matters stated below.

2.    I worked as a General Sales Manager ("GSM") for CBS Radio (hereinafter "CBS"), previously known as Infinity Broadcasting, in Los Angeles, California from approximately 1987 until I retired on or about November 10, 2006. I served as the GSM of the KNX radio station in Los Angeles during this entire tenure.

3.    As the GSM, I managed the sales staff for the radio station, including the Account Executives ("AEs") who sold radio air time and other media advertising to businesses. At the time I left, I supervised approximately 20 AEs, a local sales manager, and a retail sales manager. I answered directly to the station General Manager, who was Pat Duffy; the Market Manager over the six stations in the Los Angeles market, who was Jeff Federman; and the GSM for the Los Angeles market, who was Dan Weiner, as of November 2006.

4.    One of my duties as the GSM was to prepare and manage the budget for the sales department at KNX, which included the AEs and their sales activities. I prepared an annual budget for the department and submitted it for comment and/or approval to the station's finance department, the station's General Manager, the Market Manager, and to CBS's corporate offices. During the last several years, I would also meet with the president of CBS Radio, who was Joel Hollander, to discuss my department's budget for the upcoming year. In the budgets I prepared and submitted, there was no line item for reimbursing AEs for out-of-pocket business expenses. While there was a line item for travel and entertainment, also known as "T&E," that account was typically used to pay for travel and entertainment expenses incurred by myself and other sales managers and not to reimburse expenses incurred by AEs. Only on rare occasions would I authorize the T & E account to be used to reimburse an AE for some travel or entertainment expense. Typically this was to cover some unusually expensive event or to pay for an AE's air travel to visit a client (e.g. in San Francisco), and not to reimburse them for more routine expenses.

5.    None of my superiors or anyone from CBS corporate offices ever instructed me that I should reimburse AEs for their out-of-pocket business expenses. I do not recall reading or hearing of any CBS policy addressing the topic. In the few instances where the topic came up in

- 2 --
DECLARATION OF MICHAEL MASTERSON

P 00615

1  meetings or in conversations with other managers, it appeared to me to be the operating assumption
2  that AEs were not reimbursed for routine business expenses.
3      6.      AEs traveled away from the station offices to meet clients at their places of business
4  and other locations. Local business travel was a near daily part of the AE job and was necessary
5  for an AE to be successful. Myself and other managers have often encouraged AEs to meet with
6  clients at their place of business in order to sell advertising.
7      7.      CBS did not provide AEs transportation to and from these client meetings. AEs
8  provided their own vehicles for these travels. In the greater Los Angeles area where I worked, I do
9  not believe it would have been possible for an AE to accomplish his/her job without having access
10 to a vehicle for out-of-office travel.
11     8.      CBS did not typically reimburse AEs for mileage, parking or any other vehicle-
12 related expenses incurred on their work-related trips. It was expected that, as part of the job, AEs
13 provided their own vehicles at their own expense.
14     9.      Over the last several years, the use of cell telephones has become a necessary part of
15 the AE job. I believe all of the AEs under me used cell phones to communicate with clients and
16 the office when they were away from the office during the last several years of my employment.
17 Clients expected to be able to communicate with the AE during business hours, whether the AE
18 was working in or away from the office. Cell phones were thus essential for AEs to provide the
19 service the clients came to expect. Other managers and I would also call AEs on their cell phones
20 when the AEs were working away from the station.
21     10.     CBS did not provide AEs with cell phones. AEs provided and paid for their own
22 cell phones and for the charges incurred in using them. CBS did not reimburse AEs for the
23 purchase or use of cell phones.
24     11.     AEs often entertained clients as part of their efforts to sale advertising for KNX.
25 Other managers and I encouraged AEs to take clients out for meals or other entertainment, such as
26 a sporting event or concert, in order to develop a closer business relationships with the clients.
27 Sometimes a manager, such as myself, would accompany the AE at these meals or other events, in
28 which case the manager typically paid for the meal or entertainment provided to the client and AE.

- 3 --
DECLARATION OF MICHAEL MASTERSON

P 00616

1  However, managers were frequently not available or, for other reasons, did not attend such client

2  functions. In those instances, the AE typically paid out-of-pocket for entertaining the clients. CBS

3  did not typically reimburse the AEs for such expenses. Only in rare instances, where the expense

4  was quite large like a $200 restaurant tab, would I authorize reimbursement to the AE. During

5  sales meetings and at other times, other managers and I would tell the AEs that they were expected

6  to pay for such expenses as part of their own "investment" in the clients. The message we gave the

7  AEs was, by spending some of their own money they increased their chances of selling more

8  advertising, which, in turn, would result in higher commission payments to them.

9      I declare under penalty of perjury under the laws of the State of California and the laws of

10  the United States that the foregoing is true and correct.

11      Executed October _18_, 2007 at Portland, Oregon.

12

13                                      MICHAEL MASTERSON

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -