AARON KAUFMANN, CA Bar No 148580
DAVID P. POGREL, CA Bar No. 203787
HINTON, ALFERT & SUMNER
1646 N. California Blvd., Suite 600
Walnut Creek, CA  94596
(925) 932-6006
(925) 932-3412 (fax)
Kaufmann@hinton-law.com

MORRIS J. BALLER, CA Bar No. 048928
ENRIQUE MARTINEZ, CA Bar No. 206884
GOLDSTEIN, DEMCHAK, BALLER,
BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510) 763-9800
(510) 835-1417 (fax)
mballer@gdblegal.com

MICHAEL SINGER, CA Bar No. 115301
DIANA M. KHOURY, CA Bar No. 128643
CHRISTOPHER OLSEN, CA Bar No. 236928
COHELAN & KHOURY
605 "C" Street, Suite 200
San Diego, CA  82101
(619) 595-3001
(619) 595-3000 (fax )
msinger@ck-lawFirm.com
dkhoury@ck-lawFirm.com

Attorneys for Plaintiffs and the Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY SAIDEL and CAMILLE JACKSON, individually and on behalf of all others similarly situated, | CLASS ACTION |
| | Case No.:  CV 07-02948-SC |
| Plaintiffs, | |
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| vs. | |
| CBS RADIO, INC., a Delaware corporation and DOES 1 through 10, inclusive, | |
| Defendants. | DATE:        August 15, 2008 |
| | TIME:        10:00 a.m. |
| | COURTROOM:  One |
| | Hon. Samuel L. Conti |

1

**TABLE OF CONTENTS**

2
                                                                              Page

3

4
I.     INTRODUCTION ..................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................... 1

III.   THE PROPOSED SETTLEMENT ......................................................................... 3

IV.    THE PROPOSED NOTICE OF CLASS ACTION SETTLEMENT ("CLASS
       NOTICE") ................................................................................................................ 6

V.     SCHEDULE OF DATES FOLLOWING PRELIMINARY APPROVAL ................ 7

VI.    ARGUMENT ........................................................................................................... 8

       A.    Class Action Settlements are Subject to Court Review and Approval Under the
             Federal Rule of Civil Procedure .................................................................... 8

       B.    The Settlement Class Satisfies the Requirements of Federal Rule of Civil
             Procedure, Rule 23 for Certification. ............................................................. 8

             1.    FRCP 23(a) Requirements for Class Certification Have Been Met. .............. 9

             2.    FRCP 23(b) Requirements for Class Certification Have Been Met. .............. 11

       C.    The Settlement Is Fair, Reasonable and Adequate ........................................ 12

             1.    The Amount of the Settlement is a Fair Compromise of Contested,
                   Factually Complex Claims Subject to Many Legal Uncertainties. ................. 13

             2.    The Extent of Investigation by the Parties Is Sufficient to Allow Counsel,
                   and this Court, to Conclude That the Settlement is Adequate. ....................... 15

             3.    Plaintiffs' and Defendant's Counsel are Experienced and Jointly
                   Support the Settlement, and the Settlement is the Product of Prolonged
                   Mediated Non-Collusive Negotiations. .......................................................... 16

VII.   CONCLUSION ........................................................................................................ 16

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

Page

4

**CASES**

5

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591 at 623 ..................................................................................... 11

6

*Boyd v. Bechtel Corp.*
    485 F. Supp. 610 (N.D. Cal. 1979)

7

8

*California Rural Legal Assistance v. Legal Services Corp.*
    917 F.2d 1171 (9th Cir. 1990) ..................................................................... 10

9

*Ellis v. Naval Air Rework Facility*
    87 F.R.D. 15 (N.D.Cal. 1980), ..................................................................... 16

10

11

*Fisher Bros. v. Cambridge Lee Industries, Inc.*
    630 F. Supp. 482 (ED.Pa. 1985) .................................................................. 16

12

*General Telephone Co. v. EEOC*
    446 U.S. 318 (1980) ....................................................................................... 9

13

14

*In re Beef Industry Antitrust Litigation*
    607 F. 2d 167 (5th Cir. 1979) ...................................................................... 12

15

*In re Corrugated Container Antitrust Litigation*
    643 F.2d 195 (5th Cir. 1981) ......................................................................... 8

16

17

*In re Omnivision Technologies, Inc.*
    (N.D. Cal. 2007) 2007 U.S. Dist LEXIS 95616, at p. 21 ............................ 15

18

*Iowa Beef Processors, Inc. v. Meat Price Investigators Ass'n*
    452 U.S. 905 (1981) ..................................................................................... 12

19

20

*Jamison v. Butcher & Sherrerd*
    68 F.R.D. 479 (E. D. Pa. 1975) ................................................................... 13

21

*Jordan v. County of Los Angeles*
    669 F.2d 1311 fn.10 (9th Cir. 1982) .............................................................. 9

22

23

*Linney v. Cellular Alaska Partnership*
    (9th Cir. 1998) 151 F. 3d 1234 .................................................................... 14

24

*Rodriguez v. West Publishing Corp.*
    No. CV-05-3222 R(MCx) 2007 U.S. Dist. LEXIS 74849 at 33 (C.D. Ca. Sept. 10, 2007)............ 13

