AARON KAUFMANN, CA Bar No. 148580
DAVID P. POGREL, CA Bar No. 203787
HINTON, ALFERT & SUMNER
1646 N. California Blvd., Suite 600
Walnut Creek, CA 94596
(925) 932-6006
(925) 932-3412 (fax)
Kaufmann@hinton-law.com

MORRIS J. BALLER, CA Bar No. 048928
GOLDSTEIN, DEMCHAK, BALLER,
BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 763-9800
(510) 835-1417 (fax)
mballer@gdblegal.com

MICHAEL SINGER, CA Bar No. 115301
DIANA M. KHOURY, CA Bar No. 128643
CHRISTOPHER OLSEN, CA Bar No. 236928
COHELAN & KHOURY
605 "C" Street, Suite 200
San Diego, CA 82101
(619) 595-3001
(619) 595-3000 (fax )
msinger@ck-lawFirm.com

Attorneys for Plaintiffs and the Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY SAIDEL and CAMILLE JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CBS RADIO, INC., a Delaware corporation and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: CV 07-02948-SC<br><br>CLASS ACTION<br><br>**DECLARATION OF MICHAEL D. SINGER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, CONDITIONAL CLASS CERTIFICATION, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING**<br><br>Date:            August 15, 2008<br>Time:           10:00 a.m.<br>Courtroom:   One<br>                      Hon. Samuel L. Conti<br>Complaint Filed:   May 3, 2007<br>Trial Date:    None set |

I, MICHAEL D. SINGER, declare as follows:

1.      I am managing partner with the law firm of Cohelan & Khoury, counsel of record for Plaintiffs and the putative class in this matter.  I am duly admitted to practice before all the courts of the State of California.  The following facts are within my personal knowledge and if called to testify I could and would competently testify thereto.

2.      I am a 1984 Hastings graduate, admitted to practice before the following courts: U.S Supreme Court; the Second, Third, and Ninth Circuit Courts of Appeals; United States District Court, Southern, Central, Northern, and Eastern Districts of California; and all California state courts.

3.      In 1981, Timothy D. Cohelan and Isam C. Khoury formed Cohelan & Khoury, a Partnership of Professional Law Corporations and within a few years began to focus on class actions. After joining Cohelan & Khoury in 2000, I was added as a partner to the firm in 2003. Our firm represents plaintiffs in complex and class action litigation, including wage and hour, labor and employment, antitrust, consumer protection, construction defect and other public interest type class actions.

4.      Our firm is an accredited MCLE provider on class action law, and I regularly participate as an MCLE seminar presenter, particularly on wage and hour class action issues. Timothy D. Cohelan, is the author of Cohelan on California Class Actions (1997-2006 Thomson West), part of Thomson West's Expert Series.  I am a contributor to the Los Angeles Daily Journal on class action and employment issues and regularly contribute amicus curaie briefs on employment issues for the California Employment Lawyers Association.   I briefed and argued as amicus curiae on behalf of California Employment Lawyers Association ("CELA") in the *National Steel and Shipbuilding Company v. Superior Court* (2006) 135 Cal.App.4th 1072, and, on behalf of CELA, submitted an amicus curiae brief in *Murphy v. Kenneth Cole Productions, Inc.*, (2005) 134 Cal.App.4th 728.

5.      Cohelan & Khoury has recognized expertise and experience in efficient class action adjudication and resolution.  Within the last four years, Cohelan & Khoury has played a central role in the resolution of many wage and hour class action cases which have received final approval by the Court, in both state and federal courts, including many in the Northern, Central and Southern District Courts of California, to wit: *Mayville, et al. v. Kor Hotel Group, L.L.C.*, United State District Court

2

1    Case No.CV04-8461 [rest and meal period claims for hotel employees], *Higgins, et al. v. Kohl's*

2    *Department Stores, Inc., et al.*, San Diego County Superior Court Case No. GIC832853 [consumer

3    claims relating to sweepstakes contest], *Miller v. Men's Wearhouse, Inc,* Orange County Superior

4    Court Case No. 03CC00132 [overtime misclassification claims by retail managers], *Erickson, Maddox*

5    *v. Bath & Body Works*, San Diego Superior Court Case No. GIC823899 [rest and meal period claim by

6    retail employees], *Seautelle v. Tuesday Morning, Inc.*, San Diego Superior Court Case No. GIC822747

7    [meal period claim by retail employees], *Lynch v. Matrix Direct, Inc.*, San Diego Superior Court Case

8    No.GIC834808 [overtime misclassification claim by insurance salespeople]; *Hogue v. WH Smith of*

9    *Nevada Inc., et al.,* San Diego Superior Court Case No. GIC830653 [rest, meal, and off-the-clock

10   claims by retail employees], *Robles v Del Taco, Inc.*, Orange County Superior Court Case

11   No.03CC00529 [rest, meal, and off-the-clock claims by restaurant employees], *Montano v. Nextel of*

12   *California, Inc.*, Orange County Superior Case No. 03CC04391 [expense reimbursement claim by

13   commission employees], *Holden v. Volume Services of America*, Orange County Superior Court Case

14   No.03CC00191 [rest and meal period claim by concessionaires], *AT&T WIRELESS COMMISSION*

15   *CASES* , Santa Clara Superior Court Case No. JCCP 4337 [wage deduction claim by commission

16   employees], *Miles, et al. v. Kaiser Foundation Hospitals*, Los Angeles Superior Court Case No. BC

17   343535 [OT misclassification claim by IT employees], *Bates v. Haralambos*, Los Angeles Superior

18   Case No. BC329787 [rest and meal period claim by delivery drivers], *Bennett v. Countrywide*, San

19   Diego Superior Court, Case No. GIC840981 [expense reimbursement claim by commission

20   employees], *Hayhurst et al., v. Barclays Global Investors USA, Inc.*, San Francisco Superior Court,

21   Case No. CGC 05-443473 [OT misclassification claim by IT employees], *Mabry v. Pete's Connection*,

22   Orange County Superior Court, Case No. 04CC00509 [OT claim by installers]; *Tayrien v. U.S.*

23   *Foodservice, Inc.*, Orange County Superior Court, Case No.  No. 05CC00023 [OT claim by office

24   personnel], *Lawrence, Vierling v. Robinsons-May, Inc.*, San Diego Superior Court, Case No. GIC

25   863727 [rest and meal period claim by retail employees], *Ryberg, Schmidt v. Applebee's International,*

26   *Inc.*, San Diego Superior Court Case No. GIC 854304 [[OT misclassification claim by restaurant

27   managers], *Clark/Prouty v. Michaels Stores, Inc.,* [rest and meal period claim by retail employees],

28   United States District Court, Case No. 05-CV-1678, (2007 U.S. Dist. LEXIS 84486), *Shriver, et al. v.*

3

DECLARATION OF MICHAEL D. SINGER IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT, CONDITIONAL CLASS CERTIFICATION, APPROVAL
OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING- CASE NO.: CV 07-02948-SC

1    *M.A.C. Cosmetics*, United States District Court Case No. SACV 06-601 [OT misclassification claim

2    for retail managers and rest and meal period claim for hourly retail employees], and *Huang v. SBC*

3    *Services, Inc., et al.*, United States District Court Case No. 06-CV-2238 [OT misclassification claim by

4    IT employees], among others.

5        6.     Together with co-counsel firms of Hinton, Alfert & Sumner, Goldstein, Demachak,

6    Baller and Borgen & Dardarian, Cohelan & Khoury, principally through myself as well as other

7    attorneys in the firm, investigated and evaluated the claims alleged in this class action, principally of

8    alleged CBS Radio's failure to fully reimburse its Account Executives for business-related expenses

9    related to usage of their cell phones, mileage, and other business related expenses in violation of

10    California's Labor Code Section 2802. Labor Code Section 2802 specifically states that an employer

11    shall fully indemnify its employees for all necessary business-related expenditures. Our firms

12    evaluated CBS Radio's defenses thereto, corresponded and interacted with defense counsel in this

13    matter extensively, reviewed and analyzed documents and data produced by Defendants through

14    formal discovery.

15        7.     Plaintiffs Terry Saidel and Camille Jackson worked for CBS Radio as Account

16    Executives during the Class Period. Like other Class Members, Saidel and Jackson incurred gas, cell

17    phone, client meals and entertainment, and gift expenses, which were not fully reimbursed by CBS.

18    Consequently, they filed this class action complaint against CBS on May 3, 2007, in the Superior

19    Court of California, County of Alameda. Defendants, however, successfully removed to federal court

20    and filed its answer thereafter.

21        8.     The gravamen of Plaintiffs' Complaint is that CBS failed to fully reimburse business

22    expenses in violation of California Labor Code § 2802. The Complaint also alleged violations of

23    California Business & Professions Code §17200, *et seq.* and sought restitution of unreimbursed

24    amounts spent for business expenses. Plaintiffs also sought penalties, costs, interest, reasonable

25    attorneys' fees and injunctive relief.

26        9.     CBS has contested liability throughout the litigation process and presented several

27    defenses to Plaintiffs' claims. First, it contended that it had a policy of reimbursing expenses incurred

28    by employees that were reasonable and necessary, and provided an automated process for employees

1    to submit expenses for reimbursement.  Second, it argued that if Account Executives did not choose to

2    seek reimbursements, they forfeited any right to them both because they failed to obtain the required

3    advance approval and because they had waived any claim to reimbursement by not making such claims

4    under the available procedure.  Third, CBS argued that the expenses incurred by Account Executives

5    were not, in many cases, reasonable and necessary to their jobs, and therefore not reimbursable under

6    its policy or the law.  Fourth, CBS argued that many employees had in fact received reimbursements.

7    These could have proven formidable defenses, occasioning substantial risk to full recovery on

8    Plaintiffs' claims as well as the certainty of long litigation delays while CBS played out its defenses.

9         10.     The parties have engaged in extensive discovery and investigation in preparation for a

10    class certification motion. The parties have exchanged detailed initial and supplemental disclosures.

11    Plaintiffs propounded 40 document requests, seven interrogatories, and 12 requests for admissions.

12    CBS propounded 95 interrogatories and 74 document requests.  In all the parties have produced over

13    1,500 pages of documents, including various employee handbooks and manuals.  CBS also produced

14    computerized expense reimbursement data, and Plaintiffs served 20 declarations obtained from class

15    members.

16         11.     Plaintiffs took the depositions of three CBS management witnesses as well as a Rule

17    30(b)(6) deposition of CBS. CBS deposed the named Plaintiffs and a former manager declarant, whose

18    declaration supported Plaintiffs' allegations.

19         12.     As a result of these efforts, Plaintiffs were prepared to move for class certification when

20    the parties reached the proposed settlement.

21         13.     The settlement was the result of an extended mediation process.  On March 12, 2008,

22    the Parties participated in a full-day mediation in San Francisco before Mark Rudy, a respected and

23    experienced mediator with substantial expertise in wage and hour class actions.  The parties were

24    unable to resolve the matter but agreed to exchange more information and Mr. Rudy continued to

25    discuss issues with the parties separately.  Mr. Rudy conducted a second day of mediation on May 21,

26    2008.  While the Parties did not resolve the matter at that time, they subsequently agreed upon a

27    settlement in concept and total amount, on June 2, 2008, with the balance of the settlement terms

28    agreed upon through arms-length negotiations that continued through the date that the Joint Stipulation

1  of Class Action Settlement and Release ("Settlement Agreement") was signed by the Parties.  The

2  Settlement Agreement (with its exhibits) is attached hereto as Exhibit "1" and incorporated herein.

3      a.   The proposed settlement calls for a total *non-reversionary* cash settlement of

4         $4,950,000, from which the Parties propose the Court approve, based on a motion for

5         fees and costs to be heard with the anticipated motion for final approval, deductions for

6         attorneys' fees and costs, Class Representatives' enhancement payments, and settlement

7         administration fees and costs to the Settlement Administrator, Simpluris.

8      b.   The Settlement Agreement provides that Plaintiffs' attorneys may request, and CBS

9         Radio will not oppose, an amount allowed by the Court not to exceed $1,237,500 (up to

10        25%) as payment in full for all attorneys' fees, which amount is consistent with the

11        Ninth Circuit benchmark, and an estimated $30,000 as litigation costs and expenses.

12    14.    In addition, Plaintiffs' attorneys may request, and CBS Radio will not oppose,

13  enhancement payments not to exceed $20,000 to Plaintiff Terry Saidel and $10,000 to Plaintiff Camille

14  Jackson for stepping forward in this matter, their service, and the risks undertaken to pay costs in the

15  event of an unsuccessful outcome, and an estimated $30,500 to Simpluris, the firm selected by the

16  Parties as administrator for giving notice to the class and claims administration, for its fees and

17  expenses.

18    15.    In addition to these deductions, the proposed settlement further provides for a "Reserve

19  Fund" of $25,000 to be used to pay any late or disputed claims that are submitted to the Settlement

20  Administrator and that the Administrator finds were filed late with good cause. (Settlement

21  Agreement, paragraphs 13, 39, and 40.)

22    16.    The remaining settlement amount ("Net Settlement Fund" or "NSF"), estimated at

23  $3,597,000, will be payable to all Eligible Settlement Class Members upon the submission of a valid

24  and timely Claim Form.

25    17.    The amount paid to such Class Members will be determined based the following

26  formula as specified in the Settlement Agreement.  The number of weeks worked by each Settlement

27  Class Member as an Account Executive at any time during the period May 3, 2003 through June 30,

28  2008 ("Class Period") will be determined in relation to the number of weeks worked by all members of

1    the Settlement Class during the Class Period.

2         18.    The pro rata proportion of weeks worked by each Class Member in relation to the total

3    number of weeks worked by all Class Members will be applied to the NSF to determine individual

4    payment amounts.  Preliminarily, based on the total number of weeks worked by Class Members

5    according to CBS records and the assumption that nearly all Class Members will file timely Claim

6    Forms, payment for each workweek is estimated to be approximately **$49.00**.  However, since the

7    entire Net Settlement Fund will be paid to Eligible Settlement Class Members, and since the

8    assumption of nearly 100% claim filing rate is unrealistic, the actual payout to Eligible Class Members

9    (i.e. those who submit Claim Forms and qualify for payment) will be greater than $49.00 per week.

10        19.    According to CBS Radio records, there were some Settlement Class Members who

11   received expense reimbursements during the Class Period through CBS's automated expense

12   reimbursement system.  Although the applicability of these reimbursements to the claims made in this

13   case was disputed by the Parties, they have agreed to a partial, non-reversionary offset, amounting to

14   35% of the actual expenses paid to each Settlement Class Member who was reimbursed for some

15   expenses during the Class Period, which will be applied against the calculated workweek payment.

16   (To illustrate this offset, a Class Member whose pro-rata payment amounts to $1,000 but who received

17   $1,000 in expense reimbursements would be allocated $650 in settlement, with the remaining $350

18   going back into the NSF for pro-rata distribution to other Class Members.)

19        20.    The Claim Form, mailed to the Class Member along with the Notice of Class Action

20   Settlement, will state each respective Class Member's estimated total amount of money he or she could

21   expect to receive should they choose to participate in the settlement.