25

26

*Six (6) Mexican Workers v. Arizona Citrus Growers*
    904 F.2d 1301 (9th Cir. 1990) ............................................................... 4, 5, 8

27

*Sullivan v. Chase Inv. Serv. of Boston*
    79 F.R.D. 246 (N.D. Cal. 1978) .................................................................. 10

28

1

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) ......................................................................... 8

2

*Vizcaino v. United States District Court*
  173 F.3d 713 (9th Cir. 1999) ......................................................................... 9

3

4                                   **STATE CASES**

5  *Bell v. Farmers* (2004)
     115 Cal.App.4th 715 ........................................................................... 12

6

*Los Angeles Fire & Police Protective League supra*
  23 Cal.App.3d, 67 ........................................................................... 9

7

8  *Rebney v. Wells Fargo Bank*
     (1990) 220 Cal.App. 3d 1117 ........................................................... 14

9

*Wershba v. Apple Computers, Inc.*
  (2001) 91 Cal.App.4th 224 ............................................................... 14

10

11

12                         **STATUTES AND REGULATIONS**

13  **_Federal Rules of Civil Procedure_**

14         Rule 23 ............................................................................... 9
           Rule 23(a) ........................................................................... 8, 9
15         Rule 23(a)(3) ....................................................................... 10
           Rule 23(a)(4) ....................................................................... 10
16         Rule 23(b) ........................................................................... 8, 11
           Rule 23(b)(1) ....................................................................... 11
17         Rule 23(b)(3) ....................................................................... 11
           Rule 23(e) ........................................................................... 8
18

19  **_California Business and Professions Code_**

20         §17200, *et seq.* .................................................................... 2, 10

21  **_California Labor Code_**

22         § 2802 ............................................................................... 2, 10

23

24

25

26

27

28

1

## MISCELLANEOUS

2

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2006)

3

Page 10-116, 10-116, §10:787.................................................................................................. 8

4

Page 10-116, §10:788...................................................................................................... 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    INTRODUCTION

2      Plaintiffs TERRY SAIDEL and CAMILLE JACKSON seek an Order granting Preliminary

3  Approval of a proposed *non-reversionary* class action settlement including the payment of $4,950,000

4  to a class of an estimated 950 Account Executives who incurred out-of-pocket expenses while selling

5  radio advertisement for Defendant CBS RADIO, INC., ("CBS Radio", "CBS" or "Defendant").  The

6  proposed settlement was reached after extensive litigation and with the assistance of a skilled mediator

7  who conducted two full days of mediation sandwiched around other efforts by the mediator.  If

8  approved, the settlement will allow the proposed class—all those employed in the position of an

9  "Account Executive" in the State of California during the period May 3, 2003 through June 30, 2008

10  (the "Class Period")—a substantial recovery on their California Labor Code claims for unreimbursed

11  business expenses.

## II.    FACTUAL BACKGROUND

13      CBS Radio operates approximately 34 radio stations within six markets in California: San

14  Francisco; Los Angeles; San Diego; Riverside; Fresno; and Sacramento. Each market contains two to

15  eight stations. Many of these stations serve large geographical areas, including the entire greater Los

16  Angeles area and the Bay Area. The vast majority of CBS Radio's revenue derives from selling radio

17  and related advertising to businesses who serve these same areas.  The Account Executives who make

18  up the putative class are the foot soldiers in CBS's sales force.  They are supervised by Local Sales

19  Managers and General Sales Managers who in turn report to the stations' General Managers. The

20  management pattern, positions, and job duties of the Account Executives and managers are the same in

21  all markets and at all stations (although not all of the sales management positions are filled at all

22  stations and all times).

23      To sell its radio advertising, CBS expects its Account Executives to cultivate sales leads

24  through face-to-face meetings with clients and potential clients. Account Executives travel to client

25  meetings at their place of business, which are spread throughout the geographical areas served by their

26  respective stations. Account Executives are encouraged or required to have regular meetings with

27  existing clients at their places of business and at other locations away from CBS offices.  CBS

28  managers uniformly emphasize the importance of Account Executives meeting with customers and

1   potential customers in person.  Such meetings included lunch and dinner meetings, which were often

2   paid for out-of-pocket by the Account Executives.  To keep in touch with customers and managers

3   while away from CBS offices, all Account Executives routinely used mobile telephones that both they

4   and CBS managers considered essential to performing their jobs.  Despite the fact that CBS was aware

5   its Account Executives incurred mileage, mobile telephone, meal and other expenses, CBS failed to

6   reimburse the putative class of Account Executives for these regularly incurred business expenses.

7   CBS offered, in its defense, that it had a written policy for making such reimbursements, but

8   acknowledged that most Account Executives used the reimbursement system seldom if at all.

9          Plaintiffs Terry Saidel and Camille Jackson worked for CBS Radio as Account Executives

10   during the Class Period.  Like other Class Members, Saidel and Jackson incurred gas, cell phone, client

11   meals and entertainment, and gift expenses, which were not fully reimbursed by CBS.  Consequently,

12   they filed this class action complaint against CBS on May 3, 2007, in the Superior Court of California,

13   County of Alameda. Defendants, however, successfully removed to federal court and filed its answer

14   thereafter.  (Declaration of Michael D. Singer ("Singer Decl.,") 7.)  The gravamen of Plaintiffs'

15   Complaint is that CBS failed to fully reimburse business expenses in violation of California Labor

16   Code § 2802.[1]  The Complaint also alleged violations of California Business & Professions Code

17   §17200, *et seq.* and sought restitution of unreimbursed amounts spent for business expenses.  Plaintiffs

18   also sought penalties, costs, interest, reasonable attorneys' fees and injunctive relief.  (Singer Decl., 8.)