22        21.    Class Counsel are convinced that this settlement is in the best interest of the class based

23   on the negotiations and a detailed knowledge of the issues present in this action.  Specifically, Class

24   Counsel balanced the terms of the proposed settlement against the probable outcome of liability and

25   the range of recovery at trial.  The risks of obtaining class certification, prevailing at trial and on

26   appeal, and other normal perils of litigation, as well as the affirmative defenses asserted by Defendant,

27   had the potential of seriously reducing the value of the claims.  Moreover, the lengthy process of that

28   would have been required to obtain a final judgment that would have long delayed any payout to the

1  Class Members absent a settlement at this possible stage were also considered by Class Counsel in

2  agreeing to the proposed settlement.

3       22.    Co-Counsel, Morris J. Baller of Goldstein, Demchak, Baller, Borgen & Dardarian, and

4  Aaron Kaufmann of Hinton, Alfert & Sumner, are seasoned and experienced class action lawyers,

5  specializing in consumer and wage and hour litigation.  Their curriculum vitae, demonstrating such

6  skill, knowledge and experience in cases of the type filed herein, are attached hereto as Exhibits "2"

7  and "3".  With such experience, Co-Counsel and this firm were able to fully evaluate the claims

8  asserted by Plaintiffs, defendant's defenses thereto, conduct the necessary to discovery to motion the

9  court for class certification, as well as to evaluate the class-wide potential damages suffered by the

10  class of Account Executives.  Class Counsel firmly believe the Settlement is otherwise fair and proper,

11  supporting preliminary approval by this Court.

12       23.    In light of the uncertainties of protracted litigation, the non-reversionary cash settlement

13  of $4,950,000 reflects a fair recovery for the Class. After the Court-approved deductions identified

14  above, Class Members will receive over $49 for each week they worked during the Class Period, and

15  the average payout will be nearly $4,000 per class member; these are minimum figures which are

16  likely to increase significantly if a portion of the Class Members cannot be found or choose not to

17  claim their pro-rata shares of the Net Settlement Fund, as is likely.

18       24.    Class Counsel are of the view that this is a fair and reasonable settlement in light of the

19  complexities of the case, the state of the law and uncertainties of class certification and litigation, and

20  the good result for the Class Members.

21       25.    The terms of the Settlement Agreement were finally concluded on the date this

22  declaration was signed, as such the Settlement Agreement submitted herewith is without the signature

23  of Defendant CBS Radio, Inc.; Counsel for CBS has authorized Class Counsel to represent to the Court

24  and the Parties that it has agreed on all language contained therein and that it should be fully executed

25  ///

26  ///

27  ///

28  ///

DECLARATION OF MICHAEL D. SINGER IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT, CONDITIONAL CLASS CERTIFICATION, APPROVAL
OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING- CASE NO.: CV 07-02948-SC

1    within the next few business days.  Class Counsel will deliver such signatures to the Court for filing

2    prior to the Preliminary Approval Hearing.

3        I declare under penalty of perjury under the laws of the State of California that the foregoing is

4    true and correct and that this Declaration was executed on July 11, 2008, at San Diego, California.

5

6                                /s/ Michael D. Singer
                                 Michael D. Singer
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MICHAEL D. SINGER IN SUPPORT OF  MOTION FOR  PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT, CONDITIONAL CLASS CERTIFICATION, APPROVAL
OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING- CASE NO.:  CV 07-02948-SC

# EXHIBIT 1

**(JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE)**

1  Aaron Kaufmann, Esq., SBN 148580
   David P. Pogrel, Esq., SBN 203787
2  HINTON, ALFERT & SUMNER
   1646 N. Calif. Blvd., Suite 600
3  Walnut Creek, CA 94596
   Telephone:    (925) 932-6006
4  Facsimile:    (925) 932-3412

5  Attorneys for Plaintiffs and the Putative Class

6  Rebecca Eisen, SBN 096129
   Theresa Mak, SBN 211435
7  MORGAN, LEWIS & BOCKIUS, LLP
   One Market, Spear Street Tower
8  San Francisco, CA  94105-1126
   Telephone:  415.442.1000
9  Facsimile:  415.442.1001

10  Attorneys for Defendant CBS Radio, Inc.

11  [Additional Counsel Appear on Next Page]

12                **UNITED STATES DISTRICT COURT**

13               **NORTHERN DISTRICT OF CALIFORNIA**

14                  **(SAN FRANCISCO DIVISION)**

15

16  TERRY SAIDEL and CAMILLE JACKSON,          **CLASS ACTION**
    individually and on behalf of all others similarly
17  situated,                                   **Case No.:  CV 07-02948-SC**

18            Plaintiffs,                       **JOINT STIPULATION OF CLASS ACTION
                                                SETTLEMENT AND RELEASE**
19        v.

20  CBS RADIO, INC., a Delaware Corporation; and
    DOES 1 through 10, inclusive,
21
              Defendants.
22

23

24

25

26

27

28

1

Additional Counsel for Plaintiffs and the Putative Class:

2

Morris J. Baller, Esq., SBN 048928
GOLDSTEIN, DEMCHAK, BALLER,
3       BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
4  Oakland, CA 94612
Telephone:    (510) 763-9800
5  Facsimile:    (510) 835-1417

6

Michael D. Singer, Esq., SBN 115301
Diana M. Khoury, Esq., SBN 128643
7  Christopher A. Olsen, Esq., SBN 236928
COHELAN & KHOURY
8  605 C Street, Suite 200
San Diego, CA 92101-5305
9  Telephone:    (619) 595-3001
Facsimile:    (619) 595-3000

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  INTRODUCTION

1.     This Joint Stipulation of Class Action Settlement and Release (hereinafter "Settlement Agreement") is made and entered into by and between the following Parties:  Plaintiffs Terry Saidel ("Saidel") and Camille Jackson ("Jackson") (collectively "Plaintiffs" or "Class Representatives"), individually and on behalf of all others similarly situated, and Defendant CBS Radio Inc. ("CBS Radio" or "Defendant").  This Settlement Agreement is subject to the terms and conditions set forth below and to the approval of the Court.  This Settlement Agreement supersedes any and all prior memoranda of understanding and sets forth the Parties' class action settlement, as detailed below, of all class claims for alleged reimbursable business expenses, and associated penalties, interest and other remedies.

## II.  DEFINITIONS

1.     "Parties" means Saidel, Jackson and CBS Radio.

2.     "Account Executives," "Settlement Class" and "Settlement Class Members" shall mean all account executives who are identified on CBS Radio's records as employed by CBS Radio in California during some or all of the Class Period, and had not previously brought and/or released the Class Claims asserted in this Action through either a court or administrative proceeding.

3.     "Eligible Settlement Class Members" means those members of the Settlement Class who submit timely claim forms and/or who do not request to be excluded, *i.e.*, those who do not opt out of the settlement or who opt out but rescind the opt-out in a timely manner.

4.     "Class Claims" means any claims arising out of or related to (1) the alleged right by Account Executives to be reimbursed for expenses incurred during the Class Period in the course and scope of their employment, and (2) the other allegations made in Plaintiffs' Amended Complaint in the Action.

5.     "Action" means the litigation currently pending in the United States District Court for the Northern District California before the Honorable Samuel Conti, Case No. 07-CV-02948-SC.

6.     "Class Counsel" means the law firms of Hinton, Alfert & Sumner, Walnut Creek, California; Goldstein, Demchak, Baller, Borgen & Dardarian, Oakland, California; and Cohelan & Khoury, San Diego, California.

7.     "Class Period" means May 3, 2003 to June 30, 2008.

8.     "Class Representatives" means Terry Saidel and Camille Jackson, the named Plaintiffs in this Action.

9.     "Notice of Class Action Settlement or Opportunity to Request Exclusion or Object to Settlement" ("Notice of Class Action Settlement") means the form to be approved by the Court, and attached hereto as Exhibit A.

10.     "Claim Form" means the form to be approved by the Court, and attached hereto as Exhibit B.

11.     "Reminder Postcard" means the postcard attached hereto as Exhibit C

12.     "Settlement Fund" means the amount of four million nine hundred and fifty thousand dollars ($4,950,000) which is to be paid by CBS Radio for any and all obligations of CBS Radio set forth in this Settlement Agreement, including but not limited to payments to Eligible Class Members, Class Counsel, Saidel, Jackson, expenses incurred by the Settlement Administrator, and all taxes, interest, and penalties, as specified in this Agreement.

13.     "Reserve Fund" means $25,000 to be deducted from the Settlement Fund and held by Settlement Administrator in an interest-bearing account to be used to pay any late or disputed claims that are submitted to the Settlement Administrator and deemed by the Settlement Administrator to be with good cause.

14.     "Net Settlement Fund" means the balance of the Settlement Fund after payments have been made for attorneys' fees, litigation costs, settlement administration costs, and the Class Representatives' Participation Payments.

15.     "Settlement Administrator" means Simpluris, Inc.

16.     "Settlement Effective Date" means the date on which this Settlement is finally approved as provided herein and the Court enters Final Judgment and Order of Dismissal with Prejudice ("Final Judgment" or "Judgment").

17.     "Final Effective Date" means the date on which the Final Judgment becomes effective. It will be the latest of: (i) the date of final affirmation on appeal of the Final Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Final Judgment; or (iii) if no appeal

2

1  is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the

2  Final Judgment by any Class Member who files an objection to the settlement with the Court.

3  Notwithstanding the foregoing, any proceeding or order, or an appeal or petition for a writ, pertaining

4  solely to the award of Class Counsels' attorneys' fees shall not, by itself, in any way delay or

5  preclude the Final Judgment from becoming effective.

6       18.    "Total Actual Reimbursements" refers to the total sum of all amounts paid by CBS

7  Radio to Settlement Class Members during the period of January 1, 2004 through June 30, 2008, for

8  reimbursement of business-related expenses, as recorded in CBS Radio's TREX system.

9       19.    "Discounted Total Actual Reimbursements" refers to thirty-five percent (35%) of

10 Total Actual Reimbursements.

11      20.    "Actual Reimbursements" refers to the actual reimbursements paid to each Settlement

12 Class Member during the period of January 1, 2004 through June 30, 2008, as recorded in CBS

13 Radio's TREX system.

14      21.    "Discounted Actual Reimbursements" refers to thirty-five percent (35%) of the Actual

15 Reimbursements

16      22.    "Total Expense Fund" is the sum of Discounted Total Actual Reimbursements and Net

17 Settlement Fund.

18           **III.**    **LITIGATION BACKGROUND**

19      23.    On May 3, 2007, Plaintiffs filed this Action in Alameda County Superior Court, on

20 behalf of themselves and others similarly situated, seeking reimbursement for business-related

21 expenses incurred, as well as interest and penalties, including waiting time penalties, thereon.  On

22 June 6, 2007, CBS Radio removed the Action to the United States District Court for the Northern

23 District of California.

24      24.    CBS Radio has denied and continues to deny each of the claims and contentions

25 alleged by Plaintiffs in the Action.  CBS Radio has repeatedly asserted and continues to assert

26 defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability

27 arising out of any of the facts or conduct alleged in the Action.  Neither this Agreement nor any

28 document referred to or contemplated herein, nor any action taken to carry out this Agreement, is,

1    may be construed as, or may be used as an admission, concession or indication by or against CBS

2    Radio of any fault, wrongdoing or liability whatsoever.

3        25.    The Parties have conducted significant investigation of the facts and law during the

4    prosecution of this Action.  This investigation has included, among other things, the exchange of

5    information pursuant to depositions, formal and informal written discovery, numerous conversations

6    between representatives of the Parties, interviews of potential witnesses, and the exchange of

7    information prior to and during two confidential private mediation sessions.  Counsel for the Parties

8    have further investigated the applicable law as applied to the facts regarding the alleged claims of

9    Plaintiffs and potential defenses thereto, and the damages claimed by Plaintiffs.  In pertinent part,

10   based upon this investigation, Plaintiffs contend that CBS Radio unlawfully failed to reimburse

11   Account Executives for certain routine business expenses that they necessarily incurred, including

12   vehicle-related expenses, cellular phone expenses, and client meals, entertainment, and gifts.  CBS

13   Radio contends that it maintained a lawful expense reimbursement policy at all times, and that any

14   failure to reimburse reasonable and necessary expenses was due to individual Account Executives'

15   failure to submit such expenses and request reimbursement.  Plaintiffs claim damages for the

16   allegedly unreimbursed business expenses.  CBS Radio denies that Plaintiffs or Settlement Class

17   Members are entitled to recover any such damages.

18       26.    The Parties agreed to engage in mediation and selected Mark Rudy, Esq., of Rudy,

19   Exelrod & Zieff, as the mediator.

20       27.    The Parties participated in a full day of mediation on March 12, 2008 at which

21   representatives of the Parties participated and each side was represented by counsel.  The Parties did

22   not resolve the matter during the first day of mediation.  However, they agreed to schedule a second

23   day of mediation on May 21, 2008.

24       28.    The Parties participated in a second full day of arms-length negotiation, assisted by

25   Mr. Rudy, on May 21, 2008.  Again, representatives of the Parties participated in the mediation.

26   While the Parties did not resolve the matter during the second day of mediation, they subsequently

27   agreed upon a settlement in concept, on June 2, 2008, with the balance of the settlement terms agreed

28   upon through arms-length negotiations through the date that this Settlement Agreement was signed

1    by the Parties.

2        29.    It is the desire of the Parties to fully, finally, and forever settle, compromise, resolve,

3    and discharge all disputes and claims arising from or related to the above-captioned action.  It is the

4    intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement

5    and release of the Class Claims.  This release shall include CBS Radio and all present and former

6    parent companies, predecessor companies, subsidiaries, stations, shareholders, officers, directors,

7    employees, agents, servants, registered representatives, attorneys, insurers, affiliates, predecessors,

8    successors and assigns of CBS Radio, and all successors, heirs, and/or assigns of Saidel, Jackson and

9    the Eligible Settlement Class Members.

10        30.    Neither this Agreement nor any documents referred herein, nor any action taken to

11    carry out this Settlement Agreement is, or may be construed as or may be used as, an admission by or

12    against any of the Parties or other counsel as to the merits or lack thereof of the claims asserted. If the

13    Court fails to grant final approval of this Settlement Agreement, the Parties may litigate the matter as

14    if no settlement was ever reached.

15        NOW, THEREFORE, in consideration of the mutual covenants, promises, and warranties set

16    forth herein, the Parties agree, subject to the Court's approval, as follows:

17                          **IV.    JURISDICTION**

18        31.    The United States District Court for the Northern District of California has jurisdiction

19    over the Parties and the subject matter of this Action.  Subject to the limitations provided herein, this

20    Court will have continuing jurisdiction over the terms and conditions of this Settlement Agreement,

21    until all payments and obligations contemplated herein have been fully executed.

22                          **V.    TERMS OF SETTLEMENT**

23    **A.    Certification.**

24        32.    The Settlement Class may be preliminarily and conditionally certified as a class action

25    pursuant to the Federal Rules of Civil Procedure, Rule 23(b)(3), for the purposes of the monetary

26    relief provided in this Settlement Agreement.

27    ///

28

**B.    No Approval.**

33.    In the event that this Settlement Agreement, or any modified Settlement Agreement accepted by the Parties, is not approved by the Court, fails to become effective, or is reversed by the Court or an appellate court on an appeal or grant of review of the Court's approval: the Settlement Agreement shall have no further force or effect; the Settlement Agreement shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; the preliminary and conditional certification of the class shall automatically be null and void and the fact of such certification shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and none of the Parties will be deemed to have waived any claims, objections, defenses or arguments with respect to the issue of class certification or with respect to the merits of any issues presented by the First Amended Complaint.