19          The parties have engaged in extensive discovery and investigation in preparation for a class

20   certification motion. The parties have exchanged detailed initial and supplemental disclosures.  (Singer

21   Decl., 10.)  Plaintiffs propounded 40 document requests, seven interrogatories, and 12 requests for

22   admissions. (*Id.*)  CBS propounded 95 interrogatories and 74 document requests. (*Id.*)  In all, the

23   parties have produced over 1,500 pages of documents, including various employee handbooks and

24

25

26   [1] Labor Code § 2802 provides, in pertinent part:
       An employer **shall** indemnify his or her employee for **all** necessary expenditures or losses incurred by the
27     employee in direct consequence of the discharge of his or her duties or of his or her obedience to the directions of
       the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to
28     be unlawful. (Emphasis added.)

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO.:  CV 07-02948-SC

1  manuals.  CBS also produced computerized expense reimbursement data, and Plaintiffs served 20

2  declarations obtained from class members.  (*Id.*)  Plaintiffs took the depositions of three CBS

3  management witnesses as well as a Rule 30(b)(6) deposition of CBS. (Singer Decl., 11.)  CBS deposed

4  the named Plaintiffs and a former manager declarant, whose declaration supported Plaintiffs'

5  allegations.   (*Id.*)  As a result of these efforts, Plaintiffs were prepared to move for class certification

6  when the parties reached the proposed settlement.  (Singer Decl., 12.)

7        The settlement was the result of an extended mediation process.  On March 12, 2008, the

8  Parties participated in a full-day mediation in San Francisco before Mark Rudy, a respected and

9  experienced mediator with substantial expertise in wage and hour class actions.  (Singer Decl., 13.)

10  The parties were unable to resolve the matter but agreed to exchange more information and Mr. Rudy

11  continued to discuss issues with the parties separately *(Id.)*  Mr. Rudy conducted a second day of

12  mediation on May 21, 2008.  *(Id.)*  While the Parties did not resolve the matter at that time, they

13  subsequently agreed upon a settlement in concept and total amount, on June 2, 2008, with the balance

14  of the settlement terms agreed upon through arms-length negotiations that continued through the date

15  that the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") was signed

16  by the Parties. (*Id.*, Exh. "1".)

17        The Defendant has expressly reserved all rights to contest liability and damages on all

18  procedural and factual bases, reserved all defenses to Plaintiffs' claims, and likewise reserved all

19  objections to class certification, including all procedural and factual objections, in the event the

20  proposed Settlement Agreement submitted herewith is not given final approval by the Court and

21  effectuated, or the effective date of settlement, does not occur, or if for any reason whatsoever

22  litigation on the merits is resumed in this action at any time in the future.

23              **III.      THE PROPOSED SETTLEMENT**

24        The proposed settlement calls for a total *non-reversionary* cash settlement of $4,950,000, from

25  which the Parties propose the Court approve, based on a motion for fees and costs to be heard with the

26  anticipated motion for final approval, deductions for attorneys' fees and costs, as described below,

27  Class Representatives' enhancement payments, and settlement administration fees and costs to the

28  Settlement Administrator, Simpluris.  (Singer Decl., 13.) The Settlement Agreement provides that

1    Plaintiffs' attorneys may request, and CBS Radio will not oppose, an amount allowed by the Court not

2    to exceed $1,237,500 (up to 25%) as payment in full for all attorneys' fees, which amount is consistent

3    with the Ninth Circuit benchmark, and an estimated $30,000 as litigation costs and expenses.  (Singer

4    Decl., *Id.*)  *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.

5    1990) (holding that the benchmark attorneys' fees award in common fund cases is 25% of the fund.)

6    In addition, Plaintiffs' attorneys may request, and CBS Radio will not oppose, enhancement payments

7    not to exceed $20,000 to Plaintiff Terry Saidel, and $10,000 to Plaintiff Camille Jackson for stepping

8    forward in this matter, their service, and the risks undertaken to pay costs in the event of an

9    unsuccessful outcome, and an estimated $30,500 to Simpluris, the firm selected by the Parties as

10   administrator for giving notice to the class and claims administration, for its fees and expenses.

11   (Singer Decl., 14.)  All of the fee and enhancement payments are subject to the Court's approval.  In

12   addition to these deductions, the proposed settlement further provides for a "Reserve Fund" of $25,000

13   to be used to pay any late or disputed claims that are submitted to the Settlement Administrator and

14   that the Administrator finds were filed late with good cause.[2] (Singer Decl., 15.)