**C.    Settlement Payments.**

34.    CBS Radio shall pay four million nine hundred and fifty thousand dollars ($4,950,000.00), referred to as the Settlement Fund, as specified in this Settlement Agreement.  The Net Settlement Fund and the Reserve Fund shall be distributed to Eligible Settlement Class Members, and, if necessary, one or more *cy pres* beneficiaries, as provided in this Settlement Agreement.

35.    Class Counsel will apply to the Court for, and CBS Radio will not oppose, reimbursement of Class Counsel's litigation costs and expenses actually incurred, presently estimated to be $29,000 to $32,000, but subject to adjustment as incurred, to be paid from the Settlement Fund.

36.    Class Counsel will apply to the Court for, and CBS Radio will not oppose, payment of attorneys' fees incurred by Class Counsel on behalf of the Plaintiffs and the Settlement Class Members in the amount of $1,237,500, which amounts to twenty-five percent (25%) of the Settlement Amount, to be paid from the Settlement Fund.

37.    Class Counsel will apply to the Court for, and CBS Radio will not oppose, payments of class participation awards of $20,000 to Saidel and $10,000 to Jackson in their capacity as Class Representatives, to be paid from the Settlement Fund.

38.     As set out below, the Parties will employ the Settlement Administrator to administer the sending of the Notice of Class Action Settlement, the Claim Form, and the Reminder Postcard to the Settlement Class Members, the receipt of Claim Forms, requests for exclusion, and objections to the settlement, if any, from Settlement Class Members, and the mailing of checks for the appropriate portion of the Net Settlement Fund and Reserve Fund to Eligible Settlement Class Members.  All costs of this administration process, including fees of the Settlement Administrator, shall be paid from the Settlement Fund subject to billing by the Settlement Administrator and approval by Class Counsel and Counsel for CBS.

39.     As part of Plaintiffs' Motion for Preliminary Approval, Class Counsel will also seek the Court's approval for the Reserve Fund to pay any late or disputed claims received from Eligible Settlement Class Members and approved by the Settlement Administrator after being deemed to be with good cause.  The Reserve Fund shall be held in a separate interest bearing account.  All interest accrued shall remain in the Reserve, together with the Reserve Fund Principal, used to pay such approved late or disputed claims submitted by class members, and, for late claims, for which the Settlement Administrator deems to have good cause for late submission.

40.     Any amount remaining in the Reserve Fund after all such payments have been made shall be paid to the Court-approved *cy pres* beneficiary, as provided for in this Settlement Agreement.  CBS Radio shall have no obligation to pay any amount greater than the Settlement Fund amount ($4,950,000) due to claims from the Reserve Fund.  By way of example only, if the Reserve Fund is not sufficient to pay late or disputed funds, CBS shall have no obligation to pay any additional amounts to satisfy those claims even if the Settlement Administrator determines those claims are recoverable as provided in this Settlement Agreement and there is no money remaining in the Reserve Fund.

41.     The Settlement Administrator shall determine each Settlement Class Member's estimated and each Eligible Settlement Class Member's final pro rata portion of the Net Settlement Fund as follows:

> a.  First, the Settlement Administrator shall add the Discounted Total Actual Reimbursements to the Net Settlement Fund.  The resulting figure is referred to as the

"Total Expense Fund." This accounting does not require that CBS Radio pay any additional funds over the Settlement Fund amount ($4,950,000), but is an accounting performed solely for estimating and ultimately computing each Settlement Class Member's pro rata portion of the Net Settlement Fund.

b. Second, the Settlement Administrator shall divide the Total Expense Fund by the total number of weeks worked by all such Settlement Class Members as Account Executives in California during the Class Period according to CBS Radio's records[1] to calculate a value per week.

c. Third, for each such Settlement Class Member, the Settlement Administrator shall multiply that value per week times the number of weeks the Settlement Administrator determines that such Settlement Class Member was employed in California during the Class Period as an Account Executive. The resulting figure will be that Settlement Class Member's estimated share of the Total Expense Fund, which shall be adjusted as described below to compute each Settlement Class Member's estimated pro rata portion of the Net Settlement Fund.

d. Fourth, for each Settlement Class Member, the Settlement Administrator shall determine the Discounted Actual Reimbursements paid to such Settlement Class Member during the period of January 1, 2004 through June 30, 2008.

e. Fifth, for each such Settlement Class Member, the Settlement Administrator shall subtract that Settlement Class Member's Discounted Actual Reimbursements from his/her share of the Total Expense Fund as determined in subsection (c), above. This amount shall be the Settlement Class Member's estimated pro rata portion of the Net Settlement Fund, and shall be included in the Claim Form sent to each Settlement Class Member. Should this

---

[1] The number of such weeks shall be reduced by any leave of absence greater than two (2) consecutive weeks. The number shall not otherwise be reduced by vacation time, sick leave time, part-time work status, leave of absence two weeks or less, or other variations in the amount of actual working time spent by Settlement Class Members during their period of covered employment as Account Executives.

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

1  pro rata share be less than $100, the estimated share of the Settlement Class Member shall

2  be $100.00.

3    f.  Sixth, the Settlement Administrator shall consider and finally resolve any challenges to

4  the information used to calculate the estimated or final amounts due to any Eligible

5  Settlement Class Member who makes such a challenge, according to procedures

6  determined by the Settlement Administrator, which shall not delay the distribution of the

7  Net Settlement Fund to Eligible Settlement Class Members.

8    g.  Seventh, after resolving any challenges, the Settlement Administrator shall determine each

9  Eligible Settlement Class Member's final pro rata portion of the Net Settlement Fund by

10  reallocating any unclaimed funds to Settlement Class Members in proportion with each

11  Eligible Settlement Class Member's  pro rata share of the Net Settlement Fund, as

12  specified in subparagraphs a-f, above.  The Claims Administrator will conduct this

13  accounting for the redistribution of unclaimed Settlement Class Member payments,

14  adding the proportionate amounts to each Eligible Settlement Class Member's payment

15  before completing the final calculation of payments.

16    h.  For each eligible Settlement Class Member who collects from the Reserve Fund due to a

17  late or disputed claim, such Member's final pro rata share shall be equal to such

18  Member's  estimated pro rata share of the Net Settlement Fund as described in

19  subparagraph (e), above, or as determined by the Settlement Administrator pursuant to

20  subparagraph (g), above.

21      42.  Eligible Settlement Class Members will receive checks in an amount equal to their pro

22  rata portion of the Net Settlement Fund to which such Eligible Settlement Class Members are entitled

23  under paragraph 41.g of this Agreement, except for those Eligible Settlement Class Members who

24  collect from the Reserve Fund due to a late or disputed claim will receive checks as described in

25  paragraph 41.h of this Agreement.

26      43.  All payments made to Eligible Settlement Class Members for alleged reimbursable

27  business expenses, penalties thereon, and interest thereon will be reported to the IRS as such on IRS

28  Form 1099 MISC, with no federal, state and/or local income and/or employment taxes withheld.

44.     Eligible Settlement Class Members shall be solely responsible for the reporting and payment of the employee/Eligible Class Member's portion of any federal, state, and/or local income or other tax and any other withholdings, if any, on the payments made pursuant to this Settlement Agreement.  It is understood and agreed that neither CBS Radio, Plaintiffs, nor Plaintiffs' Counsel makes or has made any representations as to the taxability of any portions of the Settlement Payments to the Eligible Settlement Class Members, the impact of receipt of these payments on any prior tax filings made by Eligible Settlement Class Members or the payment of any costs or award of attorneys' fees, or any payments to the Class Representatives.   The Notice of Class Action Settlement will advise Settlement Class Members to seek their own tax advice prior to acting in response to that Notice, and the Class Representatives and Class Counsel agree that Settlement Class Members will have an adequate opportunity to seek tax advice prior to acting in response to the Notice of Class Action Settlement.  Eligible Settlement Class Members shall not be responsible for payment of the employer's share of any tax liabilities, if any, that the IRS, California Franchise Tax Board, or other regulatory agency of court may determine are owed by CBS Radio.

45.     The Settlement Administrator shall not issue to Eligible Settlement Class Members a Form 1099 MISC for any portion of costs of settlement administration, attorneys' fees, Class Representative Participation Payments, or reimbursement of litigation costs awarded to Class Counsel.

46.     CBS Radio shall pay to the Settlement Administrator the Net Settlement Fund and the Reserve Fund on the Final Effective Date, unless CBS Radio fails to provide the information substantially as described in paragraph 59, in which case Class Counsel shall provide CBS Radio notice of any claimed deficiency.  CBS Radio shall have seven (7) business days after notice to cure any such deficiencies.  If CBS Radio is able to cure such deficiencies, but fails to do so within seven (7) business days after receiving notice, it shall immediately transmit the Net Settlement Fund to the Settlement Administrator, who will then immediately deposit the Net Settlement Fund into an appropriate interest-bearing account that will be used to make all payments to Eligible Settlement Class Members required by this Settlement Agreement and to pay costs associated with notice and claims administration ("Administration Costs"), as described in paragraph 38.

47.    Subject to the final approval of the Settlement by the Court and provided that no objections to the settlement are filed, within fourteen (14) days after the Settlement Effective Date, CBS Radio will pay to Plaintiffs all amounts allocated for reasonable attorneys' fees and litigation costs, provided that Class Counsel has provided CBS Radio with the appropriate W-9 forms on or before the Settlement Effective Date.  Furthermore, within fourteen (14) days after the Settlement Effective Date, CBS Radio shall pay the Participation Payments to be made to the Class Representatives ("Participation Payments") to the Class Representatives.  Payment of the Participation Payments shall be contingent upon Plaintiffs becoming Eligible Settlement Class Members by their valid and timely submission of a Claim Form for the Settlement Payments for which they are eligible.  In the event that the Court ultimately awards less than the amount allotted for Class Counsel fees and class Participation Payments, the remaining amount, if less than $100,000, shall be paid to the *cy pres* Beneficiary.  If the remaining amount is $100,000 or more, such amount shall be distributed to the Eligible Settlement Class Members by the Settlement Administrator by dividing the remaining amount, minus administration costs, by the number of Eligible Settlement Class Members.  The costs associated with the Settlement Administrator's distribution of this remaining amount shall be paid from the remaining amount.

48.    Subject to the approval of the Court, the Settlement Administrator will make settlement payments to the Eligible Settlement Class Members per the allocations described in paragraph 41 above, within thirty (30) days after the Final Effective Date.

**D.    Objections.**

49.    Settlement Class Members who wish to object to this settlement must do so in writing and sign any objection submitted.  Written objections must state the basis for the objection and be mailed to the Settlement Administrator postmarked on or before October 27, 2008, or other date ordered by the Court.  Settlement Class members shall be permitted to withdraw their objections in writing by submitting a withdrawal statement to the Settlement Administrator not later than one (1) business day prior to the Court's final approval hearing, or as otherwise ordered by the Court.  Objections that fail to satisfy these requirements will be waived and will not be considered by the Court.

**E.      Opt Outs/Requests for Exclusion.**

50.      Any Settlement Class Member who wishes to request exclusion from the Settlement Agreement, *i.e.*, opt out of this settlement, shall notify the Settlement Administrator in writing that he or she wants to be excluded from the settlement.  The writing to the Settlement Administrator must be postmarked on or before October 27, 2008, or by other date ordered by the Court.  Settlement Class Members shall be permitted to rescind their opt-out requests in writing by submitting a rescission statement to the Settlement Administrator not later than one (1) business day prior to the Court's final approval hearing, or as otherwise ordered by the Court.

**F.      Release.**

51.      It is agreed by and among the Parties that the Class Representatives and the Settlement Class Members will release claims against CBS Radio, subject to the terms and conditions set forth in this Settlement Agreement (including paragraph 82 below) and Court approval of this Settlement Agreement.

## VI.      DUTIES OF SETTLEMENT ADMINISTRATOR

52.      The Parties have agreed to the appointment of Simpluris, Inc. to perform the duties of Settlement Administrator.

53.      The services of the Settlement Administrator shall be retained by Class Counsel, who shall assure that the Settlement Administrator shall abide by the terms of the Settlement Agreement. The actions of the Settlement Administrator shall be governed by the terms of the Settlement Agreement.  CBS Radio may provide relevant information needed by the Settlement Administrator per this Settlement Agreement and engage in related communications with the Settlement Administrator upon notice and with copies to Class Counsel, but without notice or copies to any Settlement Class Member or the Court.  Class Counsel may provide relevant information needed by the Settlement Administrator per this Settlement Agreement upon notice and with copies to CBS Radio, but without notice or copies to any Settlement Class Member, or the Court.  CBS Radio may make payments to the Settlement Administrator for its services and engage in related communications with the Settlement Administrator upon notice and with copies to Class Counsel, but without notice or copies to any Settlement Class Member, or the Court.

54.     The Settlement Administrator shall provide Class Counsel with the list of Settlement Class Members ("Settlement Class Member List") as described in paragraph 59 below. Class Counsel agree that this list is to be treated as private and confidential. Class Counsel agree not to use this list for any purpose other than to answer questions from Settlement Class Members about the Action and to assist Settlement Class Members in filing claims and participating in the settlement. Should Class Counsel decide they would like to use the Settlement Class Member List for any other purpose related to this settlement, it shall request permission from counsel for CBS Radio, who will not unreasonably prevent Class Counsel from taking steps they believe are necessary to ensure maximum participation in the settlement by the Settlement Class Members. Following final approval of this settlement by the Court, upon request from counsel for CBS Radio, Class Counsel will provide counsel for CBS Radio with a sworn declaration affirming that they have not used the Settlement Class Member List for any purpose other than those listed herein.

55.     The Settlement Administrator shall be responsible for: (a) preliminarily estimating the amounts of the awards due to the Settlement Class Members, as provided for in this Agreement and communicating those amounts to the Parties' counsel; (b) preparing and mailing Notice of Class Action Settlement and Claim Forms, as provided for herein, to the Settlement Class Members, including taking appropriate steps to trace and locate any missing individuals; (c) mailing Reminder Postcards to Settlement Class Members; (d) receiving and independently reviewing and resolving any challenges, and associated documentation, from the Settlement Class regarding the number of weeks worked as a Settlement Class Member during the Class Period; (e) receiving and processing Claim Forms from the Settlement Class Members; (f) receiving and serving upon the Parties' counsel and the Court, written objections and opt out requests and any withdrawals or rescissions thereof; (g) determining the final amounts of awards due to the Eligible Settlement Class Members after all Claim Forms have been filed and after resolution of any challenges, as provided for in this Settlement Agreement and communicating those amounts to the Parties' counsel; (h) depositing the Settlement Fund in an appropriate interest-bearing account; (i) establishing and administering a Qualified Settlement Fund for this account; (j) issuing checks to Eligible Settlement Class Members; (k) establishing a toll-free telephone line and responding to inquiries and requests for assistance from the

1  Settlement Class Members; (l) determining the validity of any late claims, challenges or disputes

2  from Settlement Class Members; (m) making payment from the Reserve Fund on any valid late

3  claims or disputes as provided for in this Agreement; (n) providing declarations to the Parties'

4  counsel and the Court regarding the completion of the tasks identified in this paragraph, as required

5  in this Settlement Agreement; (o) perform all applicable tax reporting for the settlement; and (p)

6  carrying out other related tasks in accordance with the terms of this Settlement Agreement.