15            The remaining settlement amount ("Net Settlement Fund" or "NSF"), estimated at $3,597,000,

16   will be payable to all Eligible Settlement Class Members upon the submission of a valid and timely

17   Claim Form.  (Singer Decl., 16.)  The amount paid to such Class Members will be determined based

18   the following formula as specified in the Settlement Agreement.  The number of weeks worked by

19   each Settlement Class Member as an Account Executive at any time during the period May 3, 2003

20   through June 30, 2008 ("Class Period") will be determined in relation to the number of weeks worked

21   by all members of the Settlement Class during the Class Period.  (Singer Decl., 17.)  The pro rata

22   proportion of weeks worked by each Class Member in relation to the total number of weeks worked by

23   all Class Members will be applied to the NSF to determine individual payment amounts.  (Singer

24   Decl., 18.)  Preliminarily, based on the total number of weeks worked by Class Members according to

25   CBS records and the assumption that nearly all Class Members will file timely Claim Forms, payment

26

27   _____

28   [2]  Joint Stipulation of Class Action Settlement and Release, Paragraphs 13, 39, 40

1  for each workweek is estimated to be approximately **$49.00** *(Id.)* [3]  Each week worked by a Settlement

2  Class Member during the Class Period will be paid at this rate, subject to the adjustment explained

3  below.

4      As previously mentioned, according to CBS Radio records, there were some Settlement Class

5  Members who received expense reimbursements during the Class Period through CBS's automated

6  expense reimbursement system.  Although the applicability of these reimbursements to the claims

7  made in this case was disputed by the Parties, they have agreed to a partial, non-reversionary offset,

8  amounting to 35% of the actual expenses paid to each Settlement Class Member who was reimbursed

9  for some expenses during the Class Period, which will be applied against the calculated workweek

10  payment.[4] (Singer Decl., 19.)  The Claim Form, mailed to the Class Member along with the Notice of

11  Class Action Settlement, will state each respective Class Member's estimated total amount of money

12  he or she could expect to receive should they choose to participate in the settlement (Singer Decl., 20.)

13      Class Counsel are convinced that this settlement is in the best interest of the class based on the

14  negotiations and a detailed knowledge of the issues present in this action. (Singer Decl., 21.)

15  Specifically, Class Counsel balanced the terms of the proposed settlement against the probable

16  outcome of liability and the range of recovery at trial.  *(Id.)* The risks of obtaining class certification,

17  prevailing at trial and on appeal, and other normal perils of litigation, as well as the affirmative

18  defenses asserted by Defendant, had the potential of seriously reducing the value of the claims.  *(Id.)*

19  Moreover, the lengthy process of that would have been required to obtain a final judgment that would

20  have long delayed any payout to the Class Members absent a settlement at this possible stage were also

21  considered by Class Counsel in agreeing to the proposed settlement.  *(Id.)*

22

23

24

---

25  [3]  Since the entire Net Settlement Fund will be paid to Eligible Settlement Class Members, and since the assumption of

26  nearly 100% claim filing rate is unrealistic, the actual payout to Eligible Class Members (i.e. those who submit Claim Forms and qualify for payment) will be greater than $49 per week.

27  [4]  To illustrate this offset, a Class Member whose pro-rata payment amounts to $1,000 but who received $1,000 in expense reimbursements would be allocated $650 in settlement, with the remaining $350 going back into the NSF for pro-rata

28  distribution to other Class Members.

IV.     **THE PROPOSED NOTICE OF CLASS ACTION SETTLEMENT**
**("CLASS NOTICE")**

Under the terms of the Settlement Agreement, Plaintiffs and CBS Radio request that the Court appoint Simpluris, a professional claims administration service, as the Settlement Administrator to mail the Class Notice and perform other required claims administration services.  If, by entering the Preliminary Approval Order, the Court provides authorization to send the Class Notice to the Class Members, Simpluris will be directed to mail the Court-approved Class Notice, at the last known address.  (The proposed Class Notice is attached as Exhibit "1" to the Settlement Agreement, and is described below.)  Along with the Class Notice, an individualized Claim Form, identifying the pertinent information upon which that Class Member's pro-rata share will be based, will be mailed to the Class Member.  (The proposed Claim Form is attached as Exhibit "2" to the Settlement Agreement.) Also enclosed with the Notice and Claim Form, will be a postage paid, pre-printed return envelope addressed to the Settlement Administrator to facilitate the Class Member's response to the Notice.

Prior to the mailing of the Class Notices, the Settlement Administrator will take measures to verify and confirm accuracy of and, if possible, update a Class Member's mailing address.  In the event that any Class Notice is returned to the Settlement Administrator by the U.S. Postal Service because the address of the recipient is no longer valid, the Settlement Administrator will perform a skip trace in an effort to attempt to ascertain the current address of that particular Class Member and, if such an address is ascertained, the Settlement Administrator will re-send the Notice.

The Class Notice will explain the purpose of the Class Notice, describe the Litigation, the terms of the Settlement, and each Class Member's options and rights with regard to participating in the Settlement, objecting to the Settlement, or requesting to be excluded from the Settlement.  The Class Notice will also provide information regarding the consequences of doing nothing in response to the Class Notice, the date of the Final Approval hearing, and how Class Members can obtain additional information.

/ / /

/ / /

Also clearly identified in the Class Notice are the deadlines within which to respond to the Class Notice, i.e. 63 days, setting forth a date certain, to submit a valid and timely Claim Form, and 59 days to file and serve an objection to the Settlement, and 59 days to submit a valid and timely request for exclusion.