7       56.    All disputes relating to the Settlement Administrator's performance of its duties shall

8  be referred to the Court, which, except as otherwise provided herein, shall have continuing

9  jurisdiction over the terms and conditions of this Settlement Agreement.  The Parties shall first meet

10  and confer prior to raising any such issue with the Court.

11                **VII.**    **NOTICE TO THE CLASS MEMBERS**

12       57.    A Notice of Class Action Settlement and Opportunity to Request Exclusion or Object

13  to Settlement ("Notice of Class Action Settlement") in the form attached hereto as Exhibit "A" and

14  approved by the Court shall be sent by the Settlement Administrator to all Settlement Class Members

15  by first class mail on or before August 29, 2008, or other date ordered by the Court.  Attached to the

16  Notice of Class Action Settlement will be a Claim Form, in the form attached hereto as Exhibit "B."

17  Enclosed with the Notice of Class Action Settlement and Claim Form will be a postage-paid, pre-

18  printed envelope for Settlement Class Members to use in returning Claim Forms, requests for

19  exclusion, or objections, to the Settlement Administrator.  The exterior of the mailing envelope for

20  the Notice of Class Action Settlement and Claim Form will include the following description of the

21  Settlement Administrator as part of the return address: "CBS RADIO ACCOUNT EXECUTIVE

22  CLASS ACTION CLAIMS ADMINISTRATOR." The exterior of the envelope will also include the

23  following notification: "IMPORTANT LEGAL DOCUMENT REGARDING CLASS ACTION

24  SETTLEMENT: Your Prompt Reply is Required."

25       58.    A follow up mailing to address notification of return or incorrect addresses shall be

26  sent by the Settlement Administrator upon receipt by the Settlement Administrator of such returned

27  Notices. A Reminder Postcard in the form attached hereto as Exhibit "C" and approved by the Court

28

1  shall be sent by the Settlement Administrator to all Settlement Class members, by first class mail

2  within forty (40) days of the initial Notice of Settlement Mailing, or other date ordered by the Court.

3     59.    On or before August 1, 2008, CBS Radio shall email to the Settlement Administrator

4  the following information for all Settlement Class Members:  Settlement Class Members' social

5  security numbers, last known addresses and telephone numbers, dates worked (less leaves of

6  absences of more than 2 consecutive weeks), and Actual Reimbursements.  CBS Radio shall provide

7  this information in a Microsoft Excel spreadsheet.  This information is to be treated as private and

8  confidential, and to be used only to carry out the Settlement Administrator's duties as specified in this

9  Agreement.  The Settlement Administrator shall share this Settlement Class information with Class

10  Counsel, except that addresses, telephone numbers, and social security numbers will not be shared

11  with Class Counsel without CBS Radio's written authorization.

12     60.    Prior to mailing the Notice of Class Action Settlement and Claim Form, the Settlement

13  Administrator will update the addresses for the Settlement Class Members using the results of the

14  National Change of Address database prior to mailing class notice.

15     61.    In the event that, subsequent to the first mailing of a Notice of Class Action Settlement

16  and prior to the deadline for response, the Notice of Class Action Settlement is returned to the

17  Settlement Administrator by the United States Postal Service with a forwarding address for the

18  recipient, the Settlement Administrator shall re-mail the Notice of Class Action Settlement to that

19  address, that Notice will be deemed mailed at that point, and the forwarding address shall be deemed

20  the updated address for that Settlement Class Member.  In the event that, subsequent to the first

21  mailing of a Notice of Class Action Settlement, and at least fourteen (14) days prior to the Notice of

22  Class Action Settlement Response Deadline, that Notice of Class Action Settlement is returned to the

23  Settlement Administrator by the United States Postal Service because the address of the recipient is

24  no longer valid, the Settlement Administrator shall perform a standard skip trace in an effort to

25  attempt to ascertain the current address of the Settlement Class Member, and, if such an address is

26  ascertained, the Settlement Administrator will re-send the Notice of Class Action Settlement within

27  (5) days of receiving such information.  If no updated address is obtained for that Settlement Class

28  Member, the Notice of Class Action Settlement shall be sent again to the last known address.

1     62.    Class Counsel shall provide the Court, at least five (5) days prior to the final approval

2  and fairness hearing or as otherwise ordered by the Court, with a declaration by the Settlement

3  Administrator of due diligence and proof of mailing of the Notice of Class Action Settlement and

4  Claim Form.

5     63.    Class Counsel shall have the right to take appropriate steps to locate and assist

6  Settlement Class Members during the notice and distribution process subject to the confidentiality

7  provisions set forth below.

8             **VIII. COMPUTATION OF SETTLEMENT SHARES AND**

9                **DISTRIBUTION OF NET SETTLEMENT FUND**

10     64.    Each Claim Form mailed to the Settlement Class will identify the number of

11  compensable weeks, calculated as specified in paragraph 41 above, that CBS Radio's records indicate

12  the individual worked as a Settlement Class Member during the Class Period in California, the Actual

13  Reimbursements that CBS Radio's records indicate the individual was paid for the period of January

14  1, 2004 through June 30, 2008, and will provide a preliminary estimate of each Settlement Class

15  Member's pro rata share of the Net Settlement Fund.  Such estimated amounts are subject to

16  adjustment based on the results of the claims process, objection and requests for exclusion, and

17  challenge process provided for in paragraph 66 - 71, and the Claim Form instructions shall so state.

18  The Claim Form will also require that any Settlement Class Member returning the form must state,

19  under penalty of perjury, that he/she in fact necessarily and reasonably incurred business expenses for

20  which he/she was not reimbursed.

21     65.    Settlement Class Members must timely submit a completed and valid Claim Form to

22  participate in the Settlement as Eligible Settlement Class Members.  No Claim Form will be honored

23  unless postmarked or faxed on or before October 27, 2008, or other date ordered by the Court.

24  Additional time may be provided to Settlement Class Members for good cause, but only if such

25  additional time allows the Settlement Administrator to comply with paragraph 41 of this Settlement

26  Agreement; otherwise, the Claim Form is untimely and the Settlement Class Member will be deemed

27  to have waived irrevocably any right in or claim to a settlement share, but the Settlement Agreement

28  nevertheless will be binding upon them (unless she/he submits a timely request for exclusion).

66.     The Eligible Settlement Class Members will have the right to challenge only the number of weeks worked and/or the Actual Reimbursements as shown on the Claim Form by mailing the original Claim Form directly to the Settlement Administrator at the address indicated on the Claim Form with evidence to substantiate the challenge.  No Claim Form challenging the number of weeks worked and/or the Actual Individual Reimbursements will be honored unless postmarked or faxed on or before October 27, 2008, or other date ordered by the Court.  Additional time may be provided to Settlement Class Members for good cause, but only if such additional time allows the Settlement Administrator to comply with paragraph 41; otherwise, the challenge is untimely and the Settlement Class Member shall be paid according to the original Claim Form.

67.     The Settlement Administrator will certify jointly to Class Counsel and counsel for CBS Radio any challenges that were timely filed, and the outcomes thereof.

68.     Challenges will be resolved without hearing by the Settlement Administrator, who will make a decision based on CBS Radio's records and evidence or documentation presented by the claimant.  The Settlement Administrator's determination is final, subject to Court approval.

69.     The Settlement Administrator shall (a) date stamp all original requests for exclusion and objection statements that it receives; (b) serve copies on the Parties' counsel no later than five (5) business days after receipt, or immediately upon receipt if received within five (5) business days of the Court's final approval hearing; and (c) file the date-stamped originals with the Clerk of the Court no later than five (5) business days prior to the date of the Court's final approval hearing or immediately if received less than five (5) business days prior to the date of the Court's final approval hearing.

70.     The Settlement Administrator shall also (a) serve copies of all requests for exclusion and objection statements on the Parties' counsel no later than five (5) business days after receipt, or immediately if received within five (5) business days of the Court's final approval hearing; and (b) file the date-stamped originals of all requests for exclusion and objection statements with the Clerk of the Court no later than five (5) business days prior to the date of the Court's final approval hearing or immediately if received less than five (5) business days prior to the date of the Court's final approval hearing.

71.     Following the determination of timely claims filed, timely requests for exclusion submitted, and the resolution of all timely challenges to the Claim Forms, but in no event later than twenty (20) days after the Final Effective Date, the Settlement Administrator shall make the final calculation of payments from the Net Settlement Fund to be distributed to Eligible Settlement Class Members considering the documentation provided by CBS Radio, Claim Forms filed, any written challenges, and any requests for exclusion not rescinded.  The Settlement Administrator shall compute Eligible Settlement Class Members' shares in the manner specified in paragraph 41 above. Any and all estimated settlement awards that would have been paid to Settlement Class Members who do not file a timely claim or who file timely requests for exclusion will not be credited back to CBS Radio or in any way revert back to CBS Radio.  These unclaimed funds will be reallocated to Eligible Settlement Class Members in proportion with each such Eligible Settlement Class Member's pro rata share of the Net Settlement Fund, as specified in paragraph 41 above.  The Claims Administrator will conduct this accounting for the redistribution of unclaimed Settlement Class Member payments, adding the proportionate amounts to each Eligible Settlement Class Member's payment before completing the final calculation of payments.  In no event will any portion of the Settlement Fund revert to CBS Radio in any manner.

72.     Upon completion of its calculation of payments, and at least five (5) days prior to distribution of payments to Eligible Settlement Class Members, the Settlement Administrator shall provide the Parties' Counsel with a report listing the amount of all payments to be made to Eligible Settlement Class Members from the Net Settlement Fund.

73.     The Settlement Administrator is responsible for preparing and mailing the checks and IRS 1099 Forms as required by this Settlement Agreement to Eligible Settlement Class Members, and for filing all necessary tax reports and returns, except those which are the responsibility under law of CBS Radio, as to which forms and returns, the Settlement Administrator shall provide CBS Radio with the necessary information in its possession.  The Settlement Administrator shall provide a declaration of payment, certifying the payments made, the date(s) and manner of sending payments, which will be filed with the Court and served on counsel for the Parties, within thirty (30) days of making the payments as required in this Settlement Agreement.

74.    Eligible Settlement Class Members shall have ninety (90) calendar days after mailing by the Settlement Administrator to cash their settlement checks.  Checks that are not cashed within ninety (90) days will be void and a stop payment will be placed on the checks.  Those Eligible Settlement Class Members who fail to timely cash their checks will be deemed to have waived irrevocably any right in or claim to a settlement share, but the Settlement Agreement nevertheless will be binding upon them.  By virtue of Court approval of this Settlement Agreement, its terms shall control over any principles of escheat or provisions of unclaimed property law.

75.    Should there remain any residual from the Net Settlement Fund after all payments are made under this Settlement Agreement (for example, if any settlement checks are not cashed within ninety (90) calendar days after mailing), after nine (9) months from the Effective Settlement Date, the Parties will meet and confer regarding *cy pres* distribution of such residual amount.  CBS Radio shall designate a *cy pres* beneficiary, which shall be subject to approval by Plaintiffs and Plaintiffs counsel.  Upon agreement on a *cy pres* beneficiary, the Parties will jointly submit the agreed upon *cy pres* beneficiary to the Court for approval.   Any costs associated with administering the residual amount (*e.g.*, bank stop payment charges, tax reporting and accounting) will be deducted from the residual amount before the *cy pres* distribution.

76.    Within one (1) month after the Court has approved the *cy pres* beneficiary submitted by the Parties, and notice of such approval has been given to the Settlement Administrator, the Settlement Administrator shall pay over any residual amount including any residue in the Reserve Fund to the Court-approved *cy pres* beneficiary, or as otherwise ordered by the Court.  The Settlement Administrator shall provide a declaration of *cy pres* distribution, which will be filed with the Court and served on Class Counsel and counsel for CBS Radio, within ten (10) days of payment of the residual.

77.    The Settlement Administrator shall cause to be timely and properly filed all informational and other tax returns, if any, necessary with respect to the Net Settlement Fund and Reserve Fund.  Such returns shall be consistent with this paragraph.  If any taxable income is generated by the Net Settlement Fund and/or Reserve Fund, in all events the tax returns filed shall reflect that all taxes payable on the taxable income of these funds, if any, shall be paid from the Net

1   Settlement Fund and/or Reserve Fund.  Any expenses consisting of the expenses and costs incurred in

2   connection with the operation and implementation of this paragraph (including, without limitation,

3   reasonable expenses of tax attorneys, accountants or other designees retained by the Settlement

4   Administrator as required for the preparation and filing of tax returns described in this paragraph)

5   shall be treated as, and considered to be, Administration Costs and paid from the Reserve Fund.

6   **IX. ADJUSTMENT TO SETTLEMENT FUND IN THE EVENT OF UNDERREPORTING**

7   **OF WORKWEEKS**

8       78.     CBS Radio has verified that class members worked less than 80,000 workweeks

9   during the Class Period.  If subsequent information shows that the actual number of class workweeks

10  is more than 84,000 workweeks, Plaintiffs may exercise their option to void this settlement by giving

11  notice, in writing, to counsel for CBS Radio and the Court at any time prior to three (3) business days

12  before the final approval hearing.

13  **X. RELEASE BY THE CLASS**

14      79.     As of the Final Effective Date, the Eligible Settlement Class Members, including the

15  Class Representatives, regardless of whether they submitted claims or received payments from the

16  Net Settlement Fund, release CBS Radio and past or present officers, directors, shareholders,

17  employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and

18  reinsurers, and its and their respective successors and predecessors in interest, subsidiaries, divisions,

19  stations, affiliates, parents, insurers, joint ventures, assigns, and attorneys and each of their employee

20  benefit plans, and all of their respective officers, directors, employees, administrators, fiduciaries,

21  trustees and agents (the "Released Parties"), from the "Released Claims."  For purposes of this

22  Agreement, the "Released Claims" are defined as: all claims, debts, demands, rights, liabilities,

23  obligations, guarantees, costs, expenses, attorneys' fees, damages, liquidated damages, interest,

24  action, and/or causes of action of every nature and description whatsoever, known or unknown,

25  asserted or that might have been asserted, whether in tort, contract, or for violation of any state or

26  federal constitution, statute, rule or regulation, including state wage and hour laws, whether for

27  economic damages, non-economic damages, restitution, penalties or liquidated damages, alleged in,

28  arising out of, relating to, or in connection with the First Amended Complaint filed in this Action and

1   which arose or accrued at any time during the period from May 3, 2003 through June 30, 2008. Such

2   Released Claims shall include any and all facts, transactions, events, policies, occurrences, acts,

3   disclosures, statements, omissions or failures to act, during the Class Period, which are or could be

4   the basis of claims that CBS Radio failed to reimburse Settlement Class Members for business-

5   related expenses that they necessarily incurred, and all claims for penalties based upon CBS Radio's

6   alleged failure to reimburse Settlement Class Members for business-related expenses that they

7   necessarily incurred during their employment; and/or that CBS Radio owes unreimbursed expenses,

8   penalties pursuant to California Labor Code section 2699 *et seq.*, interest, attorneys' fees, or other

9   damages of any kind based on a failure to reimburse Settlement Class Members for business-related

10   expenses that they necessarily incurred during their employment. Such Released Claims shall also

11   include any and all claims for waiting time penalties and payment under California Labor Code

12   Sections 201, 202, or 203; and/or the causes of action asserted in the Action, including any and all

13   claims for alleged failure to reimburse Settlement Class Members for business-related expenses that

14   they necessarily incurred during their employment, claims for alleged unlawful, unfair and/or

15   fraudulent business practices under California Business and Professions Code § 17200, *et seq.* based

16   on CBS Radio's alleged failure to reimburse Settlement Class Members for business-related expenses

17   that they necessarily incurred during their employment

18        80.     The Eligible Settlement Class Members agree not to sue or otherwise make a claim

19   against any of the Released Parties that is in any way related to the Released Claims.