Furthermore, the Settlement Agreement provides for a Reminder Postcard to be mailed by the Settlement Administrator 40 days after the mailing of the original Class Notice, to those Class Members who have not responded to the Class Notice, by a return of a Claim Form or a request to be excluded, reminding them of the deadline to act.  (The proposed Reminder Postcard is attached as Exhibit "3" to the Settlement Agreement.)

## V.    SCHEDULE OF DATES FOLLOWING PRELIMINARY APPROVAL

| | | |
|---|---|---|
| 1. | Preliminary Approval [anticipated] | August 15, 2008 |
| 2. | Notice of Class Settlement Mailed to Class Members | August 29, 2008 |
| 3. | Reminder Post-Card Mailed to Non-responding Class Members (40 days after mailing of Notice) | October 8, 2008 |
| 4. | Request for Exclusions (59 days after mailing of Notice) | October 27, 2008 |
| 5. | Objections to Settlement (59 days after mailing of Notice) | October 27, 2008 |
| 6. | Claim Forms with Disputes (59 days after mailing of Notice) | October 27, 2008 |
| 7. | Claim Form Deadline | October 31, 2008 |
| 8. | Motion for Final Approval filing date | October 30, 2008[5] |
| 9. | Final Approval Hearing | December 5, 2008 |

---

[5]   As the close of the Claims Period occurs after the proposed filing of Plaintiffs' Motion for Final Approval papers, Class Counsel will obtain and submit before the Final Approval Hearing, a supplemental declaration from the Settlement Administrator updating the information previously provided regarding the claims response and other pertinent information.

# VI.    ARGUMENT

## A.    Class Action Settlements are Subject to Court Review and Approval Under the Federal Rule of Civil Procedure

Before a court evaluates a settlement under Federal Rule of Civil Procedure 23(e), it must determine the settlement class satisfies Rule 23 (a) and (b) requirements. *Id*. Then, the Court will examine the submitted materials and determine whether the proposed settlement seems fair on its face and worth submitting to class members. *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 212 (5th Cir. 1981); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

This action was settled after substantial discovery and extensive witness interviewing and declaration gathering by Plaintiffs, but just prior to Plaintiffs' moving the Court for class certification. However, this does not detract from this Court's approval of the Settlement herein.  The parties may settle a class action before certification and stipulate that a defined class be conditionally certified for settlement purposes.  See  Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2006), at p. 10-116, §10:787.  As demonstrated below, the settlement is fair, reasonable and adequate, justifying this Court's preliminary approval of the Settlement Agreement.

## B.    The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure, Rule 23 for Certification.

Preliminary approval of the settlement is justified because class certification requirements, although contested by Defendant, would have been satisfied.  Federal Rules of Civil Procedure ("FRCP") Rule 23(a) enumerates four factors the Court looks to for class certification:(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  In addition, Rule 23(b) requires that one of the following showings be made:  (1) there is risk of inconsistent or unfair adjudication; (2) the defendant acted on grounds generally applicable to

/ / /

/ / /

the class, making injunctive or declaratory relief appropriate as to the class as a whole; or (3) common

questions of law or fact predominate and class resolution is superior to other available methods for fair

and efficient adjudication of the controversy.

**1.    FRCP 23(a) Requirements for Class Certification Have Been Met.**

**a.    The Class is so Numerous that Joinder Would be Impracticable.**

The first prerequisite for certification under FRCP 23(a) is that the class must be large enough

that joinder of all members would be impracticable. There is no bright-line rule as to what constitutes

sufficient numerosity. "No exact numerical cut-off can be stated. Rather, the specific facts of each case

must be examined." *General Telephone Co. v. EEOC,* 446 U.S. 318, 330 (1980). Numerous courts

have found that classes of 100 or fewer persons are sufficiently numerous to render joinder

impracticable. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 fn.10 (9th Cir. 1982), vacated on

other grounds, 459 U.S. 810 (1982).

In the case at bar, the number of class members is estimated to be approximately 950 members,

and they are located all around California, and in some cases class members have moved out of state.

The Class Members are therefore sufficiently numerous and far-flung that it would be impracticable to

bring them all before this Court.  Here, where there is a substantial number of putative class members

who have been treated similarly, the balance falls in favor of certifying the class.

**b.    Plaintiffs Satisfy the Commonality Requirement.**

The second prerequisite for certification under Rule 23 concerns common questions of law

and/or fact common to the class.  This requirement is "construed permissively." *Hanlon v. Chrysler

Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

The predominant common questions here concern CBS' state-wide policy and/or practice of

failing to fully reimburse Class Members for costs they incurred on reasonable and necessary business

expenses.  These common questions are sufficient to satisfy Rule 23(a)(2).  *See, e.g. Vizcaino v. United

States District Court*, 173 F.3d 713, 722 (9th Cir. 1999) [employees presented common question that

they were denied benefits to which they were entitled as common law employees]; *Los Angeles Fire &

Police Protective League supra,* 23 Cal.App.3d, 67, 74 [whether lunch periods constitute on-duty time

/ / /

1   because of the constraints on employees during those breaks was a common question of law supporting

2   class certification].