20                **XI. <u>GENERAL RELEASE BY NAMED PLAINTIFFS</u>**

21        81.     In addition to the release made by the Eligible Settlement Class Members set forth in

22   Paragraph 79 above, the Class Representatives, as of the Final Effective Date, make the additional

23   following general release of all claims, known or unknown: the Class Representatives release the

24   Released Parties from all claims, demands, rights, liabilities and causes of action of every nature and

25   description whatsoever, known or unknown, asserted or that might have been asserted, whether in

26   tort, contract, or for violation of any state of federal statute, rule or regulation arising out of, relating

27   to, or in connection with any act or omission by or on the part of any of the Released Parties

28   committed or omitted prior to the execution hereof with the sole exception of any claims which

1 || cannot be released as a matter of law. (The release set forth in this Paragraph 81 shall be referred to

2 || hereinafter as the "General Release").

3 ||     The General Release includes any unknown claims that the Class Representatives do not

4 || know or suspect to exist in their favor at the time of the General Release, which, if known by them,

5 || might have affected their settlement with, and release of, the Released Parties by the Class

6 || Representatives or might have affected their decision not to object to this Settlement or the General

7 || Release.

8 ||     With respect to the General Release, the Class Representatives stipulate and agree that, upon

9 || the Final Effective Date, Plaintiffs Saidel and Jackson shall be deemed to have, and by operation of

10 || the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by

11 || law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other

12 || similar provision under federal or state law, which provides:

13
14
15

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

16 || **XII.   SCHEDULE FOR EXECUTION OF SETTLEMENT**

17 || 82.    The preliminary schedule for execution of this settlement is as follows:

18 ||     a.    Class Counsel shall file their Motion for Preliminary Approval of Settlement

19 || with the Court on or before July 11, 2008;

20 ||     b.    Class Counsel shall seek to obtain a hearing on their Motion for Preliminary

21 || Approval before the Court on or before August 15, 2008;

22 ||     c.    CBS Radio shall provide the social security numbers, additional and updated

23 || addresses and telephone numbers, dates of employment of Settlement Class Members, and associated

24 || Actual Reimbursements for individual Settlement Class Members to the Settlement Administrator,

25 || and to Class Counsel per the restrictions in paragraphs 53 and 54, above, in order to permit

26 || compilation of the most accurate and complete list of Settlement Class Member contact addresses and

27 || to calculate each Settlement Class Member's estimated pro rata share of the Net Settlement Fund, by

28

1    August 1, 2008. However, CBS Radio shall not disclose the social security numbers of the

2    Settlement Class Members, or any portion thereof, to Class Counsel;

3        d.    The Settlement Administrator shall mail the Notice of Class Action Settlement

4    and the Claim Form by first class mail, within fourteen (14) days of the Court's ruling on Plaintiffs'

5    Motion for Preliminary Approval, to all persons who worked as Account Executives in California

6    during the Class Period according to CBS Radio records.

7        e.    The Settlement Administrator will send a follow up mailing to individuals

8    whose Notice of Class Action Settlement/Claim Form package was returned as undeliverable, using

9    addresses obtained through standard tracing methods deemed appropriate and sufficient by the

10   Settlement Administrator.

11       f.    The Settlement Administrator will send a follow-up Reminder Postcard to all

12   Settlement Class Members who have not responded with the return of a Claim Form, objection, or a

13   request for exclusion, within forty (40) days of the initial mailing to the Settlement Class, to remind

14   them of the deadline to file a Claim Form;

15       g.    The last day on which timely written requests for exclusion or to object to the

16   Settlement may be postmarked is October 27, 2008;

17       h.    The last day on which timely written requests to submit a dispute regarding the

18   information contained on the Claim Form may be postmarked or faxed is October 27, 2008;

19       i.    Class Counsel shall file their Motion for Final Approval of Settlement with the

20   Court on or before October 30, 2008;

21       j.    Class Counsel shall seek to obtain a hearing on their Motion for Final

22   Approval of Settlement on or before December 5, 2008;

23       k.    CBS Radio shall make payments to Class Counsel and Participation Payments

24   to Class Representatives within fourteen (14) days of the Settlement Effective Date. If no objections

25   to any aspect of the settlement have been timely filed, Class Counsel shall so represent in writing to

26   CBS Radio on the fourteenth (14th) day from the Settlement Effective Date. However, if any

27   objections to any aspect of the settlement are timely filed, CBS Radio shall not make payments to

28   Class Counsel and Participation Payments to Class Representatives until the Final Effective Date.

l.    CBS Radio shall transmit the Net Settlement Fund to the Settlement Administrator on the Final Effective Date, unless it earlier provided the Net Settlement Fund to the Settlement Administrator pursuant to paragraph 46.

m.    The Administrator shall make, prepare and send Settlement checks to Eligible Settlement Class Members within thirty (30) days after the Final Effective Date.

## XIII.   DUTIES OF THE PARTIES PRIOR TO FINAL COURT APPROVAL

83.    The Parties shall promptly submit this Settlement Agreement to the Court together with Plaintiffs' Motion for Preliminary Approval of Settlement and Certification of Settlement Class. That motion shall seek entry of a preliminary order which includes the following procedures and steps: scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the members of the Settlement Class; approving as to form and content the proposed Notice of Class Action Settlement providing Settlement Class Members information about the settlement terms, their right to opt out or object to the settlement, and notice of the final approval hearing; approving as to form and content the proposed Claim Form and instructions; approving as to form and content the proposed Reminder Postcard; directing the mailing of the Notice of Class Action Settlement, Claim Form, Reminder Postcard and instructions by first class mail to all persons who according to  records worked as Account Executives; preliminarily approving the Settlement Agreement; preliminarily certifying the Settlement Class and appointing the Class Representatives and Class Counsel as representatives of the Settlement Class for purposes of settlement; preliminarily approving the appointment and compensation of Simpluris, Inc. as Settlement Administrator to perform the settlement administration services required under this Settlement Agreement; preliminarily approving the application for payment of reasonable attorneys' fees and litigation costs to Class Counsel; and preliminarily approving the Participation Payments to the Class Representatives.

84.    Following the submission of the Motion for Preliminary Approval and up to the final approval hearing, the Parties shall cooperate with the Settlement Administrator and each other to expedite and facilitate the giving of notice to Settlement Class Members, fair and impartial responses to Settlement Class Members' inquiries or questions, receipt and review of objections, opt-outs, or

1    other responses by Settlement Class Members to the Notice of Class Action Settlement, and the

2    presentation to the Court of all information necessary and sufficient for its consideration of final

3    approval of the Settlement Agreement.

4             **XIV.   DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL**

5           85.     Class Counsel will submit a proposed final order and judgment at or expeditiously

6    after the final approval hearing, to include: approving the settlement; adjudging the terms thereof to

7    be fair, reasonable and adequate; directing consummation of the Settlement Agreement's terms and

8    provisions; approving Class Counsel's application for an award of attorneys' fees and reimbursement

9    of costs; and dismissing the First Amended Complaint on the merits and with prejudice conditioned

10    upon satisfaction of all payments and obligations hereunder.

11                  **XV.   VOIDING THE SETTLEMENT AGREEMENT**

12           86.     In the event that five percent (5%) or more of the Settlement Class elect to opt out of

13    the settlement and do not timely rescind their opt out requests, as described above, CBS Radio, at its

14    sole and absolute discretion, may void this Settlement Agreement.  CBS Radio may exercise its

15    option to void this settlement by giving notice, in writing, to Class Counsel and the Court at any time

16    prior to three (3) business days before the final approval hearing.

17                **XVI.   NO ADMISSION OF LIABILITY OR WAIVER**

18           87.     Nothing contained herein, nor the consummation of this Settlement Agreement, is to

19    be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part

20    of CBS Radio.  Each of the Parties hereto has entered into this Settlement Agreement with the

21    intention to avoid further disputes and litigation with the attendant inconvenience, uncertainty and

22    expenses.  By entering into this Settlement Agreement, CBS Radio does not intend to, and does not,

23    waive its right to enforce the provisions of any other agreements it has entered into with any

24    individual Settlement Class Member.

25                   **XVII.   NO ADMISSION IN EVIDENCE**

26           88.     This Settlement Agreement is a settlement document and shall, pursuant to Rule 408

27    of the Federal Rules of Evidence, be inadmissible in evidence in any proceeding except an action or

28    proceeding to approve, interpret, or enforce this Settlement Agreement.

1    ## XVIII.    MUTUAL FULL COOPERATION

2    89.    The Parties agree to cooperate with each other to accomplish the terms of this

3    Settlement Agreement, including but not limited to, executing such documents and taking such other

4    action as may reasonably be necessary to implement the terms of this Settlement Agreement.  The

5    Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by

6    this Settlement Agreement and any other efforts that may become necessary by order of the Court, or

7    otherwise, to effectuate this Settlement Agreement and the terms set forth herein.  As soon as

8    practicable after execution of this Settlement Agreement, Class Counsel shall, with the assistance and

9    cooperation of CBS Radio and its counsel, take all necessary steps to secure the Court's final

10    approval of this Settlement Agreement.

11    ## XIX.    MISCELLANEOUS PROVISIONS

12    **A.    Notices**

13    90.    Unless otherwise specifically provided herein, all notices, demands or other

14    communications given hereunder shall be in writing and shall be deemed to have been duly given as

15    of the third business day after mailing by United States registered or certified mail, return receipt

16    requested, addressed as follows:

17

18    To Class Counsel:                          To CBS Radio Account Executive
         Aaron Kaufmann                          Class Action Claims Administrator:
19       HINTON, ALFERT & SUMNER                  Simpluris, Inc.
         1646 N. California Blvd., Suite 600      Class Action Settlement
20       Walnut Creek, CA 94596                   Administration Services
                                                  3176 Pullman Street, Suite 123
21                                                Costa Mesa, CA 92626

22    To CBS Radio Inc.:
         Rebecca Eisen
23       MORGAN LEWIS & BOCKIUS, LLP
         One Market, Spear Street Tower
24       San Francisco, CA 94105-1126

25

26    **B.    Captions and Interpretations**

27    91.    Paragraph titles or captions contained herein are inserted as a matter of convenience

28    and for reference, and in no way define, limit, extend, or describe the scope of this Settlement

1   Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not

2   merely a recital.

3   **C.    Construction of Agreement**

4       92.    The Parties hereto agree that the terms and conditions of this Settlement Agreement

5   are the result of lengthy, intensive, arms-length negotiations between the Parties supervised by an

6   experienced employment law mediator and that this Settlement Agreement shall not be construed in

7   favor of or against any Party by reason of the extent to which any Party or his, her or its counsel

8   participated in the drafting of this Settlement Agreement.

9   **D.    Modification and Discharge of Agreement**

10      93.    This Settlement Agreement may not be changed, altered, or modified, except in a

11  writing signed by the Parties hereto, and approved by the Court. This Settlement Agreement may not

12  be discharged except by performance in accordance with its terms or by a writing signed by the

13  Parties hereto.

14  **E.    Complete Agreement**

15      94.    This Settlement Agreement contains the entire agreement between the Parties relating

16  to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements,

17  understandings, representations, and statements, whether oral or written and whether by a Party or

18  such Party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

19  **F.    No Prior Assignments**

20      95.    This Settlement Agreement shall be binding upon and inure to the benefit of the

21  Parties hereto and their respective heirs, trustees, executors, administrators and successors. The

22  Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned,

23  transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any

24  portion of any liability, claim, demand, action, cause of action or rights herein released and

25  discharged except as set forth herein.

26  **G.    Governing Laws**

27      96.    The Settlement Agreement shall be governed by the laws of the State of California

28  without regard to that state's conflict of laws provisions.

**H.    Conflict Resolution**

97.    Any and all disputes related to the Parties' performance of the acts, terms or conditions related to this Agreement prior to final approval shall be resolved through binding arbitration.  The arbitration is to be administered by Magistrate Judge Joseph C. Spero and in accordance with the rules in place on the Effective Date.  The Parties agree that Magistrate Judge Joseph C. Spero shall be the sole arbitrator of any such disputes.  If Magistrate Judge Spero is not available, then the Parties shall attempt to select a replacement arbitrator.  If the Parties cannot agree on a replacement arbitrator, one arbitrator shall be appointed by Magistrate Judge Spero and he/she shall be the sole arbitrator of any disputes.

**I.    Return of Confidential Documents, Materials and Information**

98.    Upon request by either Party, all documents, deposition transcripts, materials, information and any Settlement Class Member Lists produced or provided during the course of the litigation, mediation or settlement shall be returned to the producing Party, including but not limited to any and all copies, however maintained (*i.e.*, paper, electronic medium).  The Party requesting the return of such materials shall provide a written description of these documents, materials or other information to be returned and the Party receiving such request, including its counsel, shall comply within fourteen (14) calendar days of having received the request.

**J.    Class Counsel May Sign For Class**

99.    It is agreed that, because the members of the Settlement Class are so numerous, it is impossible or impractical to have each member of the Settlement Class execute this Settlement Agreement.  The Notice of Class Action Settlement, Exhibit "A" hereto, will advise all Settlement Class members of the binding nature of the release contained in this Settlement Agreement and shall have the same force and effect as if this Settlement Agreement were executed by each Settlement Class Member.

**K.    Counterparts**

100.    This Settlement Agreement may be executed in counterparts with signatures transmitted by facsimile.  When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed

1  counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as

2  to all Parties.  A facsimile signature shall have the same force and effect as the original signature, if

3  and only if it is transmitted from counsel for one Party to the other.  Such transmissions shall be

4  interpreted as verification by the transmitting counsel that the signature is genuine and that the Party

5  signing has authorized and reviewed this Settlement Agreement.

6  DATED: July__, 2008.

7                                          By _____
                                               TERRY SAIDEL
8                                              Class Representative

9  DATED: July__, 2008.

10                                         By _____
                                               CAMILLE JACKSON
11                                             Class Representative

12  DATED: July _10_, 2008.          HINTON, ALPERT & SUMNER

13
                                           By _____
14                                             AARON KAUFMANN
                                               Attorneys for Plaintiffs Terry Saidel
15                                             and Camille Jackson

16  DATED: July__, 2008.             GOLDSTEIN, DEMCHAK, BALLER, BORGEN &
                                          DARDARIAN
17

18                                         By _____
                                               MORRIS J. BALLER
19                                             Attorneys for Plaintiffs Terry Saidel
                                               and Camille Jackson
20

21

22
    DATED: July__, 2008.             COHELAN & KHOURY
23

24                                         By _____
                                               MICHAEL D. SINGER
25                                             Attorneys for Plaintiffs Terry Saidel
                                               and Camille Jackson
26

27

28

1  counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as

2  to all Parties.  A facsimile signature shall have the same force and effect as the original signature, if

3  and only if it is transmitted from counsel for one Party to the other.  Such transmissions shall be

4  interpreted as verification by the transmitting counsel that the signature is genuine and that the Party

5  signing has authorized and reviewed this Settlement Agreement.