3              **c.    Plaintiffs' Claims are Typical of Those of the Putative Class Members.**

4              To satisfy the typicality requirement, plaintiffs must demonstrate that their claims are typical of

5   the claims of the class. Fed. R. Civ. Proc. 23(a)(3). "Under the rule's permissive standards,

6   representative claims are typical if they are reasonably co-extensive with those of absent class

7   members; they need not be substantially identical." *Hanlon, supra*, 150 F.3d at 1020. Class

8   representatives and members of the class need only "share a common issue of law or fact" (*California*

9   *Rural Legal Assistance v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990)), and the claims

10  must be "sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Id.*,

11  quoting *Sullivan v. Chase Inv. Serv. of Boston*, 79 F.R.D. 246, 257 (N.D. Cal. 1978).

12             Here, Plaintiffs share common issues of law and fact with all current and former Account

13  Executives including, *inter alia,* the factual questions of the types of expenses they incurred and

14  whether they were fully reimbursed for all of those business expenses, and the legal questions of

15  whether CBS's failure to reimburse them for those expenses violated Labor Code §2802 and B&P

16  Code §17200, and the appropriate measures of relief if they did.

17             **d.    Plaintiffs and Their Counsel Fairly and Adequately Represent the Class.**

18             The fourth class certification prerequisite listed in FRCP 23(a)(4) requires that Plaintiffs Terry

19  Saidel and Camille Jackson, and their attorneys, "fairly and adequately protect the interests of the

20  class." A plaintiff adequately and fairly represents the interests of the putative class provided the

21  plaintiff and his or her counsel do not have any conflicts of interest with other class members and will

22  prosecute the action vigorously on behalf of the class. *Hanlon, supra,* 150 F.3d at 1020; *Lerwill v.*

23  *Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978). Courts scrutinize carefully the

24  adequacy of representation in a settlement class in order to protect the interests of absent class

25  members and to guard against collusion between plaintiff's and defense counsel. *See* Schwarzer,

26  Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL, *supra*, p. 10-116,

27  §10:788.

28  / / /

Neither Plaintiffs Saidel or Jackson, nor their counsel herein have a conflict with any putative Class Member.  As described above, Counsel has conducted thorough research and investigation into the claims of the class, including extensive discovery, interviewing numerous class members and former managers, and obtaining 20 declarations. No collusion with counsel for CBS exists –  in the event the settlement is not effectuated for any reason, Plaintiffs and their counsel are willing to prosecute this action vigorously on behalf of the class.

### 2.    FRCP 23(b) Requirements for Class Certification Have Been Met.

#### a.    There is a Risk of Inconsistent or Unfair Adjudication if the Class is not Certified.

Federal Rule of Civil Procedure 23(b)(1) requires that there be risk of inconsistent or unfair adjudication to support certification. Here, there is such a risk which could result in inconsistent judgments.  Should a formal class certification motion be presented to the Court, the Court would need to determine whether Defendant failed to fully reimburse its Account Executives for reasonable and necessary business expenses incurred by them.   Should various Courts face the issues presented in this action, it is likely the different Courts would have different interpretations of the evidence and legal issues before them, resulting in inconsistent rulings.

#### b.    Common Questions Predominate and a Class Action is the  Superior Method to Resolve this Controversy.

Under FRCP 23(b)(3) plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."

Common questions predominate over individual questions.  The predominance requirement turns on the relationship between common and individual issues. *Hanlon*, *supra*, 150 F.3d at 1022. Plaintiffs must establish that the proposed class is suitably cohesive, justifying adjudication of the case on a representative basis.  *Amchem Products, Inc. v. Windsor, supra*, 521 U.S. 591 at 623.   Here, the common questions of whether CBS failed to reimburse for reasonable and necessary business expenses incurred, and whether that failure violates the law, are the predominant issues.

/ / /

1    Moreover, a class action is a superior method to adjudicate these claims.  The class action

2  device is preferable in this type of case where a group of individuals has been treated identically in

3  terms of reimbursement of business expenses.  The class action is superior because the claims of many

4  individuals will be resolved at the same time and it eliminates the possibility of repetitious litigation.

5  If the class were not certified, each individual plaintiff would be required to present in separate and

6  duplicative proceedings essentially the same information, arguments and evidence. This multiplicity of

7  trials would be an unnecessary waste on judicial resources as well as the resources of putative class

8  members as well as CBS.  Courts certify class actions when employer practices and policies impact a

9  large numbers of workers similarly and make a class action the more efficient method to handle the

10  claims. *See Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) [in certifying a

11  class of technicians in a wage / hour action for overtime pay, the court held that "[n]umerous

12  individual actions would be expensive and time-consuming and would create the danger of conflicting

13  decisions as to persons similarly situated."].[6]

14  **C.    The Settlement Is Fair, Reasonable and Adequate**

15    In deciding whether to approve a proposed class action settlement, the Court must find that a

16  proposed settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688

17  F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983)).

18    Courts act within their discretion in approving settlements which are fair, not collusive, and

19  take into account "all the normal perils of litigation as well as the additional uncertainties inherent in

20  complex class actions." *In re Beef Industry Antitrust Litigation*, 607 F. 2d 167, 179 (5th Cir. 1979)

21  *cert. den. sub nom, Iowa Beef Processors, Inc. v. Meat Price Investigators Ass'n* 452 U.S. 905 (1981).