6  DATED:  July___, 2008.

7                                          By _____
                                               TERRY SAIDEL
8                                              Class Representative

9  DATED:  July___, 2008.

10                                         By _____
                                               CAMILLE JACKSON
11                                             Class Representative

12  DATED:  July___, 2008.         HINTON, ALFERT & SUMNER

13

14                                         By _____
                                               AARON KAUFMANN
15                                             Attorneys for Plaintiffs Terry Saidel
                                               and Camille Jackson

16  DATED:  July 11, 2008.         GOLDSTEIN, DEMCHAK, BALLER, BORGEN &
                                        DARDARIAN
17

18                                         By _____
                                               MORRIS J. BALLER
19                                             Attorneys for Plaintiffs Terry Saidel
                                               and Camille Jackson

20

21

22
    DATED:  July___, 2008.         COHELAN & KHOURY
23

24                                         By _____
                                               MICHAEL D. SINGER
25                                             Attorneys for Plaintiffs Terry Saidel
                                               and Camille Jackson

26

27

28

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

1  counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as

2  to all Parties.  A facsimile signature shall have the same force and effect as the original signature, if

3  and only if it is transmitted from counsel for one Party to the other.  Such transmissions shall be

4  interpreted as verification by the transmitting counsel that the signature is genuine and that the Party

5  signing has authorized and reviewed this Settlement Agreement.

6  DATED:  July___, 2008.

7                                                 By _____

8                                                     TERRY SAIDEL
                                                      Class Representative

9  DATED:  July___, 2008.

10                                                By _____

11                                                    CAMILLE JACKSON
                                                      Class Representative

12  DATED:  July___, 2008.            HINTON, ALFERT & SUMNER

13

14                                                By _____

15                                                    AARON KAUFMANN
                                                      Attorneys for Plaintiffs Terry Saidel
                                                      and Camille Jackson

16  DATED:  July___, 2008.            GOLDSTEIN, DEMCHAK, BALLER, BORGEN &
                                                DARDARIAN

17

18                                                By _____

19                                                    MORRIS J. BALLER
                                                      Attorneys for Plaintiffs Terry Saidel
20                                                    and Camille Jackson

21

22
    DATED:  July_11_, 2008.          COHELAN & KHOURY
23

24                                                By _____

25                                                    MICHAEL D. SINGER
                                                      Attorneys for Plaintiffs Terry Saidel
26                                                    and Camille Jackson

27

28

                                                  29

1    DATED: July__, 2008.             MORGAN LEWIS & BOCKIUS

2

3                                     By _____
                                        REBECCA EISEN
4                                       Attorneys for Defendant
                                        CBS Radio Inc.

5    DATED: July__, 2008.             CBS Radio Inc.

6

7                                     By _____
                                        Stephen A. Hildebrandt
8                                       Vice President and Assistant Secretary,
9                                       CBS Radio Inc.

10

11

12   DB2/20749495.9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

# EXHIBIT A

**(NOTICE OF CLASS ACTION SETTLEMENT)**

IN THE UNITED STATES DISTRICT COURT OF CALIFORNIA
NORTHERN DISTRICT OF CALIFORNIA
*Saidel and Jackson v. CBS Radio, Inc., et al.*, U.S.D.C., Case No. **CV 07-02948-SC**

## NOTICE OF CLASS ACTION SETTLEMENT

To:   All CURRENT and FORMER EMPLOYEES of CBS RADIO INC., (referred to
      herein as "CBS Radio"), who were employed as ACCOUNT EXECUTIVES in
      the State of California at any time from May 3, 2003 through June 30, 2008.

### PLEASE READ THIS NOTICE CAREFULLY.

Pursuant to the Order of the United States District Court of the Northern District of
California, entered on ▓▓▓▓▓, 2008, **YOU ARE HEREBY NOTIFIED AS
FOLLOWS:**

A proposed settlement (the "Settlement") has been reached among the parties in this
class action pending in the District Court of the Northern District of California, brought
on behalf of all individuals who were employed as ACCOUNT EXECUTIVES in the
State of California at any time from May 3, 2003 through June 30, 2008 (the
"Settlement Class" or "Settlement Class Members"). The Court has preliminarily
approved the Settlement. You have received this notice because CBS Radio records
indicate that you are a member of the Class. This notice informs you of how you can
make a claim under the Settlement, exclude yourself from the Settlement, or object to
the Settlement.

## I.   BACKGROUND OF THE CASE

On May 3, 2007, two former CBS Radio Account Executives ("Plaintiffs") filed a class
action against CBS Radio in state court in Alameda County, which was later moved to
the United States District Court of the Northern District of California ("the Action"). In
their Complaint, as amended, Plaintiffs alleged that they and the Settlement Class were
not reimbursed for all business expenses that they reasonably and necessarily incurred
while working for CBS Radio, including vehicle usage costs (*i.e.*, mileage), cellular
phone use, client meals and entertainment, and client gifts. On June 5, 2007, CBS
Radio filed its Answer to the Action. CBS Radio's Answer denied, and continues to
deny, all of Plaintiffs' claims.

Plaintiffs believe this Action is meritorious based on alleged violations of California's
employment laws, and that the Action is appropriate for class action treatment. CBS
denies any liability or wrongdoing of any kind associated with the claims alleged in the
Action and contends that, for any purpose other than settlement, the Action is not

appropriate for class action treatment. CBS Radio further contends that it has fully complied with California's expense reimbursement laws.

On June 2, 2008, after good-faith arms-length negotiations presided over by a private mediator, the parties reached an agreement to settle the Action pursuant to the terms and conditions of the Settlement, including payments to Settlement Class Members who submit a claim.

The Settlement represents a compromise and settlement of disputed claims. Nothing in the Settlement is intended to or will be construed as an admission by CBS Radio that Plaintiffs' claims in the Action have merit or that CBS Radio has any liability to Plaintiffs or the Class on any of those claims.

Plaintiffs, CBS Radio, and their lawyers have concluded that the Settlement is fair, reasonable, and adequate and is in the best interests of all parties.

## II.    SUMMARY OF THE SETTLEMENT

### A.    Who is included in the Settlement?

You are included in the Settlement if you were employed by CBS Radio Inc., or a predecessor of CBS Radio Inc., in the State of California, as an Account Executive at any time from May 3, 2003 through June 30, 2008 ("Settlement Class Position.")

### B.    What will I receive from the Settlement?

CBS Radio will make a settlement payment ("Settlement Payment"), through a Claims Administrator, to each Settlement Class Member who submits a timely and valid claim, based on the formula set forth below.

The Settlement calls for a total payment by CBS Radio of Four Million Nine Hundred and Fifty Thousand Dollars ($4,950,000). The amount to be paid to Participating Class Members from the settlement, following Court-approved deductions, is estimated at $3,597,000, calculated as follows:

|   | $4,950,000 | (Settlement Amount) |
|---|---|---|
| - | $1,237,500 | (Estimated Attorneys' fees) |
| - | $30,000 | (Estimated Litigation Costs) |
| - | $30,000 | (Class Representatives' Participation Payments) |
| - | $30,500 | (Estimated Claims Administrator Fees) |
| - | $25,000 | ("Reserve Fund" set aside for excusable late/accepted disputed claims) |
|   | **$3,597,000** | (Estimated Net Settlement Amount Payable to Settlement Class) |

The Net Settlement Amount may vary depending upon whether and in what amounts, the Court approves the "estimated" costs set forth above.

The entire Net Settlement Amount will be paid to Settlement Class Members based upon the following formula:   The number of weeks worked by each Settlement Class Member as an Account Executive at any time during the period May 3, 2003 through June 30, 2008 ("Class Period") in relation to the number of weeks worked by all members of the Settlement Class during the Class Period.  Preliminarily, and based thereon, it is estimated a workweek is valued at approximately **$49.00.**

According to CBS Radio's records, there are some Settlement Class Members who received expense reimbursements during the Class Period.  If you were one who received expense reimbursements, your settlement payment, based upon the number of weeks you worked, will be reduced such that thirty-five percent (35%) of the actual expenses paid to you will be offset against your workweek payment under the formula agreed upon by the Parties and preliminarily approved by the Court.

Each Settlement Class Member who fully and completely submits a Claim Form by the deadline stated on the Claim Form is a "Participating or Eligible Settlement Class Member" and will receive a pro rata portion of the Net Settlement Amount, as described above.  **The estimated amount that you can expect to receive pursuant to the proposed terms of the settlement is stated in the enclosed Claim Form.**  This estimated amount is subject to change, either up or down, depending on the number of Account Executives who submit timely and valid claims, challenges to the workweek or expense reimbursement information identified in each Settlement Class Member's Claim Form and the outcome to those challenges, as well as other factors.

The Settlement Payment to you will be treated as expenses, interest and penalties subject to IRS Form 1099 reporting, and Participating Class Members will be issued an IRS Form 1099 for such Settlement Payment.  **Participating Class Members will be responsible for correctly characterizing this compensation for tax purposes and paying any taxes owing on said amount.**  Neither Plaintiffs, CBS Radio, nor their respective lawyers are authorized to provide tax reporting advice and provide no advice as to whether receipt of this payment will impact prior tax filings made by Participating Class Members.  YOU MUST OBTAIN INDEPENDENT TAX ADVICE REGARDING THESE MATTERS.

### C.    When will I receive my Settlement Payment?

The Settlement Payments will be paid approximately 45 days after final court approval of the Settlement and after all rights to appeal or review are exhausted or any appeal or review has been resolved in favor of the Settlement.  The earliest that the Settlement Payment could occur is in January 2009.

**D.     What if I do not want to participate in this lawsuit or this Settlement?**

If you elect not to participate, you must submit a "request for exclusion" as described in this notice.  If you submit a timely request for exclusion, you will not receive a Settlement Payment nor will you be bound by the terms of the Settlement.

**E.     What if I do nothing; that is I do not request exclusion and do not submit a Claim Form?**

You are still participating and will be bound by the terms of the Settlement, *however, you will not receive* a Settlement Payment.  <u>To receive your share of the Settlement, you must submit a valid and timely Claim Form,</u> enclosed with this Notice.

**F.     Claims Administrator.**

The Court has appointed Simpluris, Inc, to act as an independent Claims Administrator to process this settlement, to resolve any dispute concerning a Settlement Class Member's eligibility to participate in the Settlement and his or her share of the Settlement proceeds, and to make payments to Participating Class Members.

**G.     Release of Claims.**

Each Participating Class Member (regardless of whether she or he submits a Claim Form) releases and discharges CBS Radio and past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and its and their respective successors and predecessors in interest, subsidiaries, divisions, stations, affiliates, parents, insurers, joint ventures, assigns, and attorneys and each of their employee benefit plans, and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents (the "Released Parties"), from the "Released Claims."  For purposes of the Settlement, the "Released Claims" are defined as: all claims, debts, demands, rights, liabilities, obligations, guarantees, costs, expenses, attorneys' fees, damages, liquidated damages, interest, action, and/or causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal constitution, statute, rule or regulation, including state wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties or liquidated damages, alleged in, arising out of, relating to, or in connection with the First Amended Complaint filed in this Action and which arose or accrued at any time during the period from May 3, 2004 through June 30, 2008.  Such Released Claims shall include any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, during the Class Period, which are or could be the basis of claims that CBS Radio failed to reimburse Settlement Class Members for business-related expenses that they necessarily incurred, and all claims for penalties based upon CBS Radio's alleged failure to reimburse Settlement Class Members for business-related expenses that they

necessarily incurred during their employment; and/or that CBS Radio owes unreimbursed expenses, penalties pursuant to California Labor Code section 2699 *et seq.*, interest, attorneys' fees, or other damages of any kind based on a failure to reimburse Settlement Class Members for business-related expenses that they necessarily incurred during their employment. Such Released Claims shall also include any and all claims for waiting time penalties and payment under California Labor Code Sections 201, 202, or 203; and/or the causes of action asserted in the Action, including any and all claims for alleged failure to reimburse Settlement Class Members for business-related expenses that they necessarily incurred during their employment, claims for alleged unlawful, unfair and/or fraudulent business practices under California Business and Professions Code § 17200, *et seq.* based on CBS Radio's alleged failure to reimburse Settlement Class Members for business-related expenses that they necessarily incurred during their employment

**Note to Class Members who left CBS Radio before July 1, 2008:** While this release generally covers expense claims and related penalties and interest, participation releases all "waiting time penalty" claims under Labor Code Section 203 through June 30, 2008, These penalties can attach for failure to timely pay all wages upon separation from employment. The release herein is not limited to Labor Code §203 claims based only on allegations of unreimbursed business expenses.

If you were employed as an Account Executive in California at any time during the period May 3, 2003 through June 30, 2008, and you do not request exclusion from the Settlement Class, you will be deemed to have entered into this release and to have released the above-described claims even if you do not submit a Claim Form. However, if the settlement is not approved by the Court or does not become final for some other reason, the litigation will continue and you will not be bound.

### H.    Class Representatives.

In addition to their respective shares as Participating Class Members, Plaintiffs Terry Saidel and Camille Jackson will be paid up to $20,000 and $10,000, respectively, subject to Court approval, for their services as Class Representatives, as well as their willingness to accept the risks in the event of an unsuccessful outcome. This payment will be deducted from the gross amount of the Settlement Payment. CBS will not oppose these requests.

### I.    Attorneys' Fees.

Class Counsel will seek approval from the Court for payment of attorneys' fees in the amount of twenty-five (25%) of the total Settlement, or $1,237,500, and litigation costs estimated at $30,000 which, if approved by the Court, will be deducted from the gross amount of the Settlement Payment. Class Counsel believes that the amount for costs

and attorneys' fees requested is fair and reasonable, and CBS will not oppose Class Counsel's request for that amount.

### J.     Costs of Administration.

The costs of administering the Settlement will be deducted from the gross amount of the Settlement Payment. The Claims Administrator estimates this amount to be approximately $30,500.

### K.     The Reserve Fund

The parties have agreed to establish a Reserve Fund of $25,000 to pay for any late claims that the Claims Administrator deems to have been filed late and <u>with good cause</u>, and to pay accepted disputed claims which the Claims Administrator or Court determines was valid after the distribution date of settlement payments. The $25,000 reserve Fund will be deducted from the Settlement amount and held in an interest-bearing account for nine (9) months after the Court finally approves the above settlement. Following the payment of all excusable late and accepted disputed claims, and after nine (9) months after the Court grants final approval, the remaining Reserved Fund, if any, will be paid to one or more charities designated by the Parties and approved by the Court.

## III.   PLAINTIFFS, CLASS COUNSEL AND CBS RADIO SUPPORT THE SETTLEMENT

Plaintiffs as Class Representatives and Class Counsel support this Settlement. Their reasons include the inherent risk of denial of class certification, the risk of a trial on the merits, and the inherent delays and uncertainties associated with litigation. Based on their experience litigating similar cases, Class Counsel believe that further proceedings in this case, including a trial and probable appeals, would be very expensive and protracted. No one can confidently predict how the various legal questions at issue, including the amount of damages, would ultimately be resolved. Therefore, upon careful consideration of all of the facts and circumstances of this case, Class Counsel believe that the Settlement is fair, reasonable, and adequate. CBS Radio also supports this settlement and will not retaliate in any way against Settlement Class Members who participate in the Settlement and submit claims.