22  The trial court considers all relevant factors, such as "the strength of plaintiffs' case, the risk, expense,

23  complexity and likely duration of further litigation, the risk of maintaining class action status through

24  trial, the amount offered in settlement, the extent of discovery completed and the stage of the

25

26  ─────────────────

27  [6] The fact that the amount of expenses incurred by individual class members may have varied, and the calculation of damages for individual class members would present some non-common issues, does not prevent certification of a Rule 23(b)(3) class action, (*Bell v. Farmers* (2004) 115 Cal.App.4th 715, 747-751) especially in a settlement context.

28

proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Id.* Where a settlement is reached on terms agreeable to all parties, a court should disapprove of the settlement "only with considerable circumspection." *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E. D. Pa. 1975).

In the Ninth Circuit, a court affords a *presumption of fairness* to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery to allow counsel to. act and the Court to review their actions in an informed manner; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *Rodriguez v. West Publishing Corp.*, No. CV-05-3222 R(MCx) 2007 U.S. Dist. LEXIS 74849 at 33 (C.D. Ca. Sept. 10, 2007). In the case at bar, the proposed settlement was the product of serious, informed, and non-collusive negotiations. Further, Plaintiffs' counsel are three firms, and lead counsel from each of those firms, who are experienced employment class action lawyers well-qualified to prosecute this action. (*See* Singer Decl., 22 and Exhs. "2", "3" thereto.) Class Counsel has extensive experience in this type of litigation and firmly believe the Settlement is otherwise fair and proper, supporting preliminary approval by this Court.

Applying these factors to this case, it is clear that the proposed settlement provides a benefit to the class and is fair and reasonable.

### 1.    The Amount of the Settlement is a Fair Compromise of Contested, Factually Complex Claims Subject to Many Legal Uncertainties.

Plaintiffs alleged Defendant violated the California Labor Code statutes relating to reimbursement of business expenses, and such claims were suitable for adjudication in a class action. CBS disputed both any liability on Plaintiffs' claims and the claim that the case should proceed as a class action. The hotly contested nature of both major issues weighs in favor of approving a reasonable settlement.

Plaintiffs contended that their case was suitable for certification – as company-wide policies and practices that affected the employees could be established using representative testimony and documentation produced by Defendant, and separate mini-trials on liability would not be required. CBS vigorously disputed this contention, claiming that resolution of these issues required

1  individualized analysis of whether business expenses were submitted for payment and the reasons

2  therefore, as well as the amount of business expenses incurred by Class members.  Defendant

3  concluded, consequently, that because individual issues would predominate over common facts,

4  certification would be inappropriate.

5      CBS has contested liability throughout the litigation process and presented several defenses to

6  Plaintiffs' claims.  (Singer Decl., 9.)  First, it contended that it had a policy of reimbursing expenses

7  incurred by employees that were reasonable and necessary, and provided an automated process for

8  employees to submit expenses for reimbursement. *(Id.)*  Second, it argued that if Account Executives

9  did not choose to seek reimbursements, they forfeited any right to them both because they failed to

10 obtain the required advance approval and because they had waived any claim to reimbursement by not

11 making such claims under the available procedure.  *(Id.)*  Third, CBS argued that the expenses incurred

12 by Account Executives were not, in many cases, reasonable and necessary to their jobs, and therefore

13 not reimbursable under its policy or the law. *(Id.)*  Fourth, CBS argued that many employees had in

14 fact received reimbursements.  These could have proven formidable defenses, occasioning substantial

15 risk to full recovery on Plaintiffs' claims as well as the certainty of long litigation delays while CBS

16 played out its defenses. *(Id.)*

17     In the face of all of these uncertainties and risks, the Parties agreed to a compromise settlement

18 which provides for a *non-reversionary cash settlement* of $4,950,000 for the estimated 950 members of

19 the settlement class.  This is very substantial settlement in the circumstances.  A settlement is not

20 judged solely against what might have been recovered had plaintiff prevailed at trial, nor does the

21 settlement have to provide 100% of the damages sought to be fair and reasonable.  (*Linney v. Cellular*

22 *Alaska Partnership* (9th Cir. 1998) 151 F. 3d 1234, 1242*; Wershba v. Apple Computers, Inc*. (2001) 91

23 Cal.App.4th 224, 246, 250; *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App. 3d 1117, 1139

24 ["Compromise is inherent and necessary in the settlement process...even if the relief afforded by the

25 proposed settlement is substantially narrower than it would be if the suits were to be successfully

26 litigated, this is no bar to a class settlement because the public interest may indeed be served by a

27 voluntary settlement in which each side gives ground in the interest of avoiding litigation"]; *Officers*

28 *for Justice v. Civil Serv. Comm'n* (9th Cir. 1982) 688 F.2d 615, 628 ["It is well-settled law that a cash

1  settlement amounting to only a fraction of the potential recovery does not . . . render the settlement

2  inadequate or unfair"]; see, also, *In re Omnivision Technologies, Inc.* (N.D. Cal. 2007) 2007 U.S. Dist

3  LEXIS 95616, at p. 21, noting that certainty of recovery in settlement of 6% of maximum potential

4  recovery after reduction for attorney's fees was higher than median percentage for recoveries in

5  shareholder class action settlements, averaging 2.2%-3% from 2002 through 2006.)