## IV.    WHAT ARE YOUR RIGHTS AS A SETTLEMENT CLASS MEMBER?

### A.     Participation in the Settlement.

Plaintiffs as Class Representatives and Class Counsel represent your interests as a Settlement Class Member. Unless you elect not to participate in the Settlement by timely filing a request to be excluded, you are a part of the Class and a Participating Class Member, and you will be bound by the terms of the Settlement and any final

judgment that may be entered by the Court, and will be deemed to have released the Class Members' Released Claims against CBS Radio and all of the other Class Members' Released Parties. If you file a timely Claim Form as described below, you will receive a pro-rata share of the Net Settlement Amount, which sum will be entirely distributed to Participating Class Members who have fully and timely submitted Claim Forms. As a member of the Class, you will not be individually responsible for the payment of attorneys' fees or reimbursement of litigation expenses unless you retain your own counsel, in which event you will be responsible for your own attorneys' fees and costs.

**B.    Claiming a Share of the Settlement Proceeds.**

To receive a share of the Settlement, you must sign the enclosed Claim Form and return it by facsimile at (800) _____ or in the enclosed pre-addressed, postage-paid envelope to:

CBS RADIO ACCOUNT EXECUTIVE CLASS ACTION CLAIMS
ADMINISTRATOR
Simpluris, Inc.
Class Action Settlement
Administration Services
3176 Pullman Street, Suite 123
Costa Mesa, CA 92626

**C.    Disputes as to the Amount of Time that Settlement Class Members Worked in Settlement Class Positions.**

The Claim Forms mailed to each individual Settlement Class Member will list the dates during the May 3, 2003 to June 30, 2008 time period that the individual Settlement Class Member worked for CBS Radio in California in the position of Account Executive, excluding any leaves of absence in excess of two consecutive weeks. The Claim Form will also list the amount of actual reimbursement that CBS Radio paid the Settlement Class Member for business expenses between January 1, 2004 and June 30, 2008, again based on CBS Radio's records. The only issues subject to dispute are the time period in which the Settlement Class Member worked as a CBS Radio Account Executive in California and the amount that CBS Radio actually paid to each individual Settlement Class Member for actual business-expense reimbursements between January 1, 2004 and June 30, 2008. Settlement Class Members will have an opportunity to challenge the (1) number of weeks that he or she worked as a CBS Radio Account Executive during the time period of May 3, 2003 through June 30, 2008, and/or (2) the amount of reimbursements actually paid to the Settlement Class Member by CBS Radio, as identified on the Claim Form, by submitting a written challenge along with a signed

Claim Form and any supporting evidence or documentation to the Claims Administrator within the time period provided for submitting the Claim Form. CBS Radio's records will be presumed determinative, but the Claims Administrator will evaluate the information and evidence submitted by the Settlement Class Member. Any disputes, including those concerning the period of time that a Settlement Class Member worked as a CBS Radio Account Executive or the actual reimbursement paid will be finally resolved by the Claims Administrator.

### D.    Exclusion Yourself from the Settlement.

If you do <u>not</u> wish to participate in the Settlement, you must send a written statement requesting exclusion from the Class and the Settlement ("Request for Exclusion"). The Request for Exclusion must include your name, address, last four digits of your Social Security Number and telephone number. The Request for Exclusion must be signed by you, dated, and returned to:

CBS RADIO ACCOUNT EXECUTIVE CLASS ACTION CLAIMS
ADMINISTRATOR
Simpluris, Inc.
Class Action Settlement
Administration Services
3176 Pullman Street, Suite 123
Costa Mesa, CA 92626

The Request for Exclusion must be postmarked no later than ▨▨▨▨▨▨▨. If the Request for Exclusion is sent from within the United States, it must be sent through the United States Postal Service via first class mail. A Settlement Class Member who fails to mail a Request for Exclusion in the manner and by the deadline specified above will be a Participating Class Member and will be bound by all terms and conditions of the Settlement (if the Settlement is approved by the Court) and the Judgment, regardless of whether he or she has objected to the Settlement.

Any person who files a complete and timely Request for Exclusion will, upon receipt, no longer be a member of the Class, will be barred from participating in any portion of the Settlement, and will receive no benefits from the Settlement. Any such person, at his or her own expense, may pursue any claims that he or she may have against CBS Radio. An incomplete or unsigned Request for Exclusion will be deemed invalid.

**DO NOT SUBMIT BOTH A REQUEST FOR EXCLUSION AND A CLAIM FORM.**

IF YOU SUBMIT BOTH, THE REQUEST FOR EXCLUSION WILL BE DEEMED INVALID, AND THE TIMELY CLAIM FORM WILL BE ACCEPTED FOR PAYMENT PURSUANT TO THE TERMS OF THE SETTLEMENT, AND YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT.

**IF YOU ELECT TO SUBMIT A CLAIM FORM, IT IS STRONGLY RECOMMENDED THAT YOU KEEP A COPY OF THE COMPLETED CLAIM FORM, AND PROOF OF YOUR TIMELY MAILING. YOU SHOULD KEEP THESE ITEMS UNTIL RECEIPT OF YOUR SETTLEMENT PAYMENT. YOU MAY CALL THE CLAIMS ADMINISTRATOR TO CONFIRM RECEIPT OF YOUR CLAIM FORM. IT IS YOUR RESPONSIBILITY TO ENSURE THAT THE CLAIM IS POSTMARKED ON OR BEFORE _____. THE POSTMARK DATE IS DETERMINATIVE OF WHETHER YOU HAVE FILED A TIMELY CLAIM FORM.**

     **E.    Objecting to the Settlement.**

You may object to the terms of the Settlement before final approval, either by filing a written objection or filing a notice of your intent to appear and object at the final approval hearing. However, if the Court rejects your objection and you have not filed a Claim Form, you will not receive a settlement payment, but you will be bound by the terms of the Settlement, unless you also have submitted a timely request to be excluded.

To object, you must send a written notice of objection or a written notice of your intent to appear and object at the final approval hearing to the Court to the Claims Administrator at the addresses shown below. DO NOT TELEPHONE THE COURT OR CBS RADIO'S COUNSEL. Any written objection and/or notice of your intent to appear at the hearing must state each specific reason in support of your objection and any legal support for each objection. Your written objection and/or notice of your intent to appear at the hearing must also state your full name, address, date of birth, dates of your employment, and positions held at CBS Radio in California. To be valid and effective, the Court and Administrator must receive any written objections and/or notices of intent to appear at the hearing not later than _____. A Settlement Class Member who fails to file and serve a written statement of objection in the manner described above and by the specified deadline will be deemed to have waived any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

File Your Notice With :
**District Court Judge Samuel Conti**
United States District Court
Northern District of California
450 Golden Gate Ave, 17th Floor
San Francisco, CA 94102

And Also Send Copies of Your Notice to:

CBS RADIO ACCOUNT EXECUTIVE CLASS ACTION CLAIMS
ADMINISTRATOR
Simpluris, Inc.
Class Action Settlement
Administration Services
3176 Pullman Street, Suite 123
Costa Mesa, CA 92626

To be valid, the Claim Form must include the last four digits of your Social Security
number, dated and signed by you under penalty of perjury.  The Claim Form must be
postmarked not later than ████████████████, **2008.**  A Settlement Class Member who
fails to mail a Claim Form in the manner and by the deadline specified above **will not**
receive a share of the Settlement proceeds.  If that Settlement Class Member also fails to
file a valid and timely request for exclusion, the Settlement Class Member will be bound
by all terms and conditions of the Settlement (if the Settlement is approved by the
Court) and the Judgment, even though the Settlement Class Member did not receive a
share of the Settlement proceeds.

## V.    FINAL SETTLEMENT APPROVAL HEARING

The Court will hold a final approval hearing in Courtroom 1 of the United States
District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom
1 (17th Floor), San Francisco, CA 94102, on ████████████████, 2008, at ██████████, to
determine whether the Settlement should be finally approved as fair, reasonable, and
adequate.  The Court will also be asked to approve Class Counsel's request for costs,
attorneys' fees and the participation payments made to Plaintiffs as the Class
Representatives.  The hearing may be postponed without further notice to the Class.

Unless you wish to object to the Settlement, it is not necessary for you to appear at this
hearing.  If you have given written notice of your objection to the settlement, you may
appear at the hearing at your option if you have filed a notice of intent to appear by

▨▨▨▨▨▨▨, 2008.  If you have not given written notice of your objection and intention to appear, any objection you have may not be heard by the Court.

## VI.    GETTING MORE INFORMATION

The above is a summary of the basic terms of the Settlement.  For the precise terms and conditions of the Settlement, you are referred to the detailed Joint Stipulation of Class Action Settlement and Release between Plaintiffs and CBS Radio, which will be on file with the Clerk of the Court.  The pleadings and other records in this litigation, including the Settlement Agreement, may be examined at any time during regular business hours in the United States District Court, Northern District of California, 450 Golden Gate Ave, 17th Floor, San Francisco, CA 94102.  You also may contact Class Counsel listed below for more information:

Aaron Kaufmann, Esq.
David Pogrel, Esq.
HINTON, ALFERT & SUMNER
1646 North California Blvd., Suite 600
Walnut Creek, CA 94596
Telephone:  (925) 932-6006
Facsimile:  (925) 932-3412

Morris J. Baller, Esq.
GOLDSTEIN DEMCHAK BALLER
BORGEN & DARDARIAN
300 Lakeside Drive, Ste. 1000
Oakland, CA  94612-3534
Phone: (510) 763-9800
Fax: (510) 835-1417

Isam C. Khoury, Esq.
Michael D. Singer, Esq.
Diana Khoury, Esq.
Christopher Olsen, Esq.
COHELAN & KHOURY
605 C Street, Suite 200
San Diego, California 92101-5305
Telephone: (619) 595-3001
Facsimile:  (619) 595-3000

**IMPORTANT:**

1.    **PLEASE DO NOT TELEPHONE THE COURT OR CBS RADIO'S COUNSEL FOR INFORMATION REGARDING THIS SETTLEMENT OR THE CLAIMS PROCESS.**

2.    **If you change your mailing address, please send your new mailing address to the Claims Administrator.  It is your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your Settlement Payment.**

# EXHIBIT B

**(CLAIM FORM)**

# CLAIM FORM

IN THE UNITED STATES DISTRICT COURT OF CALIFORNIA
NORTHERN DISTRICT OF CALIFORNIA
*Saidel v. CBS Radio, Inc.,* U.S.D.C., Case No. **CV 07-02948-SC**

## INSTRUCTIONS

TO RECEIVE A SHARE OF THIS CLASS ACTION SETTLEMENT,
**THIS FORM MUST BE SIGNED AND POSTMARKED OR FAXED NOT LATER THAN**
**▒▒▒▒, 2008.**

> **MAIL TO:**
>
> CBS RADIO ACCOUNT EXECUTIVE CLASS ACTION CLAIMS
> ADMINISTRATOR
> Simpluris, Inc.
> Class Action Settlement
> Administration Services
> 3176 Pullman Street, Suite 123
> Costa Mesa, CA 92626
>
> **OR FAX TO:(    )▒▒▒▒▒▒**

**Important:**

1.   You must complete the information requested on page ▒▒▒, sign and fax or postmark this Claim Form on or before ▒▒▒▒▒▒, 2008 in order to be eligible for a monetary recovery. It is strongly recommended that you keep proof of timely mailing and/or faxing for your records until receipt of your settlement payment.

2.   If you change your mailing address, please send your new mailing address to the Claims Administrator. It is your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your settlement payment.

If you wish to challenge the employment reimbursement data below, you must fax or postmark your "challenge" and all supporting information and/or documentation to the Claims Administrator by ▒▒▒▒▒▒, 2008.

# CLAIM FORM

Name/Address Changes, if any:

<<Claim Number>>

_____

<<Name>>

_____

<<Address>>

_____

<<City>>, <<State>> <<Zip Code>>

_____

( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___
Home Telephone Number

## Your Compensable Workweeks
CBS Radio's records show that during the dates set forth below, you held the position of Account Executive in California:

<<DATES>>

You were on a leave of absence from _____ to _____.

Your total number of Compensable Workweeks are: <<NUMBER OF WORKWEEKS>>

## Your Actual Reimbursements
CBS Radio's records show that it paid you $<<EXPENSES IN CBS RADIO RECORDS>>as reimbursement for business expenses from January 1, 2004 through June 30, 2008.

## Your Estimated Payment

The final payment that you will receive, if you submit a timely and valid claim, will be based upon the compensable workweeks above, with an adjustment based upon a discounted value of the actual expenses paid. The discounted rate for the paid expenses is thirty-five percent (35%), meaning just over one-third of your actual reimbursements will be offset against your final payment under a formula agreed upon by the parties and approved by the court. Should this adjustment result in a payment of less than $100, you will be eligible to receive a payment of $100.

Based upon the estimated share for each compensable workweek and the offset for the expenses already reimbursed by CBS Radio, your settlement share is currently estimated at $ _____ , assuming that all Settlement Class Members identified to date file claims.  This amount is subject to change, either up or down, depending upon the number of Settlement Class Members who submit timely and valid claims, challenges to estimated amounts from you and/or other Settlement Class Members, the outcome of those challenges, and other factors.

CHALLENGE

*Check a box below <u>ONLY</u> if you wish to challenge the dates or reimbursement amounts listed above:*

☐  I wish to challenge the employment dates listed above.  I have included with my signed Claim Form a written statement including what I believe to be my correct dates of employment as an Account Executive with CBS Radio in California from May 3, 2003 through June 30, 2008.  I have also included information and/or documentary evidence that supports my challenge. I understand that, by submitting this challenge, I hereby authorize the Claims Administrator to review CBS Radio's records and make a determination as to the validity of my challenge based upon CBS Radio's records as well as the records and information that I submit to the Claims Administrator.

☐  I wish to challenge the amount of Actual Reimbursements listed above.  I have included with my signed Claim Form a written statement including what I believe to be my correct Actual Reimbursements for business expenses paid to me by CBS Radio from January 1, 2004 through June 30, 2008.  I have also included information and/or documentary evidence that supports my challenge.  I understand that, by submitting this challenge, I hereby authorize the Claims Administrator to review CBS Radio's records and make a determination as to the validity of my challenge based upon CBS Radio's records as well as the records and information that I submit to the Claims Administrator.

## RELEASE AND SIGNATURE

Under penalty of perjury, my signature below certifies that I have read the Notice of Class Action Settlement in the lawsuit entitled *Terry Saidel and Camille Jackson, on behalf of themselves and all others similarly- situated v. CBS Radio, Inc., a Delaware corporation, and Does 1 through 500 Inclusive*, U.S.D.C., N.D. Cal., Case No. CV 07-02948-SC, and understand that I hereby and forever release and discharge the "Released Parties" from the "Released Claims" as specified in Section II.G of the Notice of Class Action Settlement.

I further certify under penalty of perjury that I incurred reasonable and necessary business expenses while working for CBS Radio as an Account Executive for which I have not been reimbursed.