6     In light of the uncertainties of protracted litigation, the non-reversionary cash settlement of

7  $4,950,000 reflects a fair recovery for the Class. After the Court-approved deductions identified above,

8  Class Members will receive over $49 for each week they worked during the Class Period, and the

9  average payout will be nearly $4,000 per class member; these are minimum figures which are likely to

10  increase significantly if a portion of the Class Members cannot be found or choose not to claim their

11  pro-rata shares of the Net Settlement Fund, as is likely.  (Singer Decl., 23.)

12     The policy under California law in favor of settlement in class actions and other complex cases

13  applies with particular force in this case.  Certainty of recovery is enhanced by an equitable and timely

14  consummated settlement such as that under consideration in this case.

15
       **2.     <u>The Extent of Investigation by the Parties Is Sufficient to Allow Counsel, and this
16          Court, to Conclude That the Settlement is Adequate.</u>**

17     The Parties engaged in an exchange of significant and substantive information relating to Class

18  members' business expense claims, as detailed above in Section II.    Based upon the extensive record

19  that was developed through this investigation and discovery process, Plaintiffs' counsel was able to

20  estimate class damages and assess the risks of further litigation. It was only after the Parties thoroughly

21  investigated and evaluated the strengths and weaknesses of this case, both legally and factually, and

22  extensively discussed the same, that settlement was contemplated.  This litigation, therefore, has

23  reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases

24  sufficient to support the Settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal.

25  1979).

26  / / /

27  / / /

28  / / /

**3.** **Plaintiffs' and Defendant's Counsel are Experienced and Jointly Support the Settlement, and the Settlement is the Product of Prolonged Mediated Non-Collusive Negotiations.**

This is not a case of a settlement quickly or easily reached by collusion of the Parties, but instead, a thoughtful, careful agreement to reach settlement of a challenging class action. Experienced counsel for the Parties, operating at arm's length, have weighed the strengths of the case and examined all of the issues and risks of litigation and endorse the proposed settlement, and were assisted in these efforts by an experienced, highly respected mediator who devoted significant time to the process. The view of the attorneys actively conducting the litigation "is entitled to significant weight" in deciding whether to approve the settlement. *Fisher Bros. v. Cambridge Lee Industries, Inc.*, 630 F. Supp. 482, 488 (ED.Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D.Cal. 1980), affd. 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp., supra*, 485 F. Supp. at pp. 616-617.

Both Plaintiffs' and Defendant's counsel are particularly experienced in wage and hour employment law and class actions. (Singer Decl., 3-6, 22.) In light of such experience, Counsel are well qualified to evaluate the Class Members' claims and to evaluate the terms of a possible settlement, versus the likely outcome of pre-trial motions, trial, and appeals, on a fully informed basis, and to evaluate the viability of the defenses. Class Counsel are of the view that this is a fair and reasonable settlement in light of the complexities of the case, the state of the law and uncertainties of class certification and litigation, and the good result for the Class Members. (Singer Decl., 24.)

## VII.     CONCLUSION

The Parties respectfully submit that the proposed settlement is fair, adequate, and reasonable, and that it is in the best interests of the Plaintiffs and the putative Class Members. There can be no doubt that it is within the range of reasonableness that may entitle it to final approval after notice to the class and consideration by the Court of the Class Members' responses to the settlement. Under the applicable class action criteria and guidelines, the proposed settlement should be preliminarily approved by the Court at this time, the Class should be conditionally certified for purposes of

/ / /

/ / /

/ / /

1  settlement only, and the Court should approve the Notice of Class Action Settlement to be sent to the

2  Class, and should set the Final Approval Hearing as requested.

3  Dated:  July 11, 2008                         Respectfully submitted,

4

5                                               /s/ Diana M. Khoury
                                                Morris J. Baller
6                                               Enrique Martinez
                                                Goldstein, Demchak, Baller, Borgen & Dardarian
7                                               300 Lakeside Drive, Suite 1000
                                                Oakland, CA  94612
8                                               (510)  763-9800
                                                (510)  835-1417 (fax)
9                                               mballer@gdblegal.com
                                                emartinez@gdblegal.com
10
                                                Aaron Kaufmann
11                                              David P. Pogrel
                                                Hinton, Alfert & Sumner
12                                              1646 N. California Blvd., Suite 600
                                                Walnut Creek, CA  94596
13                                              (925) 932-6006
                                                (925) 932-3412 (fax)
14                                              Kaufmann@hinton-law.com
                                                Pogrel@hinton-law.com
15
                                                Michael D. Singer
16                                              Diana M. Khoury
                                                Christopher A. Olsen
17                                              Cohelan & Khoury
                                                605 C Street, Suite 200
18                                              San Diego, California  92101
                                                (619) 595-3000
19                                              (619) 595-3001 (fax)
                                                msinger@ck-lawfirm.com
20                                              dkhoury@ck-lawfirm.com
                                                caolsen@ck-lawfirm.com
21
                                                Attorneys for Plaintiffs and the Putative Class
22

23

24

25

26

27

28