Dated: ____ ___ / ____ ___ / ___ ___ ___ ___          Signature: _____

**YOU MUST COMPLETE THIS CLAIM FORM AND TIMELY RETURN IT TO THE CLAIMS ADMINISTRATOR ON OR BEFORE**                     **, 2008.**

# EXHIBIT C

**(POSTCARD REMINDER)**

## **Postcard Reminder**
## **Claims Deadline:** ▨▨▨▨▨▨▨

Dear Class Member:

On ▨▨▨▨▨ 2008, you were mailed a Notice of Pending Class Action Settlement and Claim Form. We have not received either a completed and signed Claim Form or a request by you for exclusion from the class action settlement and the deadline to act is quickly approaching.

If you want to participate in the settlement and to receive your share of the Settlement proceeds, you must postmark your Claim Form by First Class U.S. mail no later than ▨▨▨▨▨▨, and mail to

CBS RADIO ACCOUNT EXECUTIVE CLASS ACTION CLAIMS
ADMINISTRATOR
Simpluris, Inc.
Class Action Settlement
Administration Services
3176 Pullman Street, Suite 123
Costa Mesa, CA 92626

If you want to participate in the settlement and have lost the Notice and/or Claim Form, you must immediately call the Claims Administrator at 1-▨▨▨▨▨ to request that another Notice and individualized Claim Form be sent to you. If you fail to timely return a signed Claim Form, you will not receive any money from the settlement but you will be bound by its terms (unless you file a valid Request for Exclusion).

Again, to receive your share of the settlement, you must post-mark your Claim Form, on or before ▨▨▨▨▨, **2008.**

Sincerely,

CBS Radio Account Executive Class Action Claims Administrator

Questions? Call 1-8▨▨▨▨▨▨Toll Free

# EXHIBIT 2

**(MORRIS J. BALLER CURRICULUM VITAE)**

## MORRIS J. BALLER

Goldstein, Demchak, Baller, Borgen & Dardarian
300 Lakeside Drive, Suite 1000
Oakland, California  94612
(510) 763-9800
mjb@gdblegal.com

## PROFESSIONAL EXPERIENCE

**Goldstein, Demchak, Baller, Borgen & Dardarian**
**Oakland, California**

Partner (Shareholder), January 1995 to present

Class action litigation, primarily in employment discrimination, civil rights, wage and hour and other class actions and complex litigation in federal and state courts. Representative employment discrimination cases include racial, national origin, and gender discrimination claims, as well as harassment claims.  Typical wage and hour cases include misclassification, overtime pay, and unlawful wage withholding claims.  In addition, selected class action and complex litigation involving discrimination and other abuses in non-employment settings.

**Marron, Reid & Sheehy**
**San Francisco, California**

Partner - April 1985 to December 1994.

General civil litigation practice:  employment discrimination, wrongful discharge, professional malpractice, taxation, dealership agreements, injunctions, unfair business practices, contract disputes, securities fraud, arbitrations, counselling and negotiation for both employers and employees, representation of public entities including cities, counties, and federal agencies.  Litigation in state and federal courts in California, including jury and non-jury trials and appeals.

**Mexican American Legal Defense and Education Fund**
**San Francisco, California**

Senior Vice President for Legal Programs - June 1980 to March 1985.

Oversight of entire legal program including case intake, docket control and development, position formulation, review of pleadings, and supervision of cases, requiring management of litigation handled by twenty attorneys and several non-legal professional staff.  Direct supervision and evaluation of legal staff, direct

Resume of Morris J. Baller
Page 2

supervision of management of regional offices of MALDEF, and responsibility for reporting to Board of Directors on legal program matters.

Staff Attorney and Coordinator of Litigation - Jan. 1976 to April 1980.

(1) Litigation of civil rights class action suits in employment discrimination, voting rights and political access, education, immigration and aliens' rights, and other areas of concern to Mexican Americans. Intensive civil litigation at all stages from pre-filing and pleading through discovery, motion practice, trial or settlement, appeal and attorneys' fee proceedings; (2) Administrative and political advocacy (analysis of public policy, legislative testimony, position papers, public speaking) on civil rights issues in the above fields and others; (3) Coordination of efforts of legal and other staff and of legal program of MALDEF, and related reporting to Board of Directors.

**NAACP Legal Defense and Education Fund**
**New York, New York**

Assistant Counsel - September 1970 to December 1975.

Federal Court litigation representing plaintiffs in employment discrimination class actions. Extensive experience in discovery, pre-trial motions, class actions, trials, settlements, and appeals involving complex factual patterns and development and application of legal principles. Cases involved both public and private employers.

Administrative and program management duties in the area of employment discrimination litigation, including financial and budgetary controls, case intake and supervision, evaluation and management of appeals, consultation with private practitioners on litigation problems, and development of new law.

At MALDEF and the LDF I had primary responsibility for several dozen trials, settlements, and appeals of complex cases involving a variety of civil rights issues including employment, education, voting rights, first amendment rights and immigration. I argued numerous cases in the Courts of Appeals, and a major case in the Supreme Court. At Marron, Reid & Sheehy I had lead responsibility for numerous trials and appeals in commercial case in state courts, and handled a number of pro bono matters. In 1990 I received MALDEF's annual Legal Services award for contributions by an attorney in private practice acting on a pro-bono basis.

Resume of Morris J. Baller
Page 3

## OTHER PROFESSIONAL ACTIVITIES

Director, Mexican American Legal Defense and Educational Fund, Inc., Los Angeles, CA (2000-2006); member of Program and Planning Committee of Board of Directors; Member, MALDEF Property Management Committee, 2006-2007.

Director, Equal Rights Advocates, San Francisco, CA (2002-present); member, Personnel Committee (2002-2005) and Litigation Committee (2005-2007) of Board of Directors.

Member, Lawyer's Delegation to Ninth Circuit Judicial Conference, 1995-1997 (three-year term, elected by Judges of Northern District of California).

Director, National Employment Law Project (Legal Services Corporation back-up center), New York, NY (1978-84).

Member, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 1990 - present.

U.S. District Court, Northern District of California -- Evaluator in Early Neutral Evaluation Program, 1988-present; Mediator and Arbitrator in Alternative Dispute Resolution Program, 1994-present. (Evaluated and mediated numerous cases; received formal training as mediator in 1993).

San Francisco Superior Court - Mediator in Early Settlement Program of Bar Association of San Francisco, 1987-1994. (Mediated numerous civil actions pending in S.F. Superior Court).

Adjunct Professor of Law, University of San Francisco School of Law, Fall 1978 (employment discrimination law).

Adjunct Professor of Law, University of California, Hastings College of Law, Spring 1980 (employment discrimination law).

Lecturer and author of outlines or papers to many conferences and legal education programs including:

– Practicing Law Institute, Federal Civil Rights Litigation Program, San Francisco, January 1982 (faculty).

– Practicing Law Institute, Federal Civil Rights Litigation Program, Los Angeles, March 1979 (faculty).

Resume of Morris J. Baller
Page 4

- ABA Litigation Section, "Trial of an Employment Discrimination Case," Williamsburg, March 1978, San Diego, May 1978 (faculty).

- USC Law School Institute for Corporate Counsel, Los Angeles, CA, March 2001 and December 2006

- ABA Employment Section, "Title VII at Twenty," May 1984, New Orleans.

- Law school classes and seminars at Columbia, Stanford, University of San Francisco, Hastings, Boalt, University of Santa Clara law schools, 1974-98.

-Lecturer or presenter by invitation at conferences on federal practice, class actions and employment discrimination law, including (recent years' engagements only):

- American Bar Association, Annual Meeting, Presidential Showcase Presentation, August 1998, Toronto.

- California Employment Lawyers Association, Annual Conference, September 1998, San Francisco.

- Glasser Legal Works conferences on Class Actions, 1999, 2000 and 2001, New York and San Francisco.

- Colorado Bar Association, National CLE Conference on Employment Law, January 2005, January 2006, January 2007, Snowmass, Colorado.

- NAACP Legal Defense and Educational Fund, Inc., Airlie Institute on Civil Rights, October 2005, Warrenton, VA.

- American Bar Association, Section on Labor and Employment Law, EEO Committee, Mid-Winter Meeting, March 2007, Charleston, S.C.

## BAR ADMISSIONS AND PROFESSIONAL ASSOCIATION MEMBERSHIPS

Supreme Court of California - January 1971.

Federal court bar admissions - Northern, Central and Eastern Districts of California; Western District of Texas; U.S. Courts of Appeals for the Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh Circuits; and U.S. Supreme Court.

Fellow, College of Labor and Employment Lawyers.

Resume of Morris J. Baller
Page 5

Member, American Bar Association, Labor and Employment Law Section.

## **EDUCATION**

J.D., June 1970, Harvard Law School (with honors).

B.A., June 1966, Harvard College (high honors).

Certificat d'Etudes Politiques, June 1967, University of Paris.

# EXHIBIT 3

**(AARON KAUFMANN CURRICULUM VITAE)**

**AARON KAUFMANN**
**HINTON, ALFERT & SUMNER**
**1646 N. Calif. Blvd., Suite 600**
**Walnut Creek, CA 94596**
**(925) 932-6006**
**kaufmann@hinton-law.com**

Bar Admission: California, 1990.

Education: University of California at Berkeley (B.A. 1986); University of California, Hastings College of the Law (J.D. cum laude 1990).

Practice Areas: representing employees in class action and individual litigation, with particular emphasis on wage and hour, retaliation, and discrimination.

Publications: Forum (Consumer Attorneys of California Magazine), "The Changing Landscape of Wage & Hour Litigation" (July/August 2004); The Verdict (Alameda-Contra Costa Trial Lawyers' Assoc. Magazine), "Private Enforcement of California's Wage & Hour Laws" (Winter 2003-2004); Fair Labor Standards Act, ABA, Chapter Editor (2004-2006 Supplements) and current member of the Senior Editorial Board; Employment Discrimination Law, ABA, Chapter Editor (2005 Edition, 2002 Supplement); California Labor & Employment Law Quarterly, "Overtime Pay -- Who's Eligible, Who's Not" (Winter 2000) and "Public Sector Employer's Obligations to Prevent Hostile Work Environments without Violating Free Speech Rights" (Summer 1997); California Employment Law Reporter, "Sizing the Prize: Calculating Overtime Backpay for Salaried Employees" (March 1999); Editor, The Verdict (2005).

Other Professional Activities: National Institute of Trial Advocates, faculty member; The Legal Aid Society – Employment Law Center, board of directors, and guest lecturer and volunteer supervising attorney at its Workers' Rights Clinic; guest lecturer/panelist on wage and hour law at Boalt Hall School of Law, the Labor and Employment Sections of California State Bar, San Francisco and Marin County Bar Associations, California Applicant Attorneys Association, Lorman Group seminar, the California Employment Lawyers Association ("CELA"), and the National Employment Lawyers Association; organizer of CELA's Advanced Wage and Hour Seminar for 2005-2007; member of American Bar Association and its Fair Labor Standards sub-committee.

Judicial Clerkship: Senior Law Clerk to Hon. Edward D. Price, United States District Court, Eastern District California, Fresno (1991).

Professional Acknowledgments: "AV" Martindale-Hubbell Rating; Northern California "Super Lawyer" for 2007, 2008.

Class Action Litigation Experience (Partial Listing):

Grazier v. Walgreens, No. RG05-0228473 (Alameda County Superior Court) (co-counsel with Goldstein, Demchak, Baller, Borgen & Dardarian on $3.8 million class action settlement to resolve meal period violation claims on behalf of approximately 3,000 current and former store assistant managers).

Clear Channel v. Shellhammer, No CGC-04043910 (San Francisco Superior Court) (co-counsel with Goldstein Demchak on a $20 million class action settlement for a class of 1,600 account executives who were not paid overtime or reimbursed for business expenses).

Pearman v. California State Automobile Association, No. RG05227458 (Alameda County Superior Court) (co-counsel with Goldstein Demchak on $11.2 million class and collective action settlement to resolve overtime and related claims on behalf of insurance salespeople in three states).

Allen v. Bank of America, No. C006-00217 (Contra Costa County Superior Court) and Vasquez v. Bank of America, No. 1168845 (Santa Barbara County Superior Court) (co-counsel with Goldstein Demchak and the Anticouni & Associates firms in overtime/meal period exemption misclassification case that settled for $2.5 million for a class of 196 risk analysts).

Bullock v. Automobile Club of Southern California, No. SACV01-731GLT, 2002 WL 432003 (C.D. Cal.) (co-counsel with Goldstein, Demchak, Baller, Borgen & Dardarian on $19.5 million class and collective action settlement to resolve overtime and related claims on behalf of insurance salespeople).

Reid v. Extended Stay America, Inc., No. 2002055285 (Alameda County Superior Court) (co-counsel with Leonard Carder and Newman & Strawbridge firms on $5.18 million statewide class action settlement approved in November 2004 to resolve overtime and related claims for hotel managers).

Gondo v. Landmark Theatres, No. RG05211872 (Alameda County Superior Court) (co-counsel with the Legal Aid Society-Employment Law Center on $810,000 class action settlement for overtime and meal period claims on behalf of a class of movie theaters managers and assistant managers).

Airoldi v. Gottschalks, No. CV 152421 (Santa Cruz County Superior Court) (co-counsel with Lewis Feinberg and Weinberg, Roger & Rosenfeld firms in vacation forfeiture class action settling for $1.81 million).

Herrera v. Sodexho, Inc., No. RG06268867 (Alameda County Superior Court) (co-counsel with Lewis Feinberg and Law Offices of Jerry Budin in $1.9 million class action settlement for vacation forfeiture claims).

<u>Sequeira v. CKE Restaurants, Inc.</u>, No. 1113222 (Santa Barbara County Superior Court) (co-counsel with Lewis Feinberg, Goldstein Demchak, and Green & Azevedo firms on litigation to recover accrued unpaid vacation under California Labor Code for potential class of administrative and restaurant workers; $1.5 million class settlement).

<u>Elmore v. DiTech Mortgage, GMAC</u>, No. SACV 01-0093 DOC (C.D. Cal.) (while at the Goldstein Demchak firm worked on class/collective action for state and FLSA overtime for loan officers; settlements approved in 2002 resulting in recovery fund exceeding $8 million).

<u>Auto Club Life Specialists Overtime Arbitrations</u> (while at Goldstein Demchak firm, prevailed in arbitrations on overtime and related claims for six life insurance salespeople).

<u>Davis v. The Money Store</u>, No. 99A501716 (Sacramento County Superior Court) (while at Goldstein Demchak firm, worked on a class action for misclassified loan officers resulting in a $6 million settlement approved in December 2000).

<u>Weddle v. Frito-Lay, Inc.</u>, No. C 99-05272 PJH (N.D. Cal.) (while at Goldstein Demchak firm, helped obtain a $11.9 million class action settlement approved in February 2001 to resolve delivery drivers' overtime claims).

<u>Harrison v. Enterprise Rent-A-Car</u>, 1998WL 422169 (M.D. Fla. 1998) (nationwide collective action for overtime pay settled under the Fair Labor Standards Act, while working at Goldstein Demchak firm).

<u>Elmer v. Enterprise Rent-A-Car</u>, No. C-98-01571 VRW (N.D. Cal.) (while at Goldstein Demchak firm, worked on statewide class action overtime compensation case; the two Enterprise cases resulted in $6 million in monetary relief).